USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/30/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                    :
                                                   :
                                                   :
IN RE:  DEVA CONCEPTS PRODUCTS    :    Master file 1:20-cv-01234-GHW
LIABILITY LITIGATION                                   :
                                                   :
                                                   :    MEMORANDUM OPINION
-------------------------------------------------------------------X    AND ORDER


GREGORY H. WOODS, United States District Judge:

       When the Once-ler arrived in the picturesque valley filled with a forest of Truffula trees and Bar-ba-loot bears, he immediately got to work; he felled a Truffala tree and knitted his very first Thneed.  The market rewarded his entrepreneurial spirit, and business boomed.  But there was one creature who was decidedly displeased by the Once-ler's economic exploits:  the Lorax.  The Lorax popped out of a Truffula stump and warned the Once-ler of the externalized costs of his Thneed business.  "I speak for the trees," he warned, "for the trees have no tongues."  Dr. Seuss, *The Lorax* (1971).

       This is a case about allegedly harmful haircare products rather than environmentally destructive Thneeds, but the conceit remains instructive.  In deciding who to appoint as interim counsel in these consolidated, putative class actions, the Court's obligation is to speak for the Plaintiffs who, at this point in the litigation, do not have a voice, but whose interests must nevertheless be protected.  For the reasons that follow, Plaintiffs' modified motion to appoint interim counsel is GRANTED.

       **I.**       **BACKGROUND**

       The plaintiffs in these consolidated, putative class actions assert that Deva Concepts LLC (or, "DevaCurl") sold them a variety of expensive shampoos, conditioners, and other "revolutionary" hair products touted as specifically formulated to keep curly hair clean without

stripping it of its natural oils, damaging it in the process.  *See, e.g.*, Compl. ¶ 4, *Dixon et al v. Deva Concepts LLC*, 1:20-cv-1234-GHW (S.D.N.Y. Feb. 12, 2020), Dkt. No. 1.[1]  Unbeknownst to Plaintiffs, however, the DevaCurl products did nothing of the sort—use of the products caused scalp irritation, excessive shedding, hair loss, thinning, breakage, and even balding.  *See, e.g.*, *id.* ¶ 15.

*Dixon et al v. Deva Concepts, LLC* was the first of many similar complaints that were ultimately filed in the Southern District of New York.[2]  Because two other actions had already been filed in the Southern District of Florida and the Central District of California, this Court ordered the *Dixon* plaintiffs to show cause why this case should not be transferred to one of those courts under the first-to-file rule.  *See* Order to Show Cause, *Dixon et al v. Deva Concepts LLC*, 1:20-cv-1234-GHW (S.D.N.Y. Feb. 26, 2020), Dkt. No. 11.  Shortly thereafter, Plaintiffs replied, providing the Court with myriad reasons why this Court should not transfer the case, including Plaintiffs' intent to ask the Judicial Panel on Multidistrict Litigation to consolidate a number of putative class actions pending around country and to assign them to this Court.  *See generally* Pls.' Resp. to Order to Show Cause, *Dixon et al v. Deva Concepts LLC*, 1:20-cv-1234-GHW (S.D.N.Y. Mar. 11, 2020), Dkt. No. 17.

Ultimately, all of the parties in the Southern District of New York DevaCurl cases decided to stipulate to consolidation rather than pursue relief before the Multidistrict Litigation Panel.  *See generally* Stip. to Consol. Actions, Dkt. No. 25.  When the Court so-ordered those stipulations, counsel for Plaintiffs moved for appointment of interim lead counsel, interim liaison counsel, and

---

[1] Unless otherwise specified, all citations to court documents refer to filings in *In Re:  Deva Concepts Products Liability Litigation*, 1:20-cv-1234-GHW.

[2] 1:20-cv-1234-GHW (S.D.N.Y. Feb. 12, 2020).  Ultimately, eleven additional DevaCurl cases were filed in the Southern District, designated as related, and reassigned to this Court: *Ciccia et al. v. Deva Concepts, LLC*, No. 1:20-cv-1520-GHW (S.D.N.Y. Feb. 20, 2020); *Schwartz et al v. Deva Concepts, LLC*, No. 1:20-cv-1657-GHW (S.D.N.Y. Feb. 25, 2020); *Bolash et al v. Deva Concepts, LLC*, No. 1:20-cv-2045-GHW (S.D.N.Y. Mar. 6, 2020); *Abdulahi et al. v. Deva Concepts, LLC*, No. 1:20-cv-2047-GHW (S.D.N.Y. Mar. 6, 2020); *Reilly v. Deva Concepts, LLC*, No. 1:20-cv-2156-GHW (S.D.N.Y. Mar. 10, 2020); *Orner et al. v. Deva Concepts, LLC*, No. 1:20-cv-2662-GHW (S.D.N.Y. Mar. 30, 2020); *Souza v. Deva Concepts, LLC*, No. 1:20-cv-2930-GHW (S.D.N.Y. Apr. 9, 2020); *Crawley v. Deva Concepts, LLC*, No. 1:20-cv-3152-GHW (S.D.N.Y. Apr. 21, 2020); *Calabrese et al v. Deva Concepts, LLC*, No. 1:20-cv-3309-GHW (S.D.N.Y. Apr. 28, 2020); *Biles v. Deva Concepts, LLC*, No. 1:20-cv-3637-GHW (S.D.N.Y. May 6, 2020); and *Przybylski v. Deva Concepts, LLC*, No. 1:20-cv-3630-GHW (S.D.N.Y. May 8, 2020).

the establishment of an interim executive committee pursuant to Federal Rule of Civil Procedure 23(g)(3) to more "efficiently" prosecute the case.  *See* Dkt. No. 44 at 2.

Initially, counsel for Plaintiffs suggested the following structure:  Gary E. Mason and Gary M. Klinger of Mason Lietz & Klinger LLP, Charles E. Schaffer of Levin Sedran & Berman LLP, and Rachel Soffin of Greg Coleman Law would serve as interim co-lead counsel; Gary S. Graifman of Kantrowitz Goldhamer & Graifman, P.C. would serve as interim liaison counsel; and Melissa R. Emert of Stull, Stull & Brody, Jeffrey Goldenberg of Goldenberg Schneider, L.P.A., John Macoretta of Spector Roseman & Kodroff, P.C., Joel Rhine of Rhine Law Firm, Gordon Rudd of Zimmerman Reed LLP, Robert S. Schachter of Zwerling, Schachter & Zwerling, Jonathon Shub of the Shub Law Firm LLC, and Melissa Weiner of Pearson, Simon & Warshaw, LLP would serve as interim executive committee members.  Defendant opposed the motion on July 3, 2020.  *See* Dkt. No. 56.  Plaintiffs replied on July 7, 2020.  *See* Dkt. No. 57.

The Court held argument on the motion on July 17, 2020, during which it "sp[oke] for the trees," and expressed concern that such an expansive leadership structure might generate unnecessary expenses and could ultimately detract from the class members' recovery.  After all, only twenty-four other lawyers had noticed their appearance in the action on behalf of Plaintiffs; appointing thirteen of them to leadership positions would mean that over half of the attorneys involved in the case would be responsible for spearheading the litigation.  *See* July 17, 2020 Tr. at 19.  Counsel for Plaintiffs admitted that the structure was more inclusive than necessary a few times during his colloquy with the Court, *see, e.g.*, July 17, 2020 Tr. at 20 (MR. MASON:  Is it absolutely necessary to have that many lawyers?  No, your Honor."), and described his approach as a compromise designed to avoid infighting:

> I find—this is my own foible, but I have led many cases over my career, and I find it difficult to make decisions that—let's go with these people and not those people, and actually that the people that you say are not in your group, what do they do?  They form a grump group, and then we have groups that are competing with each other.  And if we went down that road, we wouldn't be having this conversation here

> today. We would be having a much different conversation with competing applications and different groups. Maybe each group would be half the size, but then I don't like to litigate that way, and I don't think it's a best practice because then you have a situation you have winners and losers, a bunch of lawyers who will run the case and be in charge and another group of lawyers who are sitting—are not working on the case, have claims in the case, are monitoring the case, are potentially going to be objectors to the case if they're not happy how things have gone later on because they're not engaged in the case. And to me that's not the best way and certainly not the most collegial way to litigate. So I end up where I ended up. As you said, people may be critical of how I do this. Some are, although I do see a trend towards a flatter structure in some of the cases with some of my colleagues, and it does lead to a little bit of overinclusiveness and a little bit more people than arguably are necessary. But when you have a group of talented and responsible lawyers like this, I think that the end results will be better and everyone will act responsibly so that we don't get into—we don't have a situation where the lodestar is multiples different than what they would have been if we had half the lawyers.

July 17, 2020 Tr. at 20-21.[3] As the Court explained, however, keeping counsel happy is not the Court's job here.[4] It is "to protect the interests of the plaintiffs, not their lawyers." *In re Parking Heaters Memorandum Antitrust Litig.*, 310 F.R.D. 54, 57 (E.D.N.Y. 2015) (quotation omitted); *see also* Manual for Complex Litigation (Fourth) § 10.221 (4th ed. 2004) ("Manual") ("The types of appointments and assignments of responsibilities will depend on many factors. The most important is achieving efficiency and economy without jeopardizing fairness to the parties.")

The Court invited supplemental briefing on the question of how Plaintiffs' counsel proposed to keep down costs. In response, Plaintiffs substantially modified their proposal, slashing the leadership structure from a three-tiered structure comprising twelve attorneys to just four co-lead interim counsel: Gary E. Mason, Charles E. Schaffer, Rachel Soffin, and Melissa Weiner. *See* Pls.' Suppl. Br., Dkt. No. 65 at 1–2. Thus, the question before the

---

[3] Another argument made by counsel to explain the thirteen-person structure was to increase diversity by including more women in formal leadership positions. *See* July 17, 2020 Tr. at 10. But only three women were part of the initial proposal, and two were members of the proposed executive committee. The remaining ten lawyers were men. In contrast, the revised iteration of Plaintiffs' proposed structure is exactly half women.

[4] Counsel provided no explanation for why lawyers who are not appointed to leadership positions cannot also "work[] on the case" and remain engaged.

4

Court is only whether those four lawyers—not the original thirteen—should be appointed as interim lead counsel.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure allow a court to "designate interim counsel to act on behalf of a putative class action before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). Indeed, "where multiple overlapping and duplicative class actions have been transferred to a single district for the coordination of pretrial proceedings, designation of interim class counsel is encouraged, and indeed is probably essential for efficient case management." *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006) (citing Manual § 21.11); *see also Deangelis v. Corzine*, 286 F.R.D. 220, 223 (S.D.N.Y. 2012).

"Candidates for interim class counsel are evaluated under the same rubric as potential counsel for certified classes." *Deangelis v. Corzine*, 286 F.R.D. 220, 223 (S.D.N.Y. 2012) (collecting cases). Pursuant to Rule 23(g)(1), a Court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class

Fed. R. Civ. P. 23(g)(1)(A); *see also Bernstein v. Cengage Learning, Inc.*, No. 18-cv-7877 (VEC) (SLC), 2019 WL 6324276, at *1 (S.D.N.Y. Nov. 26, 2019). And a Court may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). Finally, the Manual recommends that courts, in selecting lead counsel for a proposed class, "conduct an independent review . . . to ensure that counsel appointed to leading roles are qualified and responsible, that they will fairly and adequately represent all of the parties on their side, and that their charges will be reasonable." Manual § 10.22. Defendant correctly notes that "[a]ppointment of interim lead counsel under Federal Rule of Civil Procedure 23(g)(3) is at the sound discretion of" the Court. Def.'s Resp. at 3; *see generally* Fed. R. Civ. P. 23.

### III.      DISCUSSION

This is precisely the sort of case that would benefit from the appointment of interim class counsel. It involves a dozen duplicative class actions that have been consolidated to coordinate pretrial proceedings. *See In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. at 57. After reviewing Plaintiffs' motion and supplemental briefing, the Court finds that Gary E. Mason, Charles E. Schaffer, Rachel Soffin, and Melissa Weiner all meet the factors set forth in Rule 23.

First, at outlined in their supplemental brief, these four lawyers have spent months investigating potential claims, interviewing consumers and potential plaintiffs, and working to organize and manage the lawsuit—corralling the numerous overlapping putative class actions into one court without the need for formal consolidation by the Judicial Panel on Multidistrict Litigation. *See* Pls.' Suppl. Br. at 3–4.

Second, there is no question that the four proposed co-lead interim counsel are well-credentialled lawyers with significant class action experience: Gary E. Mason has managed hundreds of class actions, served in leadership positions on at least another seven, certified three, and tried at least two before a jury, *see* Mason Decl., Dkt. No. 45-1 at 2–5; Charles E. Schaffer is a "nationally recognized leader in complex litigation" with over twenty years of experience, and appointments to leadership roles in fourteen multi-district litigations, *see* Schaffer Decl., Dkt. No. 45-2 ¶ 5, Pls.' Suppl. Br. Ex. B(3), Dkt. No. 65-3, at 16; Rachel Soffin has litigated complex civil actions for nearly fifteen years, and focused exclusively on class actions for the past ten years, *see* Soffin Decl., Dkt. No. 45-3 at 2; and Melissa Weiner has been named a Super Lawyers *Rising Star* by Minnesota Law & Politics, and has taken leadership roles in several large class actions and multi-district litigations, *see* Weiner Decl. Ex. A, Dkt. No. 45-12 at 16–17.

Third, the Court is persuaded that proposed interim counsel will commit ample resources to represent Plaintiffs. Each attorney has engaged the resources of her firm—all of which are "well-

established and well-capitalized"— including the assistance of her "partners, associates, and paralegals." Pls.' Suppl. Br. at 4.

Finally, the Court finds that the Proposed Interim Counsel have demonstrated that they will represent Plaintiffs fairly and adequately.  "[U]nderscoring their ability to coordinate their activities and seek consensus," *see In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 274 (S.D.N.Y 2009), these four lawyers have, in five days, entirely restructured their proposed leadership structure in their supplemental briefing.  These papers demonstrate genuine sensitivity to the Court's twin concerns of ensuring efficacy and efficiency through its interim appointments.  Plaintiffs eliminated the role of liaison counsel, acknowledging that "the position may not be necessary" and have "familiarized themselves with the local rules."  Pls.' Suppl. Br. at 5.  More consequential is Plaintiffs' elimination of a formal executive committee, instead asking only that co-lead interim counsel be permitted to organize informal committees to maximally operationalize the diverse and talented attorneys waiting in the ranks.  Pls.' Suppl. Br. at 5.[5]  This responsiveness is a compelling factor in the Court's determination that these four lawyers will fairly and adequately represent the class.

In sum, Gary E. Mason, Charles E. Schaffer, Rachel Soffin, and Melissa Weiner all satisfy the requirements of Rule 23(g).  Furthermore, the Court's independent inquiry into their commitment and ability to fairly and adequately represent Plaintiffs has assured the Court that—at least provisionally—this team is up for the job.

---

[5] Co-lead interim counsel is free to informally delegate work however they see fit.  The Court notes, however, that counsel should manage the allocation of resources with a view that this Court will scrutinize any fee applications at the conclusion of the case.

**IV.    CONCLUSION**

The Court appreciates Plaintiffs' counsel's diligence in concretely responding to the Court's questions at oral argument on July 17, 2020. Plaintiffs' motion to appoint interim counsel—with the amendments described in their supplemental briefing—is GRANTED.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 43.

SO ORDERED.

Dated: July 30, 2020

                                                    GREGORY H. WOODS
                                                   United States District Judge