**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE: DEVA CONCEPTS PRODUCTS LIABILITY LITIGATION** | |
| This Document Relates To: | **Master File No. 1:20-cv-01234-GHW** |
| All Cases | **CONSOLIDATED CLASS ACTION COMPLAINT** |
| | **JURY TRIAL DEMANDED** |

Plaintiffs WENDY BALDYGA, MARISA COHEN, TAMI NUNEZ, STEPHANIE WILLIAMS, ERIKA MARTINEZ-VILLA, TAHIRA SHAIKH, MARCY MCCREARY, LAUREN PETERSEN, JODY SHEWMAKER, DIANA HALL, ALANNA HALL, RACHEL MUNIZ (collectively, "Plaintiffs"), through counsel, bring this Consolidated Class Action Complaint against Defendant DEVA CONCEPTS, LLC, ("Defendant" or "Deva Concepts"), individually and on behalf of all others similarly situated, and complain and allege upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their attorneys:

<u>**NATURE OF THE ACTION**</u>

1.      This is a civil class action concerning Defendant's design, manufacture, distribution and sale of haircare products that have the propensity to cause, and have caused, consumers to suffer adverse reactions, such as scalp irritation, excessive shedding, hair loss, thinning, and breakage.[1]

---

[1]This case concerns the following haircare products: DevaCurl No-Poo Original; DevaCurl One Condition Original; DevaCurl Light Defining Gel; DevaCurl Low-Poo Original; DevaCurl Low-

2.      In 2002, Defendant rose to prominence when it created and developed the formula for the DevaCurl No-Poo Original ("No Poo"), which is marketed as an "innovative new haircare category" and a "game-changing alternative to traditional shampoo."[2]

3.      According to Defendant, No-Poo is a "first-of-its-kind, no-suds conditioning cleanser" that is "free of sulfates, parabens, and silicones" and which can be used "to gently cleanse curls without stripping the natural oils they need to look healthy, bouncy and simply gorgeous."[3] Defendant brags that No-Poo "changed the industry" by being "free of harsh ingredients long before it was buzzworthy . . . ."[4]

4.      A safe and gentle approach to haircare is at the center of Defendant's marketing strategy. In fact, one of the founders of Deva Concepts has said No-Poo "allows your scalp to regulate, and your hair to become more what nature intended."[5]

5.      No-Poo paved the way for Defendant to expand its product line, which features a uniform message that the Products are specially formulated for curly hair, which are safe, gentle, free of harsh ingredients, and superior to traditional haircare products.

---

Poo Delight; DevaCurl No-Poo Decadence; DevaCurl One Condition Delight; DevaCurl One Condition Decadence; Melt Into Moisture Mask; DevaCurl Styling Cream; DevaCurl Leave-In Decadence; DevaCurl Super Stretch; DevaCurl Wave Maker; DevaCurl SuperCream; DevaCurl Heaven in Hair; DevaCurl DevaFresh; DevaCurl High Shine; DevaCurl B'Leave-in; DevaCurl Frizz-Free Volumizing Foam; DevaCurl Arc AnGEL Gel; DevaCurl Beautiful Mess; DevaCurl Mist-er Right; DevaCurl Flexible Hold Hairspray; DevaCurl The Curl Maker; DevaCurl Set It Free; DevaCurl No Comb Detangling Spray; DevaCurl Buildup Buster; DevaCurl Deep Sea Repair; DevaCurl Wash Day Wonder; and DevaCurl Ultra Defining Gel (collectively, "Products").

[2] *See* https://www.devacurl.com/us/curl-101/our-story (last visited Sept. 30, 2020).

[3] *Id.*

[4] *Id.*

[5] *See* https://www.nytimes.com/2010/09/30/fashion/30Skin.html (last visited Jan. 13, 2020).

941485.1

6.     As part of its strategic marketing campaign, Defendant differentiates the Products from "traditional shampoo," which Defendant claims can be "formulated with harsh ingredients such as sulfates that can strip your curls of the essential oils they need" and "be too harsh for curls."[6]

7.     Defendant reinforces its pervasive marketing message that the Products are safe, gentle, free of harsh ingredients and superior to traditional haircare products by placing a promise on the front label of the Products, in all capital letters where it cannot be missed by consumers, that they are "100% SULFATE PARABEN SILICONE FREE."  Defendant's own website confirms that a reasonable consumer purchasing sulfate-free products believes that it will be safer and less harsh that other products as products containing sulfates "can be over-drying, create frizz and wreak havoc on your curls."[7]

8.     To the devastating detriment of reasonable consumers purchasing what they believe are safe, gentle, and non-irritating hair care products, the Products are anything but that.

9.     In truth, the DevaCurl Products are not free of harsh ingredients. Rather, the Products are formulated with ingredients that can cause scalp irritation, excessive shedding, hair loss, thinning, dryness, breakage, and/or balding during normal use by consumers. Indeed, thousands of consumers have reported adverse reactions as a result of using the Products.

10.     Despite these complaints, Defendant provides no warning about these consequences and, in fact, makes numerous assertions about the safe, gentle, and beneficial nature of the Products.

---

[6] *See* https://www.devacurl.com/us/products/cleansers/no-poo-original/v/32291872833618?yoReviewsPage=51 (last visited Oct. 1, 2020).
[7] *See* https://www.devacurl.com/us/curl-101/curl-knowledge/deva-dos-and-donts (last visited Oct. 1, 2020).

941485.1

11.     Rather than recall the Products, admit to problems with the Products, or provide adequate warnings regarding use of the Products, DevaCurl has doubled down on its efforts to convince consumers that the Products and their ingredients are superior to other haircare products on the market, stating "[a]ll of our products are safe to use and you can continue to use them with confidence."[8]

12.     Disturbingly, Defendant is aware of the issues with its Products, but conceals and fails to disclose that the Products can and have caused significant adverse reactions.

13.     Remarkably, while concealing and downplaying the complaints of consumers who have experienced adverse reactions as a result of using the Products, within the last year, DevaCurl shiftily reformulated several of the Products, and has vaguely stated that this reformulation occurred to "improve quality" and "enhance the product performance," including "replace[ing] formaldehyde donor preservatives to address consumer requests for gentler preservative ingredients," "improve viscosity," and "improve consistency of product Ph."[9]

14.     As Defendant now admits as part of its public relations campaign following the multitude of consumer complaints, prior to this reformulation, several of the Products contained Formaldehyde-donors, which are known irritants to Defendant, such as DMDM Hydantoin,[10] a human immune toxicant or allergen, Diazolidinyl Urea,[11] a human carcinogen and has been linked

---

[8] *See* https://www.factsaboutdevacurl.com/us/frequently-asked-questions (last visited Oct. 1, 2020).
[9] *See* https://oliahnaturals.com/devacurl-lawsuit-reformulation-after-hair-scandal/ (last visited Oct. 1, 2020).
[10] *See* https://www.safecosmetics.org/get-the-facts/chemicals-of-concern/known-carcinogens/ (last visited Oct. 1, 2020).
[11] *Id.*

941485.1

to cancer and allergic skin reactions, and Iodopropynyl Butylcarbamate,[12] a human carcinogen and has been linked to cancer and allergic skin reactions.

15.    Notably, Defendant replaced these harsh, irritating ingredients with other irritants.

16.    Defendant also now admits in a video buried on its website that they use synthetic fragrances, "some of which are considered allergens."[13]

17.    Despite the product reformulations and admissions that the Products contain known allergens, DevaCurl is still trying to convince consumers that the hair loss and other adverse reactions they have suffered while using the Products is unrelated to the Products. For instance, DevaCurl claims that curly hair is "more fragile and more prone to breakage,"[14] that hair loss can be attributed to personal "lifestyle," "stress," weight loss, illnesses, or even giving birth, and the cause of these adverse reactions is not the Products because the "products cannot cause hair loss" and "won't cause breakage."[15] The ongoing promotion of the defective and deceptively labeled Products is causing catastrophic harm to Plaintiffs and Class members.

18.    Defendant has long known of the hair loss and scalp irritation caused by the Products. Indeed, the U.S. Food and Drug Administration ("FDA") has received hundreds of complaints about DevaCurl Products, the earliest of which date back to January 2018.[16] Nor can Defendant deny knowledge of the hundreds of complaints posted on social media sites like

---

[12] *See* https://www.annmariegianni.com/ingredient-watch-list-iodopropynyl-butylcarbamate-the-toxic-preservative/ (last visited Oct. 1, 2020).

[13] *See* https://www.devacurl.com/us/curl-101/curl-knowledge/scent-sitivity (last visited Oct. 1, 2020).

[14] *See* https://www.devacurl.com/us/curl-101/curl-knowledge/break-breakage (last visited Oct. 1, 2020).

[15] *See* https://www.devacurl.com/us/curl-101/curl-knowledge/hair-loss (last visited Oct. 1, 2020). https://www.devacurl.com/blog/hair-shedding-101/ (last visited Oct. 1, 2020).

[16] *See* https://www.thecut.com/2020/03/is-devacurl-the-reason-womens-hair-is-falling-out.html (last visited Oct. 1, 2020).

941485.1

Facebook. Major media outlets including the ABC television affiliate in New York City have broken the story.[17] Defendant has explicitly acknowledged the reports of hair loss and scalp irritation associated with the Products, going so far as to post an explanatory statement on its website.[18]

19.     Defendant has even created a "DevaCurl Expert Curl Council" in an attempt to protect its brand and deal with the consumer backlash as a result of the issues alleged herein.[19]

20.     Despite notice and knowledge of the problems caused by the Products, Defendant has not recalled the Products, has not provided any warnings of the risks, has denied that the Products cause the reported health issues, and has not offered its customers any compensation for their damages.

21.     Plaintiffs and the proposed Classes were all exposed to and saw Defendant's deceptive Product label claims and did not receive the benefit of their bargain.

22.     Every consumer who purchased the Products without the true facts about the Products' inherent safety risks prior to purchase was injured at the point of sale when instead of purchasing Products that were safe, gentle, and non-irritating, they received Defendant's defective Products that have the propensity to cause hair loss and other adverse reactions.

23.     Had Plaintiffs and other Class members known that Defendant's Products would cause hair loss, scalp irritation, and other problems, they would not have purchased the Products or would not have paid a premium price.

---

[17] *See* https://abc7ny.com/health/customers-say-curly-styling-products-made-their-hair-fall-out/5906690/ (last visited Oct. 1, 2020).
[18] *See* https://www.devacurl.com/us/deva-community-statement (last visited Oct. 1, 2020).
[19] *See* https://www.refinery29.com/en-us/2020/02/9363703/devacurl-hair-loss-damage-controversy (last visited Oct. 1, 2020).

941485.1

24.     By marketing, selling, and distributing the Products throughout New York and the United States, Defendant made actionable statements that the Products were free from defects and safe and fit for their ordinary intended use and purpose.

25.     By marketing, advertising, selling, and distributing the Products, Defendant made actionable statements and omissions that ordinary use of the Products would not involve undisclosed safety risks. Defendant further concealed what it knew or should have known regarding the safety risks resulting from material defects in the Products.

26.     Plaintiffs and each of the Class members have been damaged and suffered an injury in fact caused by Defendant's false, fraudulent, unfair, deceptive, and misleading practices and seek compensatory damages and injunctive relief.

27.     Plaintiffs and Class members suffered economic losses insofar as they paid more for a product than they would have had Defendant not made misrepresentations and material omissions on the Products' labeling and in the pervasive marketing campaign. Plaintiffs and Class members have also unfortunately suffered from personal injuries and adverse reactions as a result of using the Products, which contained ingredients that Defendant knows are irritating and capable of causing the injuries described herein.

28.     Given the massive quantities of the Product sold all over the country, this class action is the proper vehicle for addressing Defendant's misconduct and for attaining needed relief for those affected.

941485.1

## JURISDICTION AND VENUE

29.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 1367 because this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and in which some members of the proposed Class are citizens of a state different from Defendant.

30.     This Court has personal jurisdiction over Defendant because it transacts business in the United States, including in this District, has substantial aggregate contacts with the United States, including in this District, engaged in conduct that has and had a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, and purposely availed itself of the laws of the United States.

31.     In accordance with 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the conduct giving rise to Plaintiffs' claims occurred in this District, Defendant transacts business in this District, and at least one Plaintiff resides in this District.

## THE PARTIES

32.     Unless otherwise indicated, all Plaintiffs identified below purchased or used the Products for personal, family, and household purposes. All Plaintiffs were harmed and suffered actual damages.

33.     For ease of reference, the following chart identifies and organizes the individual and representative Plaintiffs by the state in which they purchased or used the Products, and identifies the Products purchased and used by Plaintiffs:

941485.1

| Class Representative | State | Products |
|---|---|---|
| Wendy Baldyga | California | Low-Poo Delight<br>One Condition Original |
| Marisa Cohen | California | One Condition Decadence<br>No-Poo Original<br>Low-Poo Original<br>B'Leave-in |
| Tami Nunez | Florida<br>Pennsylvania | One Condition Original<br>One Condition Decadence<br>Wave Maker<br>Deep Sea Repair<br>Arc AnGEL Gel<br>Heaven in Hair<br>Low-Poo Original<br>Mist-er Right |
| Stephanie Williams | Georgia | No-Poo Original<br>Wave Maker<br>Ultra Defining Gel |
| Erika Martinez-Villa | Illinois | SuperCream<br>Ultra Defining Gel<br>One Condition Original<br>No-Poo Original<br>Arc AnGEL Gel |
| Tahira Shaikh | Illinois | No-Poo Original<br>One Condition<br>Deep Sea Repair<br>Light Defining Gel |
| Lauren Petersen | Minnesota<br>Kentucky<br>Florida | One Condition Original<br>One Condition Delight<br>No Poo Original<br>Lo Poo Original<br>Lo Poo Delight<br>B'Leave In<br>Frizz Free Volumizing Foam<br>Super Cream Styler<br>Styling Cream Touchable Curl Definer<br>Mist-er Right Dream Curl Refresher<br>Heaven in Hair |

941485.1

| | | Melt into Moisture<br>Buildup Buster<br>Wave Whisperer<br>Waves Ahead<br>Deep Sea Repair<br>Set It Free Shine and Finish<br>Ultra Defining Gel<br>Wave Maker<br>Arc AnGEL Gel |
|---|---|---|
| Marcy McCreary | Massachusetts | No Poo Original<br>One Condition Decadence<br>One Condition Original |
| Jody Shewmaker | Missouri | Low-Poo Original<br>Low-Poo Delight<br>One Condition Original<br>One Condition Delight<br>Leave-In Decadence<br>Ultra Defining Gel<br>Wave Maker<br>SuperCream<br>Frizz-Free Volumizing Foam<br>Flexible Hold Hairspray |
| Diana Hall | New Jersey | Low-Poo Delight<br>One Condition Original<br>Light Defining Gel<br>Frizz-Free Volumizing Foam<br>One Condition Delight<br>Wave Maker |
| Alanna Hall | New York | No-Poo Original<br>One Condition Original<br>No-Poo Decadence<br>Arc AnGEL Gel<br>SuperCream<br>Ultra Defining Gel<br>One Condition Delight<br>Heaven in Hair |

941485.1

| | | No-Poo Original |
| --- | --- | --- |
| | | One Condition Original |
| | | Leave-In Decadence |
| | | SuperCream |
| | | Melt Into Moisture Mask |
| Rachel Muniz | New York | Ultra Defining Gel |

***California Plaintiff Wendy Baldyga***

34.     Plaintiff Wendy Baldyga is an individual who resides in Morgan Hill, California.  Plaintiff Baldyga purchased the Products identified in the table above for approximately ten months, starting in April 2019 from Ulta.com.

35.     The packaging of the Products Plaintiff Baldyga purchased contained the representation, among others, that they were "100% Sulfate Paraben Silicone Free" and formulated specifically for curly hair. Additionally, the Products failed to contain a warning that the Products were a potential hazard to consumers. Plaintiff Baldyga relied upon the representations and omissions made by Defendant and thus reasonably believed that the Products would be safe, gentle, and free of harsh ingredients that could adversely impact her hair or scalp. Plaintiff Baldyga read the instructions on the Product packaging and used the Products as directed by Defendant.

36.     As a result of using the Products, Plaintiff Baldyga experienced an adverse reaction, including substantial hair loss, dry and damaged hair, and scalp irritation.  Plaintiff Baldyga suffered economic loss and personal injury as a result of using the Products.  Plaintiff Baldyga did not receive the benefit of her bargain.  Rather, she purchased the Products with undisclosed health and safety risks, or a lack of warning of these risks, and which were unfit for their ordinary use and of a lesser standard, grade and quality than represented.

941485.1

37.     Had Defendant not made the false, misleading, and deceptive representations and omissions about the Products, Plaintiff Baldyga would not have been willing to purchase, or alternatively, pay the same amount for the Products.  Plaintiff Baldyga purchased, purchased more of, and/or paid more for the Products than she would have had she known the truth about the Products. Since the Products Plaintiff Baldyga received were worth less than the Products for which she paid, Plaintiff Baldyga was injured in fact and lost money and suffered personal injuries as a result of Defendant's improper conduct.

38.     Plaintiff Baldyga would consider purchasing the Products again if she could trust the labeling and marketing that they are safe, gentle for use, and, in fact, free of harsh ingredients, and worked as advertised and instructed.

### *California Plaintiff Marisa Cohen*

39.     Plaintiff Marisa Cohen is an individual who resides in Los Angeles, California. She purchased the Products identified in the table above from Cosmoprof and Capella Salon in Los Angeles, from 2017 to approximately February 2020.

40.     The packaging of the Products Plaintiff Cohen purchased contained the representation, among others, that they were "100% Sulfate Paraben Silicone Free" and formulated specifically for curly hair. Additionally, the Products failed to contain a warning that the Products were a potential hazard to consumers. Plaintiff Cohen relied upon the representations and omissions made by Defendant and thus reasonably believed that the Products would be safe, gentle, and free of harsh ingredients that could adversely impact her hair or scalp. Plaintiff Cohen read the instructions on the Product packaging and used the Products as directed by Defendant.

41.     As a result of using the Products, Plaintiff Cohen experienced an adverse reaction, including substantial hair loss, dry and damaged hair, scalp irritation and sores on her scalp.

941485.1

Plaintiff Cohen suffered economic loss and personal injury as a result of using the Products. Plaintiff Cohen did not receive the benefit of her bargain. Rather, she purchased the Products with undisclosed health and safety risks, or a lack of warning of these risks, and which were unfit for their ordinary use and of a lesser standard, grade and quality than represented.

42. Had Defendant not made the false, misleading, and deceptive representations and omissions about the Products, Plaintiff Cohen would not have been willing to purchase, or alternatively, pay the same amount for the Products. Plaintiff Cohen purchased, purchased more of, and/or paid more for the Products than she would have had she known the truth about the Products. Since the Products Plaintiff Cohen received were worth less than the Products for which she paid, Plaintiff Cohen was injured in fact and lost money and suffered personal injuries as a result of Defendant's improper conduct.

43. Plaintiff Cohen would consider purchasing the Products again if she could trust the labeling and marketing that they are safe, gentle for use, and, in fact, free of harsh ingredients, and worked as advertised and instructed.

### *Florida and Pennsylvania Plaintiff Tami Nunez*

44. Plaintiff Tami Nunez is an individual who resides in Sanford, Florida. She purchased the Products identified in the table above from Ulta.com and Ciseaux Salon located in Winter Park and Ulta in Sanford, Florida, Altamonte Springs, Florida and Washington, Pennsylvania from 2013 to February 2020.

45. The packaging of the Products Plaintiff Nunez purchased contained the representation, among others, that they were "100% Sulfate Paraben Silicone Free" and formulated specifically for curly hair. Additionally, the Products failed to contain a warning that the Products were a potential hazard to consumers. Plaintiff Nunez relied upon the representations

941485.1

and omissions made by Defendant and thus reasonably believed that the Products would be safe, gentle, and free of harsh ingredients that could adversely impact her hair or scalp. Plaintiff Nunez read the instructions on the Product packaging and used the Products as directed by Defendant.

46.     As a result of using the Products, Plaintiff Nunez experienced an adverse reaction, including substantial hair loss, dry and damaged hair, and scalp irritation. Plaintiff Nunez suffered economic loss and personal injury as a result of using the Products. Plaintiff Nunez did not receive the benefit of her bargain. Rather, she purchased the Products with undisclosed health and safety risks, or a lack of warning of these risks, and which were unfit for their ordinary use and of a lesser standard, grade and quality than represented.

47.     Had Defendant not made the false, misleading, and deceptive representations and omissions about the Products, Plaintiff Nunez would not have been willing to purchase, or alternatively, pay the same amount for the Products. Plaintiff Cohen purchased, purchased more of, and/or paid more for the Products than she would have had she known the truth about the Products. Since the Products Plaintiff Nunez received were worth less than the Products for which she paid, Plaintiff Nunez was injured in fact and lost money and suffered personal injuries as a result of Defendant's improper conduct.

48.     Plaintiff Nunez would consider purchasing the Products again if she could trust the labeling and marketing that they are safe, gentle for use, and, in fact, free of harsh ingredients, and worked as advertised and instructed.

### _Georgia Plaintiff Stephanie Williams_

49.     Plaintiff Stephanie Williams is an individual who resides in Lithonia, Georgia. She purchased the Products identified in the table above from Sephora in Lithonia, Georgia and Sephora.com, from February 2019 until approximately December 2019 or January 2020.

941485.1

50. The packaging of the Products Plaintiff Williams purchased contained the representation, among others, that they were "100% Sulfate Paraben Silicone Free" and formulated specifically for curly hair. Additionally, the Products failed to contain a warning that the Products were a potential hazard to consumers. Plaintiff Williams relied upon the representations and omissions made by Defendant and thus reasonably believed that the Products would be safe, gentle, and free of harsh ingredients that could adversely impact her hair or scalp. Plaintiff Williams read the instructions on the Product packaging and used the Products as directed by Defendant.

51. As a result of using the Products, Plaintiff Williams experienced an adverse reaction, including hair loss, dry and damaged hair, and scalp irritation. Plaintiff Williams suffered economic loss and personal injury as a result of using the Products. Plaintiff Williams did not receive the benefit of her bargain. Rather, she purchased the Products with undisclosed health and safety risks, or a lack of warning of these risks, and which were unfit for their ordinary use and of a lesser standard, grade and quality than represented.

52. Had Defendant not made the false, misleading, and deceptive representations and omissions about the Products, Plaintiff Williams would not have been willing to purchase, or alternatively, pay the same amount for the Products. Plaintiff Williams purchased, purchased more of, and/or paid more for the Products than she would have had she known the truth about the Products. Since the Products Plaintiff Williams received were worth less than the Products for which she paid, Plaintiff Williams was injured in fact and lost money and suffered personal injuries as a result of Defendant's improper conduct.

941485.1

53.    Plaintiff Williams would consider purchasing the Products again if she could trust the labeling and marketing that they are safe, gentle for use, and, in fact, free of harsh ingredients, and worked as advertised and instructed.

### *Illinois Plaintiff Erika Martinez-Villa*

54.    Plaintiff Erika Martinez-Villa is an individual who resides in Round Lake, Illinois.  She purchased the Products identified in the table above from 2018 to February 2020, from Ulta.com and various retailers in Gurnee and McHenry, Illinois.

55.    The packaging of the Products Plaintiff Martinez-Villa purchased contained the representation, among others, that they were "100% Sulfate Paraben Silicone Free" and formulated specifically for curly hair. Additionally, the Products failed to contain a warning that the Products were a potential hazard to consumers. Plaintiff Martinez-Villa relied upon the representations and omissions made by Defendant and thus reasonably believed that the Products would be safe, gentle, and free of harsh ingredients that could adversely impact her hair or scalp. Plaintiff Martinez-Villa read the instructions on the Product packaging and used the Products as directed by Defendant.

56.    As a result of using the Products, Plaintiff Martinez-Villa experienced an adverse reaction, including substantial hair loss, dry and damaged hair, and scalp irritation.  Plaintiff Martinez-Villa suffered economic loss and personal injury as a result of using the Products.  Plaintiff Martinez-Villa did not receive the benefit of her bargain.  Rather, she purchased the Products with undisclosed health and safety risks, or a lack of warning of these risks, and which were unfit for their ordinary use and of a lesser standard, grade and quality than represented.

941485.1

57. Had Defendant not made the false, misleading, and deceptive representations and omissions about the Products, Plaintiff Martinez-Villa would not have been willing to purchase, or alternatively, pay the same amount for the Products. Plaintiff Martinez-Villa purchased, purchased more of, and/or paid more for the Products than she would have had she known the truth about the Products. Since the Products Plaintiff Martinez-Villa received were worth less than the Products for which she paid, Plaintiff Martinez-Villa was injured in fact and lost money and suffered personal injuries as a result of Defendant's improper conduct.

58. Plaintiff Martinez-Villa would consider purchasing the Products again if she could trust the labeling and marketing that they are safe, gentle for use, and, in fact, free of harsh ingredients, and worked as advertised and instructed.

### *Illinois Plaintiff Tahira Shaikh*

59. Plaintiff Tahira Shaikh is an individual who resides in Chicago, Illinois. She purchased the Products identified in the table above from Ulta in Chicago, Illinois, in or around December 2019.

60. The packaging of the Products Plaintiff Shaikh purchased contained the representation, among others, that they were "100% Sulfate Paraben Silicone Free" and formulated specifically for curly hair. Additionally, the Products failed to contain a warning that the Products were a potential hazard to consumers. Plaintiff Shaikh relied upon the representations and omissions made by Defendant and thus reasonably believed that the Products would be safe, gentle, and free of harsh ingredients that could adversely impact her hair or scalp. Plaintiff Shaikh read the instructions on the Product packaging and used the Products as directed by Defendant.

941485.1

61. As a result of using the Products, Plaintiff Shaikh experienced an adverse reaction, including substantial hair loss, dry and damaged hair, and scalp irritation. Plaintiff Shaikh suffered economic loss and personal injury as a result of using the Products. Plaintiff Shaikh did not receive the benefit of her bargain. Rather, she purchased the Products with undisclosed health and safety risks, or a lack of warning of these risks, and which were unfit for their ordinary use and of a lesser standard, grade and quality than represented.

62. Had Defendant not made the false, misleading, and deceptive representations and omissions about the Products, Plaintiff Shaikh would not have been willing to purchase, or alternatively, pay the same amount for the Products. Plaintiff Shaikh purchased, purchased more of, and/or paid more for the Products than she would have had she known the truth about the Products. Since the Products Plaintiff Shaikh received were worth less than the Products for which she paid, Plaintiff Shaikh was injured in fact and lost money and suffered personal injuries as a result of Defendant's improper conduct.

63. Plaintiff Shaikh would consider purchasing the Products again if she could trust the labeling and marketing that they are safe, gentle for use, and, in fact, free of harsh ingredients, and worked as advertised and instructed.

### *Massachusetts Plaintiff Marcy McCreary*

64. Plaintiff Marcy McCreary is an individual who resides in Hull, Massachusetts. She purchased the Products identified in the table above from CVS in Hull, Massachusetts from October 2018 until November 2018.

65. The packaging of the Products Plaintiff McCreary purchased contained the representation, among others, that they were "100% Sulfate Paraben Silicone Free" and formulated specifically for curly hair. Additionally, the Products failed to contain a warning that

the Products were a potential hazard to consumers. Plaintiff McCreary relied upon the representations and omissions made by Defendant and thus reasonably believed that the Products would be safe, gentle, and free of harsh ingredients that could adversely impact her hair or scalp. Plaintiff McCreary read the instructions on the Product packaging and used the Products as directed by Defendant.

66.     As a result of using the Products, Plaintiff McCreary experienced an adverse reaction, including substantial hair loss, and dry and damaged hair.  Plaintiff McCreary suffered economic loss and personal injury as a result of using the Products.  Plaintiff McCreary did not receive the benefit of her bargain.  Rather, she purchased the Products with undisclosed health and safety risks, or a lack of warning of these risks, and which were unfit for their ordinary use and of a lesser standard, grade and quality than represented.

67.     Had Defendant not made the false, misleading, and deceptive representations and omissions about the Products, Plaintiff McCreary would not have been willing to purchase, or alternatively, pay the same amount for the Products.  Plaintiff McCreary purchased, purchased more of, and/or paid more for the Products than she would have had she known the truth about the Products. Since the Products Plaintiff McCreary received were worth less than the Products for which she paid, Plaintiff McCreary was injured in fact and lost money and suffered personal injuries as a result of Defendant's improper conduct.

68.     Plaintiff McCreary would consider purchasing the Products again if she could trust the labeling and marketing that they are safe, gentle for use, and, in fact, free of harsh ingredients, and worked as advertised and instructed.

941485.1

## Minnesota, Kentucky, and Florida Plaintiff Lauren Petersen

69.    Plaintiff Lauren Petersen is an individual who resides in Stillwater, Minnesota. She purchased the Products identified in the table above from Uptown Curl in Minneapolis, Minnesota, Ulta in Woodbury Minnesota and Bowling Green, Kentucky, and Ft. Walton Beach, Florida, and possibly from other retailers, from September 2016 to February 2020.

70.    The packaging of the Products Plaintiff Petersen purchased contained the representation, among others, that they were "100% Sulfate Paraben Silicone Free" and formulated specifically for curly hair. Additionally, the Products failed to contain a warning that the Products were a potential hazard to consumers. Plaintiff Petersen relied upon the representations and omissions made by Defendant and thus reasonably believed that the Products would be safe, gentle, and free of harsh ingredients that could adversely impact her hair or scalp. Plaintiff Petersen read the instructions on the Product packaging and used the Products as directed by Defendant.

71.    As a result of using the Products, Plaintiff Petersen experienced an adverse reaction, including substantial hair loss, dry and damaged hair, scalp irritation and scabbing. Plaintiff Petersen suffered economic loss and personal injury as a result of using the Products.  Plaintiff Petersen did not receive the benefit of her bargain.  Rather, she purchased the Products with undisclosed health and safety risks, or a lack of warning of these risks, and which were unfit for their ordinary use and of a lesser standard, grade and quality than represented.

72.    Had Defendant not made the false, misleading, and deceptive representations and omissions about the Products, Plaintiff Petersen would not have been willing to purchase, or alternatively, pay the same amount for the Products.  Plaintiff Petersen purchased, purchased more of, and/or paid more for the Products than she would have had she known the truth about

941485.1

the Products. Since the Products Plaintiff Petersen received were worth less than the Products for which she paid, Plaintiff Petersen was injured in fact and lost money and suffered personal injuries as a result of Defendant's improper conduct.

73.     Plaintiff Petersen would consider purchasing the Products again if she could trust the labeling and marketing that they are safe, gentle for use, and, in fact, free of harsh ingredients, and worked as advertised and instructed.

### *Missouri Plaintiff Jody Shewmaker*

74.     Plaintiff Jody Shewmaker is an individual who resides in Pleasant Hill, Missouri. She purchased the Products identified in the table above from Ulta and Beauty Brands in Lee's Summit and Belton, Missouri from 2016 to 2020.

75.     The packaging of the Products Plaintiff Shewmaker purchased contained the representation, among others, that they were "100% Sulfate Paraben Silicone Free" and formulated specifically for curly hair. Additionally, the Products failed to contain a warning that the Products were a potential hazard to consumers. Plaintiff Shewmaker relied upon the representations and omissions made by Defendant and thus reasonably believed that the Products would be safe, gentle, and free of harsh ingredients that could adversely impact her hair or scalp. Plaintiff Shewmaker read the instructions on the Product packaging and used the Products as directed by Defendant.

76.     As a result of using the Products, Plaintiff Shewmaker experienced an adverse reaction, including substantial hair loss, dry and damaged hair, and scalp irritation.  Plaintiff Shewmaker suffered economic loss and personal injury as a result of using the Products.  Plaintiff Shewmaker did not receive the benefit of her bargain.  Rather, she purchased the Products with

21

undisclosed health and safety risks, or a lack of warning of these risks, and which were unfit for their ordinary use and of a lesser standard, grade and quality than represented.

77.    Had Defendant not made the false, misleading, and deceptive representations and omissions about the Products, Plaintiff Shewmaker would not have been willing to purchase, or alternatively, pay the same amount for the Products.  Plaintiff Shewmaker purchased, purchased more of, and/or paid more for the Products than she would have had she known the truth about the Products. Since the Products Plaintiff Shewmaker received were worth less than the Products for which she paid, Plaintiff Shewmaker was injured in fact and lost money and suffered personal injuries as a result of Defendant's improper conduct.

78.    Plaintiff Shewmaker would consider purchasing the Products again if she could trust the labeling and marketing that they are safe, gentle for use, and, in fact, free of harsh ingredients, and worked as advertised and instructed.

### _New Jersey Plaintiff Diana Hall_

79.    Plaintiff Diana Hall is an individual who resides in Hackensack, New Jersey.  She purchased the Products identified in the table above from Ulta in Paramus, New Jersey, Harmon Beauty in Hackensack, New Jersey, and All Curls Out in North Arlington from the end of 2017 to approximately December 2019.

80.    The packaging of the Products Plaintiff Hall purchased contained the representation, among others, that they were "100% Sulfate Paraben Silicone Free" and formulated specifically for curly hair. Additionally, the Products failed to contain a warning that the Products were a potential hazard to consumers. Plaintiff Hall relied upon the representations and omissions made by Defendant and thus reasonably believed that the Products would be safe,

gentle, and free of harsh ingredients that could adversely impact her hair or scalp. Plaintiff Hall read the instructions on the Product packaging and used the Products as directed by Defendant.

81.    As a result of using the Products, Plaintiff Hall experienced an adverse reaction, including substantial hair loss, and dry and damaged hair.  Plaintiff Hall suffered economic loss and personal injury as a result of using the Products.  Plaintiff Hall did not receive the benefit of her bargain.  Rather, she purchased the Products with undisclosed health and safety risks, or a lack of warning of these risks, and which were unfit for their ordinary use and of a lesser standard, grade and quality than represented.

82.    Had Defendant not made the false, misleading, and deceptive representations and omissions about the Products, Plaintiff Hall would not have been willing to purchase, or alternatively, pay the same amount for the Products.  Plaintiff Hall purchased, purchased more of, and/or paid more for the Products than she would have had she known the truth about the Products. Since the Products Plaintiff Hall received were worth less than the Products for which she paid, Plaintiff Hall was injured in fact and lost money and suffered personal injuries as a result of Defendant's improper conduct.

83.    Plaintiff Hall would consider purchasing the Products again if she could trust the labeling and marketing that they are safe, gentle for use, and, in fact, free of harsh ingredients, and worked as advertised and instructed.

### *New York Plaintiff Alanna Hall*

84.    Plaintiff Alanna Hall is an individual who resides in New York City, New York. She purchased the Products identified in the table above from approximately 2013 to January 2020, but started using the Products exclusively from 2017, from Amazon, Ulta.com Deva Salon in New York City, New York.

85.     The packaging of the Products Plaintiff Hall purchased contained the representation, among others, that they were "100% Sulfate Paraben Silicone Free" and formulated specifically for curly hair. Additionally, the Products failed to contain a warning that the Products were a potential hazard to consumers. Plaintiff Hall relied upon the representations and omissions made by Defendant and thus reasonably believed that the Products would be safe, gentle, and free of harsh ingredients that could adversely impact her hair or scalp. Plaintiff Hall read the instructions on the Product packaging and used the Products as directed by Defendant.

86.     As a result of using the Products, Plaintiff Hall experienced an adverse reaction, including substantial hair loss, dry or damaged hair, and scalp irritation. Plaintiff Hall suffered economic loss and personal injury as a result of using the Products.  Plaintiff Hall did not receive the benefit of her bargain.  Rather, she purchased the Products with undisclosed health and safety risks, or a lack of warning of these risks, and which were unfit for their ordinary use and of a lesser standard, grade and quality than represented.

87.     Had Defendant not made the false, misleading, and deceptive representations and omissions about the Products, Plaintiff Hall would not have been willing to purchase, or alternatively, pay the same amount for the Products.  Plaintiff Hall purchased, purchased more of, and/or paid more for the Products than she would have had she known the truth about the Products. Since the Products Plaintiff Hall received were worth less than the Products for which she paid, Plaintiff Hall was injured in fact and lost money and suffered personal injuries as a result of Defendant's improper conduct.

88.     Plaintiff Hall would consider purchasing the Products again if she could trust the labeling and marketing that they are safe, gentle for use, and, in fact, free of harsh ingredients, and worked as advertised and instructed.

941485.1

89.     Plaintiff Rachel Muniz is an individual who resides in Yonkers, New York.  She purchased the Products identified in the table above from Ulta and a Deva salon in Bronx, New York from 2016 to July 2020.

90.     The packaging of the Products Plaintiff Muniz purchased contained the representation, among others, that they were "100% Sulfate Paraben Silicone Free" and formulated specifically for curly hair. Additionally, the Products failed to contain a warning that the Products were a potential hazard to consumers. Plaintiff Muniz relied upon the representations and omissions made by Defendant and thus reasonably believed that the Products would be safe, gentle, and free of harsh ingredients that could adversely impact her hair or scalp. Plaintiff Muniz read the instructions on the Product packaging and used the Products as directed by Defendant.

91.     As a result of using the Products, Plaintiff Muniz experienced an adverse reaction, including substantial hair loss, excessive shedding, dry and damaged hair, and scalp irritation.  Plaintiff Muniz suffered economic loss and personal injury as a result of using the Products.  Plaintiff Muniz did not receive the benefit of her bargain.  Rather, she purchased the Products with undisclosed health and safety risks, or a lack of warning of these risks, and which were unfit for their ordinary use and of a lesser standard, grade and quality than represented.

92.     Had Defendant not made the false, misleading, and deceptive representations and omissions about the Products, Plaintiff Muniz would not have been willing to purchase, or alternatively, pay the same amount for the Products.  Plaintiff Muniz purchased, purchased more of, and/or paid more for the Products than she would have had she known the truth about the Products. Since the Products Plaintiff Muniz received were worth less than the Products for which

she paid, Plaintiff Muniz was injured in fact and lost money and suffered personal injuries as a result of Defendant's improper conduct.

93.     Plaintiff Muniz would consider purchasing the Products again if she could trust the labeling and marketing that they are safe, gentle for use, and, in fact, free of harsh ingredients, and worked as advertised and instructed.

94.     Defendant Deva Concepts LLC is incorporated in Delaware with its principal place of business at 560 Broadway, Suite 206, New York, NY.

## COMMON FACTUAL ALLEGATIONS

I.     **Defendant's Pervasive Labeling and Marketing Campaign Induces Consumers to Believe They Are Purchasing Products That Are Safe, Gentle, and Free from Harsh Ingredients.**

95.     At all relevant times, Defendant has engaged in a uniform, nationwide marketing campaign centered on the safe and gentle nature of the Products.

96.     DevaCurl's labeling, advertising, promotion and sale of the Products target women with curly hair, whom DevaCurl calls its "Curlfriends," who want products "free of harsh ingredients" that "help[] curls look and feel healthy, conditioned, soft, defined, shiny, and frizz free."[20]

97.     This message is reinforced at the point of purchase of every Product with the "100% SULFATE PARABAN SILICONE FREE" claim that is found on the front label of all of the Products.

---

[20] *See* https://www.devacurl.com/us/curl-101/product-philosophy (last visited Oct. 1, 2020).

941485.1

98.     The Products' labels create the impression that Products free from sulfates are safer and gentler because according to Defendant, sulfate shampoos "can be over-drying, create frizz and wreak havoc on your curls."[21]

99.     Defendant's marketing promises originated when No-Poo first entered the market. Defendant claimed No-Poo was "free of harsh ingredients," a complete replacement for traditional shampoo that creates healthy curly hair without color fading, and a "game-changing alternative to traditional shampoo.[22] DevaCurl touted that No-Poo was "free of harsh ingredients long before it was buzzworthy" because "it was the right thing to do for curls."[23]

100.     No-Poo paved the way for Defendant to expand its product line, which features a uniform message that the Products are safe, gentle, free of harsh ingredients, and superior to traditional haircare products. Defendant then focused its entire advertising and marketing campaign on the notion that in choosing DevaCurl, consumers can get a safer, gentler, and superior line of haircare products.

101.     DevaCurl's website reinforces its labeling and marketing representations with numerous promises regarding the Products' safe and gentle qualities and representations that the Products do not contain any harsh ingredients. The following representations demonstrate the pervasive nature of this marketing message:

a.   The Products are not "formulated with harsh ingredients such as sulfates" or with ingredients "too harsh for curls."[24] Instead, they are formulated with "good-for-you

---

[21] *See* https://www.devacurl.com/us/curl-101/curl-knowledge/deva-dos-and-donts (last visited Oct. 1, 2020).
[22] *See* https://www.devacurl.com/us/curl-101/product-philosophy (last visited Oct. 1, 2020).
[23] *See* https://www.devacurl.com/us/curl-101/our-story (last visited Sept. 30, 2020).
[24] *See* https://www.devacurl.com/us/products/cleansers/no-poo-original/v/32291872833618 (last visited Oct. 1, 2020).

ingredients (and without those harsh ingredients),"[25] "which is why we have formulated our products without SLS/SLES sulfates, parabens or silicones."[26]

b.  The Products contain only "ingredients with a conscience," are "cruelty free," and lack sulfates, silicones, parabens, phthalates, mineral oil, and gluten.[27]"

c.  The Products are "rooted in curl science" and are "formulated with a moisture foundation that helps curls look and feel healthy, conditioned, soft, defined, shiny, and frizz-free."[28]

d.  The Products contain only "natural and functional ingredients." [29]

e.  The Products go through "extensive product testing." The testing consists of products undergoing Defendant's "strict safety testing protocols" which includes testing "products on actual people, not mannequins or hair swatches."[30]

102.  Defendant bolsters its claims that the Products are safe, gentle, and free of harsh ingredients with photographs of natural ingredients such as chia-flaxseed extract, jojoba oil, saffron flower extract, and passionfruit oil. However, as described below, the full list of ingredients found in the Products are not as the advertising suggests.

103.  What's worse, rather than warn consumers of the risk of harm associated with use of its Products, on its website, Defendant tells consumers the opposite: the Products cannot possibly be the root cause of any adverse reactions:

---

[25] *See* https://www.devacurl.com/us/products/cleansers/low-poo-original/v/29778540789842 (last visited Oct. 1, 2020).
[26] *See* https://www.devacurl.com/us/curl-101/product-philosophy (last visited Oct. 1. 2020).
[27] *See Id.*
[28] *See Id.*
[29] *Id.*
[30] *Id.*

a. "Our products do not cause hair loss because they do not penetrate the scalp or affect the hair bulb." It further confuses consumers by claiming, "Hair loss is often related to excessive scalp irritation, medical conditions and other stressors."[31]

b. "Our products do not cause hair loss because they do not penetrate the scalp or affect the hair bulb."[32]

c. "Hair loss is often related to excessive scalp irritation, medical conditions and other stressors."[33]

104.    Defendant's pervasive marketing campaign assures consumers purchasing its Products that they are buying a haircare system that is safe, gentle, and non-irritating.

## II.    **Defendant Concealed Known Risks Associated with the Products' Use.**

105.    In addition to the material misrepresentations regarding the Products' safe and gentle formulations, Defendant made material omissions by failing to disclose the known risks of using the Products regularly.

106.    Rather than receiving a safe, gentle line of Products, the reasonable consumer of the Products has a significant risk of experiencing hair loss, hair damage, excessive shedding, scalp irritation, balding and other adverse reactions with normal use.

107.    The Products used by Plaintiffs, in conjunction and alone, have the propensity to cause the adverse reactions detailed herein as a result of their formulations, which are neither safe nor gentle.

## III.    **Defendant's Label Misrepresentations and Omissions are Material to Consumers.**

---

[31] *Id.*

[32] *See* https://www.devacurl.com/us/products/conditioners/one-condition-delight/v/32292025565266 (last visited Oct. 1, 2020).

[33] *Id.*

108.    In recent years, consumers have shown significant interest in products that are free from harsh ingredients and have shifted to Products that are safer and gentler for application.

109.    Defendant is aware of the consumer trend toward products that are free from harsh ingredients and thus labels its Products as described herein to demonstrate to reasonable consumers that the Products are safe, gentle, and free from harsh ingredients.

110.    Consumers purchase the Products in reliance upon these representations, and the representations set forth above, because they want Products made of ingredients, which are both safer than ingredients in other products and which promote healthier hair than other traditional cleansers and conditioners.

111.    Defendant's labeling and marketing, which is false and misleading, allows it to command a premium price for the Products—far and above what normal hair care products cost.

112.    Reasonable consumers would not purchase the Products or pay the price they paid for the Products if they knew of the severe risk of hair loss and adverse reactions as described herein.

**IV.    Defendant's Reformulation Is an Admission That the Products Contained Ingredients That Are Likely to Cause Irritation and Adverse Reactions, Yet Defendant Replaced Irritants with More Irritants.**

113.    Until recently, the Product ingredients included formaldehyde donors and other chemicals known to cause skin allergens and irritants.

114.    Formaldehyde donors release small amounts of formaldehyde over time, and have been linked to cancer, skin irritation, hair loss, and other adverse reactions.[34]

---

[34] *See* https://www.safecosmetics.org/get-the-facts/chemicals-of-concern/formaldehyde/
(last visited Oct. 1, 2020).

115.     Within the last year, as part of a reformulation, Defendant, tacitly admitting that the Products included formaldehyde donors and other ingredients known to cause skin allergens and irritants, removed from the Products the following known formaldehyde donors: DMDM Hydantoin, Diazolidinyl Urea, and Iodopropynyl Butylcarbamate.[35]

116.     DMDM Hydantoin has been identified as a "[k]nown human immune toxicant or allergen" and a "[h]uman skin toxicant or allergen," and "[p]eople exposed to such formaldehyde-releasing ingredients may develop a formaldehyde allergy or an allergy to the ingredient itself and its decomposition products."[36]

117.     Diazolidinyl Urea has been identified as a "[k]nown human any toxicant or allergen" and a "[h]uman skin toxicant or allergen."[37]

118.     Iodopropynyl Butylcarbamate has also been identified as a "human toxicant or allergen" and a cause of allergic contact dermatitis."[38]

119.     Iodopropynyl Butylcarbamate has also been identified as a "human any toxicant or allergen" that can cause "allergic contact dermatitis of chemical in cosmetic cream."[39]

120.     Defendant replaced these formaldehyde donors with other irritants, such as Ethylhexylglycerin, and Phenoxyethanol.  Ethylhexylglycerin has been identified as an allergen

---

[35] *See* https://www.safecosmetics.org/get-the-facts/chemicals-of-concern/known-carcinogens/ (last visited Oct. 1, 2020).
[36] *See* https://www.ewg.org/skindeep/ingredients/702196-DMDM_HYDANTOIN_(FORMALDEHYDE_ RELEASER)/ (last visited Oct. 1, 2020).
[37] *See* https://www.ewg.org/skindeep/ingredients/701923-./ (last visited Oct. 1, 2020).
[38] *See* https://www.ewg.org/skindeep/ingredients/703111-IODOPROPYNYL_BUTYLCARBAMATE/ (last visited Oct. 1, 2020).
[39] *Id.  See also* https://www.contactdermatitisinstitute.com/iodopropynyl-butylcarbamate.php (last visited Oct. 1, 2020) (Contact Dermatitis Institute instructing consumers to avoid products with Iodopropynyl Butylcarbamate).

or skin irritant that can cause dermatitis.[40] Phenoxyethanol has been "linked to reactions ranging from eczema to severe, life-threatening allergic reactions."[41]

121.    Defendant also now admits in a video buried on its website that it uses synthetic fragrances, "some of which are considered allergens."[42]

122.    In addition, the Products include Propylene Glycol and Cocamidopropyl Betaine. Both of these ingredients are allergens and irritants. Propylene Glycol is a solvent, which has fallen out of favor in the cosmetic industry because it can cause irritation, penetrate the skin and scalp, and weaken the protein and cellular structure of the skin, causing hair loss.

123.    In 2018, Propylene Glycol was named allergen of the year by the American Dermatitis Society.[43]

124.    In 2004, the American Dermatitis Society named Cocamidopropyl Betaine the allergen of the year.[44]

125.    Further, fragrances are also a main contributor to irritation potential. Each of the Products vaguely lists "Fragrance (Parfum)" as an ingredient. These fragrances are often made up of hundreds or more ingredients not listed on the label and can cause severe allergies or adverse skin reactions.

---

[40] *See* https://onlinelibrary.wiley.com/doi/abs/10.1111/cod.12546 (last visited Oct. 1, 2020).
[41] *See* http://www.safecosmetics.org/get-the-facts/chemicals-of-concern/phenoxyethanol/ (last visited Oct. 1, 2020). *See also* https://www.ewg.org/skindeep/ingredients/704811-phenoxyethanol/ (last visited Oct. 1, 2020) (classifying Phenoxyethanol as irritant).
[42] *See* https://www.devacurl.com/us/curl-101/curl-knowledge/scent-sitivity (last visited Oct. 1, 2020).
[43] *See* https://www.ncbi.nlm.nih.gov/pubmed/29059092 (last visited Oct. 1, 2020).
[44] *See* https://www.ncbi.nlm.nih.gov/pubmed/18627690 (last visited Oct. 1, 2020).

941485.1

## V.    **Defendant's Representations Are False and Misleading.**

126.    Despite the presence of harmful ingredients and tens of thousands of complaints from consumers reporting hair loss, hair damage, balding, excessive shedding, and scalp irritation, *see* Section VII below, Defendant continues to misrepresent the Products as safe, gentle and superior to other haircare products and omits material facts regarding the known risks associated with their use.[45]

127.    As reported in *The New York Times*, Dr. Carlos Wesley, a hair restoration surgeon, concluded that Defendant's statement that its Products can not cause hair loss because the Products do not penetrate the scalp is false.[46]

128.    After reviewing approximately 200 ingredients found in the Products, Dr. Wesley explained that some of the ingredients, including "propanol, a product stabilizer, do penetrate the skin's uppermost layers. And depending on where a hair is in the growing cycle, it can be open or closed to product penetration, making it likely that some cleanser or cream has infiltrated the stem cell region of the follicle."[47]

129.    Dr. Wesley also stated that propylene glycol, a solvent found in Defendant's Products, causes redness and when combined with other ingredients can result in injuries like scalp sensitivity.

130.    Dr. Maryanna Senna, another doctor interviewed by *The New York Times*, is a dermatologist and director of the Hair Academic Innovative Research Unit at Massachusetts General Hospital in Boston. According to Dr. Senna, products do not need to reach users' hair

---

[45] *See* https://www.factsaboutdevacurl.com/us/ (last visited Oct. 1, 2020).
[46] *See* https://www.nytimes.com/2020/04/01/style/deva-curl-hair-loss.html (last visited Oct. 1, 2020).
[47] *Id.*

bulb to cause hair loss. Indeed, "superficial inflammation that products may cause can contribute to hair loss and increased breakage.[48]" Upon reviewing the Products' ingredients, Dr. Senna believes there are multiple ingredients that could be causing the irritation. However, Dr. Senna suggests that the fragrance found in the Products could be the reason why consumers are experiencing hair loss, hair breakage, and scalp injuries. The majority, if not all, of the Products contain fragrance.

131.    When asked to respond to these doctors' assessment of the Products, Defendant continued to assert its misrepresentations regarding the safety of its Products.

## VI.    <u>Defendant Failed to Warn Consumers of the Health Risks Associated with the Products.</u>

132.    Defendant not only failed to disclose the harmful ingredients contained in its Products, but also failed to disclose the safety and health risks associated with ordinary use of its Products.

133.    Neither the Products' packaging nor any other advertising from Defendant warns users that the Products can cause scalp irritation, excessive shedding, hair loss, thinning, breakage, and/or balding, or any related injury during normal use. A demonstrative example of the Products' labeling is provided below:

---

[48] *Id.*



134.    Similarly, nowhere on any of the packaging of the Products does it state that scalp irritation, excessive shedding, hair loss, thinning, breakage, and/or balding, or any related hair or scalp injury, or adverse reaction, could occur from normal use of the Products.

135.    Incredibly, rather than warn consumers of the risk of adverse reactions, Defendant downplays the known risks associated with use of its Products and claims that shedding of hair is normal and not caused by the Products: "If you have curly hair, chances are you've dealt with hair shedding. For most of us, it can be concerning when hair falls outs on a daily basis, but it's totally normal. But, what causes hair shedding? How much loss it too much? And, how can you

prevent it? Today we're here to give you the lowdown on everything you need to know about hair shedding."[49]

136.    Defendant's website states that excessive shedding is common for people with curly hair—the Products' primary intended customers: "Sadly, shedding is more common with curly-haired gals because we don't wash or brush our hair as often as our straight hair counterparts."[50]

137.    Defendant further attributes excessive shedding to "giving birth, stress, scalp buildup, dandruff, losing weight, certain illnesses, and more."[51]

138.    Defendant states that "If you're losing more than 100 strands of hair per day, you're dealing with excessive shedding, which is also fairly common."[52]

139.    Further, Defendant claims that excessive shedding is not preventable: "Can I prevent shedding? In short, not entirely. While you can lessen the amount of hairs that shed, you'll never be able to completely stop shedding. See your hairstylist or dermatologist if you're really concerned."[53]

140.    Defendant's website misleadingly offers recommendations to reduce shedding—none of which are to stop using the Products: "How can I lessen the shedding? 1. Find the right cleanser and conditioner for your curl type. This ensures that your curls won't dry out or be damaged which can lead to shedding. 2. Remove build up. Product build up and dandruff can block your roots and lead to shedding, so be sure to clarify and exfoliate. 3. Make sure to detangle

---

[49] *See* https://www.devacurl.com/blog/hair-shedding-101/#:~:text=If%20you're%20losing%20more,%2C%20certain%20illnesses%2C%20and%20more (last visited Oct. 1, 2020).
[50] *Id.*
[51] *Id.*
[52] *Id.*
[53] *Id*.

941485.1

your hair every time you finish washing your hair. Using a pre-poo (like Wash Day Wonder) before cleansing and finger detangling afterwards can make a world of difference."[54]

141.    Above all, far from being the panacea promised by Defendant, the Products can and have caused scalp irritation, excessive shedding, hair loss, thinning, breakage, and/or balding. The hair loss is not de minimis—consumers, who suffer hair loss often lose significant amounts of hair-and the hair loss persists as long as the user uses the Products.

142.    Many consumers who suffered scalp irritation, excessive shedding, hair loss, thinning, breakage, and/or balding from the Products saw their symptoms stop by discontinuing their use of the Products.

143.    Every consumer who purchased the Products without the true facts about the Products and disclosure of the inherent health risks prior to purchase was injured at the point of sale when, instead of obtaining safe, natural, proven, guaranteed to promote hair growth, strengthening, and conditioning cleanser, obtained Defendant's unreasonably dangerous and defective Products. Consumers have been further injured by way of requiring expensive professional hair treatment and medical treatment as a result of injuries caused by the Products.

144.    By marketing, selling, and distributing the Products from New York to purchasers throughout the United States, Defendant made actionable statements that the Products were free of defects and safe and fit for their ordinary intended use and purpose.

145.    By marketing, advertising, selling, and distributing the Products from New York to purchasers throughout the United States, Defendant made actionable statements that the ordinary use of the Products would not involve undisclosed safety risks. Further, Defendant

---

[54] *Id.*

941485.1

concealed what it knew or should have known about the safety risks resulting from the material defects in the Products.

146. Defendant engaged in the above-described actionable statements, omissions, and concealments with knowledge that the representations were false and/or misleading and likely to mislead reasonable consumers. Alternatively, Defendant was reckless in not knowing that these representations were false and misleading at the time they were made. Defendant had and has exclusive access to data pertaining to the Products' defect that Plaintiffs and members of the proposed Class could not and did not have.

**VII. Tens of Thousands of Consumers Have Reported Hair and Scalp Injuries Resulting from Their Use of the Products.**

147. Tens of thousands of customers who purchased and used the Products have reported hair loss, hair damage and thinning, balding, excessive shedding, and scalp irritation.

148. Stylist and author Stephanie Mero, used the Products as directed and recommended them to her customers and social media followers for four years.[55] However, in or about August 2019, she stopped using the Products and told her customers and followers to do the same after she and her customers experienced hair loss, hair damage and thinning, balding, excessive shedding, and scalp irritation.[56]

149. On August 9, 2019, Ms. Mero created a Facebook group for consumers who experienced hair loss, hair damage and thinning, balding, excessive shedding, and scalp irritation after using the Products.[57] The group, called "Hair Damage & Hair Loss from DevaCurl—You're

---

[55] *See* https://abc7ny.com/5906690 (last visited Oct. 1, 2020).
[56] *Id.*
[57] *Id.*

not CRAZY or ALONE!," has over 60,000 members and contains thousands of comments, photos, and videos from consumers who had negative experiences after using the Products.[58]

150.    Ms. Mero is not alone on social media. Another Facebook group called "DevaCurl Damaged Hair Road to Recovery" was created in February 2020 and has over 9,200 members with similar complaints.[59] On Instagram, the hashtag "#recalldevacurl" appears in over 1,000 posts going back as early as January 2020.[60]

151.    DevaCurl ambassador, Ayesha Malik, a social media influencer once employed by DevaCurl, posted a video on her YouTube channel titled "Why I Stopped Using DevaCurl" on January 31, 2020.[61] Malik says she started to notice a change in her hair in 2018. After following the same hair care routine for six years—consisting of exclusive use of DevaCurl Products and tools—Malik says she went an entire year of "bad hair days."[62] Her bad hair days included: itchy scalp, dandruff, severe hair damage, and hair loss.[63] Malik says, "I don't know what else to do except for literally shave my whole head."[64] Malik has recommended that her viewers stop using the Products: "These products are really expensive so when you pay the money for them, you expect high quality and that's why I feel like I've been lied to."[65]

---

[58] *See* https://www.abcactionnews.com/news/national/florida-hairstylist-among-customers-claiming-devacurl-products-caused-serious-damage (last visited Oct. 1, 2020); https://www.facebook.com/groups/486634018576633/ (last visited Oct. 1, 2020).

[59] *See* https://www.facebook.com/groups/DontFWithMyHair/ (last visited Oct. 1, 2020).

[60] *See* https://www.instagram.com/explore/tags/recalldevacurl/?hl=en (last visited Oct. 1, 2020).

[61] *See* https://www.youtube.com/watch?v=nuo8UCcyDhg (last visited Oct. 1, 2020).

[62] *Id.*

[63] *Id.*

[64] *Id.*

[65] *Id.*

941485.1

152. Scores of other consumers have posted video complaints on YouTube.[66]

153. Complaints on the Internet about the adverse side effects associated with use of the Products date back to as early as 2011. The following are samples of the consumer complaints found online:[67]

- December 2011: "A gal in my office and I are both losing handfuls of hair when using these products and I wasn't sure if it's the Deva products or the CG method in general causing the issue. I am a fine porous 3a / 3b and my friend has coarse 4a thick hair. Thanks!" https://curltalk.naturallycurly.com/discussion/136936/help-losing-hair-using-deva-products (last visited Oct. 1, 2020).

- November 2013: "[I]t happens to me, too. I'm using Deva Products, and for the last 3 months, I'm losing hair handful after handful!" https://curltalk.naturallycurly.com/discussion/136936/help-losing-hair-using-deva-products (last visited Oct. 1, 2020).

- November 2013: "It happened to me using the no poo, because of the wheat protein (I'm a gluten free gal). Can't say that this would be the same case for you. Try switching up your products to see if it still happens. I used their low poo and one condition without any problems." https://curltalk.naturallycurly.com/discussion/136936/help-losing-hair-using-deva-products (last visited Oct. 1, 2020).

- March 2014: "I've been experiencing this also! I'm a little freaked out as I'm getting married in September, and I'm afraid I won't have any hair left by then! I've been using CG method for about 3 years. Was using WEN but found it to

---

[66] *See* https://www.youtube.com/watch?v=YIeCytk_CUg (last visited Oct. 1, 2020)( "How I went from Being a DevaCurl stylist to a Victim Advocate");
https://www.youtube.com/watch?v=D9kFPy2qMMc (last visited Oct. 1, 2020) ("How I realized DEVACURL was Ruining my hair (my hair journey"));
https://www.youtube.com/watch?v=gVIH-TIDPHc (last visited Oct. 1, 2020) (DevaCurl Ruined My Hair and Almost Cost Me My Job!");
https://www.youtube.com/watch?v=fjgwY0RQqfU (last visited Oct. 1, 2020) ("DEVACURL: My Mom Noticed My Hairline Receding");
https://www.youtube.com/watch?v=cpGcS8C40bg (last visited Oct. 2, 2020) ("Why I Stopped Using DevaCurl & What I'm Using Now | My Story");
https://www.youtube.com/watch?v=81MZHasES-c (last visited Oct. 2, 2020) ("DEVACURL FRIED MY HAIR: How I Realized It (In Real Time)");
https://www.youtube.com/watch?v=xhkA_i-5wEg (last visited Oct. 2, 2020) ("MY DAUGHTER'S DEVACURL NIGHTMARE").
[67] *See also* https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/m-p/2411473 (last visited Oct. 1, 2020).

941485.1

be too expensive to keep up. I switched to Deva about a year ago. I've been using Lo-Poo once a week, then One condition and styling cream every other day. Lately, I've been taking gobs of hair out of the shower drain. I haven't changed meds, or anything else that I can think of, so I'm wondering what's going on. I'd make a switch to something else, but I want to be sure I'm still 100% sulfate and silicone free. Any suggestions?" https://curltalk.naturallycurly.com/discussion/136936/help-losing-hair-using-deva-product (last visited Oct. 1, 2020).

- March 20, 2016, updated August 4, 2020: "I started using DevaCurl No Poo and One Condition in early January and used it until about a week ago. My hair was gorgeous but I wasn't able to get my hair really clean and developed some crazy dandruff which I've NEVER had a problem with before. I also noticed that I was shedding more hair than I was used to and that my hair seemed to be thinning a little. The shedding seem to get worse and that is the main reason that I stopped using it. When I switched back to Ogx coconut curls I was no longer shedding like crazy. Has anyone else had either of these issues while on these products?" https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 (last visited Oct. 1, 2020).

- December 4, 2019: "I had long hair to my belly button and after switching everything to deva curl I was in denial of my hair loss until my hairdresser pointed out how my hair was shedding super bad and how it was thinking out. It's been a couple months now and my hair is getting back to normal. Devacurl didn't work for me and now I'm dealing with the issues it caused. I would just cry because my hair was falling out in big clumps!! Now I just use Olaplex for most my hair needs. Olaplex #3 has been helping with the bonding of my hair. I feel so sad you had to go through this as well." https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/m-p/5523538/highlight/true (last visited Oct. 1, 2020).

- November 7, 2019: "The same thing happened to me a couple of years ago. I went to a Deva salon in Nashville, TN. After my appointment I purchased the product line that was used. From my 1st time using it at home my hair began shedding in large clumps. I tried it one more wash day and the same thing happened. Once I stopped using the products the clumps of hair ceased from falling out. I informed my stylist at the salon and she told one of the Level 3 stylists who has done my hair there before too. Both said they had never heard of what I had experienced. Of course I'm thinking if the large clumps of hair that came out were that noticeable to me that they had to have seen it when they did my hair." https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/m-p/5523538/highlight/true (last visited Oct. 1, 2020).

- November 7, 2019: "This is crazy reading these posts! I went "no poo" over 10 years ago and hit the curly girl method HARD! Used all DC products and my hair was ridiculously gorgeous. I'm a redhead and typically shed a lot so I didn't really think too much about it but I remember thinking damn this is a

lot! My stylist at the time commented on increased shedding but just assumed it was normal. She started getting out an extra towel to wipe the hair off her hands after washing my hair!! Gradually my hair started feeling dry and brittle, especially after ArcAngel and whatever the deep conditioner is. I started using new products and once I got rid of all DC products my hair was soft and happy again. Lesson learned!" https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/m-p/5523538/highlight/true (last visited Oct. 1, 2020).

- November 6, 2019: "Hi - so glad I found your post and many others about how Deva Curl products ruined my hair !! First it looked good but within 4 months of use my hair became dry , brittle , broom like and was falling out !! I thought something was wrong with my health and started taking hair & skin vitamins and complained to the hair dresser who recommended deva curl to me . She had no idea it was the product that is absolutely horrible!! I spent over $100 on all the products and am now very upset trying to repair my hair ! If anyone has a shampoo they recommend let me know . For now I'm going back to using Quidad and praying my hair grows back thick again & my curls come back . Good luck to you & everyone out there who experienced what I did - I wish we could all sue them !!!" https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/m-p/5523538/highlight/true (last visited Oct. 1, 2020).

- November 8, 2019: "Me too! I thought it was menopause but it's Deva Curl products! There's a Facebook group about the issue too. I've emailed Deva Curl to return my products for a refund. Hope they will be responsible enough to do at least a refund. Horrible hair loss! Even my daughter had horrible hair loss." https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/m-p/5523538/highlight/true (last visited Oct. 1, 2020).

- September 12, 2019: "I am mind-blown at this thread. I was always the kid with hair so thick that hair stylists said something about it every time I had my hair cut. A year ago I noticed hair loss starting. And a year ago I started Deva Curl styling products. I don't use their hair washing products. In June, I got my first Deva cut and she told me I have thin hair, and that was crazy to hear. It's now to the point that I have super thin areas on each side of my forehead, which made me go to the doctor. I had my hormones checked and all kinds of other blood work done, and it's all normal. I put the thoughts together and realized the hair loss started the same time I started Deva products. Then I found this thread. I am switching ASAP. Please, if anyone knows of cruelty-free products that give poofy, frizzy, curly hair definition and frizz control, help a girl out!! and Deva Curl... thanks for that medical bill!" https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473/highlight/true/page/3 (last visited Oct. 1, 2020).

- September 4, 2019: "Yes. I used the No Poo Shampoo and Conditioner for two months. Every time I used these products my hair fell out in clumps during the shampoo and conditioning process. Initially, I thought this was me loosing dead hair, but it was more than that. I discontinued use and my hair slowed

down dramatically in falling out. I've continued to use the styling products, but I'm questioning this now. Some days my hair looks amazing, and other days these products make my hair look terrible (i.e. stringy, frizzy, broomstick dry, distorted curl patterns). I don't have heat damage because I love wearing my hair flowy and curly, so it's not that. I'm very confused by these experiences! Overall, I'm not convinced it's worth the money. I've been reading about other women who've had similar experiences, which is alarming. I hope all of us continue to share. Granted, there are pros to the styling products, but the cons are pushing me away. I've watched the videos on how to use the products and I'm skilled at styling my hair, but all of this isn't adding up for me. I hope this helps!" https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473/highlight/true/page/3 (last visited Oct. 1, 2020).

- August 15, 2019: "I have had the exact same issues. When I started doing the curly girl process i lost a lost of hair, but I had not 'molted' for a while, so I wrote this off. I have continued to see molting and a lot of breakage as well, tho. The more concerning issue was the extreme itching and what was almost like flaky acne. Bumps on my scalp that hurt and itched. I have found that the Arc Angel gel is the worst offender and now that I have stopped using that it has gotten a lot better. The products make my hair look great, but I wish I knew what ingredient was causing this issue. Spent SO MUCH MONEY on these products and am not excited about buying more products that may have the same stuff in them that will cause the same issue." https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473/highlight/true/page/3 (last visited Oct. 1, 2020).

- August 13, 2019: "I had the same reaction, I never really had dandruff until using devacurl. I bought the shampoo & conditioner & didn't finish either. My head was super itchy along with dandruff & hair-loss. It did make my hair a little curlier but overall I thinks it's a terrible product." https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473/highlight/true/page/3 (last visited Oct. 1, 2020).

- May 19, 2019: "Yes! My hair is thin, fine, frizzy, and curly. Deva curl took half of the little bit of hair I had! I'm so upset! I finally grew my hair long. And now I have to crop it!" https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473/highlight/true/page/3 (last visited Oct. 1, 2020).

- August 12, 2019: "Hi, just wanted to let you know you are not alone! Other men and woman have had the same results from using Deva Curl products in this last years specially in 2019 which the major complaints are excessive hair loss, very dry and broken hairs and irritation. Like most people that call Deva Curl and complained they always get an answer that puts the blame on us and never the products. We have started a support group page on Facebook called "Hair and Scalp Issues from Deva Curl Products - You are not Alone! We hope

that you will join us and share your story so we can help many men and women around the world to help them figure out that they are not crazy, that is not their hormones or their old age and that there is a chance that it was their products they believed in that did this to them!" https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473/highlight/true/page/3 (last visited Oct. 1, 2020).

- April 10, 2019: "I'm having the exact same problem right now!!!!" https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473/highlight/true/page/3 (last visited Oct. 1, 2020).

- April 28, 2019: "Me too! I have been using the Devacurl no poo original and one condition since Christmas. I just recently had a deva cut and purchased the products recommended and I have been losing a lot of hair. My hair feels thinner, looks thinner, and my hair just is not the same." https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473/highlight/true/page/3 (last visited Oct. 1, 2020).

- March 24, 2019: "This can't be a coincidence. So I started using the no-poo almost exclusively on my wash days except for once a month when I used build up buster. Before that I alternated with the low poo Every other wash day and I never experienced shedding. Now that I started using mostly noo poo I'm seeing crazy shedding and breaking. I just switched to Oidad VitalCurl and can't report on results but first impressions my scalp feels clean and my hair looks nice. I also read online that noo-poo in hard water areas can cause PH imbalances in the hair, which can lead to shedding. I know I have hard water so I'm hoping by using new brands I'll be able to use DevaCurl again someday because for the first 2 years it was great." https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473/highlight/true/page/3 (last visited Oct. 1, 2020).

- February 10, 2019: "I've used DivaCurl for a while and wonder now if it's making my hair thin out. It may be because I'm an little older, but I never had a problem before. The no-poo option works well for me because sulfates dry out my hair really bad. I think I'll switch over to Carol's Daughter, Mixed Chicks, or Shea Moisture to see what happens" https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473/highlight/true/page/3 (last visited Oct. 1, 2020).

- February 7, 2019: "I finally had to stop using their products, which broke my heart because they made my hair so beautiful...I really loved my unruly, curly, red Irish hair for the first time ever. I used it for probably two years. I started noticing my hair thinning, which was disturbing because I have always had extremely thick hair. Finally, I couldn't ignore it anymore this year when I could see through to my scalp, and I looked balding when my hair was wet. My ponytail is barely anything now, and my long hair (which I took such a long time to grow and care for) is limp and straggly looking when I don't take

great care to fluff it up with thickening products. I was losing clumps of hair not just in the shower (where I would find whole chunks wrapped around my hands), but all over my bathroom floor, my bed, my couch...literally anywhere I had been, there was hair to clean up. . Horrifying at any age, and especially in your mid twenties. I have also developed very sensitive spots on my scalp, where I feel "pinpricks" in the front whenever wearing a ponytail (no matter how loose it is).   I finally saw a dermatologist that specialized in women's hair loss. She agreed I had hair loss, but could not give a definitive answer as to why and started me on spironolactone to suppress any excess androgen (although my hormone levels were tested and found to be normal). Around the same time I switched from Deva products to more generic (but curly-girl friendly) products. After a couple months, I started to notice I had probably 1/5 the amount of hair loss, and it finally seemed normal. No more sweeping up hair from the bathroom floor every single day. I was able to purchase the Deva gel again (the one I had been using in the interim shaped my curls nicely, but left it too frizzy and they fell out quickly). Each time I use this, I am right back to crazy clumps of hair in the shower and on the floor again. I realized something in the Devacurl *has* to be contributing to my hair loss over the last two years, and especially the last year before I finally got medical help. I don't know if it's an allergy or what, I have no known problems. But it's sort of a relief to see other people reporting these problems, too. If anyone has recommendations for products with similar hold and frizz-taming capability, I really miss loving my hair. It used to be my proudest feature (after a lifetime of hating and fighting it), and now I feel like it's something I dislike about myself again."  https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473/highlight/true/page/3 (last visited Oct. 1, 2020).

- December 1, 2017: "I'm having the same experience with DevaCurl o Decadence. It does an incredible job of detangling but I'm losing my hair. The folks here saying this is about perception don't get it. I started using this about two years ago and wasn't attributing it to the product because it was happening before that - from my attempts to detangle it. The devacurl worked for awhile, but then recently, and particularly in the last few months, my hair has been coming out in small clumps, from the root whenever I use it. I notice it because I've been washing and conditioning more regularly for a newer style. It doesn't happen when I use other conditioners, and I know the difference because when I would go back to the Decadence (for the detangling) my hair would be coming out in clumps in my hands. Also, when so many people are saying the same thing, clearly there is an issue, so it's not just about our perception. I'm done with this product. If anyone has any detangling recommendations - not just products, but techniques too, I'm happy for them." https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473/highlight/true/page/4 (last visited Oct. 1, 2020).

- October 17, 2019: "The same thing happened to me. Hair loss in Clumps, scalp irritation, and very noticeable loss in volume. I can see my scalp now. I feel like crying knowing that I have an entire box of products to throw away that

cost me $100's. I'm terrified now of this happening with other "reputable" distributors. I can't believe this. It has really hit my self-esteem hard and my faith in curl brands." https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473/highlight/true/page/4 (last visited Oct. 1, 2020).

- February 2, 2017: "I have been using this for a few months and I have lost TONS of hair, I even went to get my hormones checked, they were on point!! I have lost so much it's noticeable and looking completely different including parting all over... very unhappy and nervous , I am going to stop using it and see if it make a difference!" https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473/highlight/true/page/4 (last visited Oct. 1, 2020).

- August 24, 2018: "My hair was so thick and it grew, I kid you not, nearly 3 inches a month. I measured. And I cut 6 inches off my very long hair to see if it would help curls form when I switched to Deva Curl. Well... after almost 2 months, my hair had gotten shorter. The breakage is horrible and it's falling out in clumps! Not just in the shower either! I don't dye my hair, I don't use any heat on it at all, and I don't use any product except the wave maker stuff from Deva Curl. So it had to be switching to Deva Curl. I also only wash my hair once a week. So I know i'm not over washing it. I was also using the buildup buster every 2 washes. I am nearly in tears from how much hair it caused me to lose. I'm going back to Lush ASAP. I'll never switch from Lush again. No matter what hair products I use from there, my hair stays beautiful, thick, and fast growing! I had to get supplements just to get my hair to start growing again... unfortunately my nails were still growing fast and strong. So I'm having to trim them 3 times a week. Ugh. Don't let anyone talk you into sticking with Deva Curl! If you get a feeling that it's messing your hair up, STOP! I wish I would have after hair started coming out the first shower... but I thought it was just because it wasn't as easy to work through my hair as my Lush products were. I'm heartbroken you guys." https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473/highlight/true/page/4 (last visited Oct. 1, 2020).

- September 22, 2016: "Wow! You lasted longer than me. I find Deva Curl to be too heavy for the hairstyle I want. Also, couldn't get my scalp clean with it. It used to cause oily spots. I feel that hair sheds everyday. You just notice it a lot more during shampoo'ing. Some people are not washing their hair for days so then it may seem like a lot of hair shedding at once." https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473/highlight/true/page/4 (last visited Oct. 1, 2020).

- May 2, 2019: "Me too I have never had thin hair its so thin and limp and disgusting. Im so sad" https://community.sephora.com/t5/Best-Hair-

Ever/DevaCurl-Issues/td-p/2411473/highlight/true/page/4 (last visited Oct. 1, 2020).

- September 22, 2016: "I feel like i have been loosing a lot of hair. I notice its thinner. When i use my no poo shampoo and conditioner, tons of hair comes out. I am curious too if thats the problem. For now i am going to use my shea moisture shampoo and conditioner to see if shedding slacks off. https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473/highlight/true/page/5 (last visited Oct. 1, 2020).

- February 7, 2018: "I use every three days and my hair is shedding REALLY bad" https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473/highlight/true/page/5 (last visited Oct. 1, 2020).

- March 2014: "Thanks! A quick observation this morning...I used Lo-Poo and One Cond today, and just now, I found myself itching my scalp. :sad1: HHmmmmm....I wonder how long I've been doing this subconsciously without noticing it! Even thought I only use it once a week, maybe it's the Lo Poo and not the One that's causing the issue. I'm going to try KMF Whenever, and also I'm reading a lot about Trader Joe's conditioners, so that may be another option to try." https://curltalk.naturallycurly.com/discussion/136936/help-losing-hair-using-deva-products (last visited Oct. 1, 2020).

- May 2016: "Hey, I really appreciate your post about the problems you are having with hair loss. I am new to the NaturallyCurly world and I am still working on being acclimated. Anyway, I too am having a similar problem. I was using a really nice shampoo and conditioner that had Keratin in it and I was loving it. Several months back, I saw a commercial for Wen and thought I would give it a try. After about a month of using it, my hair started to fall out. I switched back to a lathering shampoo until about five months ago. I went and tried a Deva Cut for the first time and bought all of the products. As I am sure most would agree, I fell in love with the stuff. My hair felt and looked great. Now, the ball of hair in my shower nearly doubles in size from one day to the next. I am not sure if it isn't clearing my scalp properly or it is causing more build up that usual but all I know is it has me concerned. I also had some itching when I first started using the products. That had me concerned but it went away after I started to use the products regularly. I have been a Ouidad girl from about 20 years, give or take, and I just started to try new things. After this experience, I am not sure what to do. I am taking a break from Deva Curl for a little while and I will go back to my out routine and see if I notice a difference. I really think that is the only way to tell. I'm not sure what it is worth but I was using shampoo and conditioner by OGX called Brazilian Keratin Therapy. It was designed for women who get Brazilian Keratin Treatments, something I fell victim too as well. At any rate, it works beautifully in conjunction with my Ouidad products. I'm also not sure if my hair type has anything to do with all of this. My curls are tight and spirally. a pencil fits inside them perfectly. My

hair is very fine but I have a lot of it!"
https://curltalk.naturallycurly.com/discussion/136936/help-losing-hair-using-deva-products (last visited Oct. 1, 2020).

154. The high number of frequent and detailed complaints dating back to 2011, indicate that problems caused by the Products were known to Defendant, yet Defendant did nothing to address these problems and continued to conceal from consumers the adverse effects from using the Products as directed.

155. While Defendant cannot deny notice of the numerous complaints associated with use of its Products, it has yet to take responsibility for the hair loss, hair damage, excessive shedding, and scalp irritation caused by the Products. Instead of recalling the Products and taking other necessary steps to protect consumers, such as providing a warning of their health and safety risks, Defendant continues to misrepresent that the Products are safe when used as intended.

156. Plaintiffs are in the same Class as all other consumers who purchased Defendant's Products during the relevant time period. Plaintiffs and Class members purchased products that caused scalp irritation, hair loss, balding, or otherwise failed to perform as they were intended, i.e., promoting healthy curly hair. Plaintiffs and the Class members were in fact misled by Defendant's omissions and misrepresentations in respect to the Product. Plaintiffs and Class members would have purchased other haircare products if they had not been deceived by the misleading and deceptive marketing and/or labeling of the Products.

157. Plaintiffs and Class members have been injured by the misrepresentations and omissions described herein. Defendant misleads consumers into thinking they are purchasing a premium product specially formatted for curly hair and even say that excessive shedding is common, normal, and non-preventable. However, users have revealed that, in fact, the Products cause hair loss, scalp irritation, thinning, breakage, and balding during normal use. Furthermore,

consumers have also shown that refraining from using the Products reverses shedding and hair loss.

## TOLLING OF THE STATUTE OF LIMITATIONS

**I.    Plaintiffs Are Entitled to Equitable Tolling Under the Discovery Rule.**

158.    Plaintiffs and Class members did not discover, and could not have discovered, through the exercise of reasonable diligence, the full and complete nature of the defect and risks associated with normal and foreseeable use of the Products.

159.    Within the period of any applicable statutes of limitation, Plaintiffs and the other Class members could not have discovered through the exercise of reasonable diligence that Defendant was—and still is—concealing and misrepresenting the true risks associated with normal use of the Products.

160.    Plaintiffs and Class members had no realistic ability to discern the risks associated with normal and foreseeable use of the Products until—at the earliest—after they suffered severe, adverse reactions to the Products. And even then, Plaintiffs and Class members had no basis to discover their causes of action because of Defendant's misleading statements and active concealment of the true nature of the defect and risks associated with normal and foreseeable use of the Products.

161.    Plaintiffs and other Class Members also did not discover, and did not know facts that would have caused a reasonable person to suspect that the Products did contain irritants that cause significant risk of adverse reactions and that the Products are not safe, gentle and free of harsh ingredients as labeled and marketed.

162.    All applicable statutes of limitation have been tolled by operation of the discovery rule.

941485.1

## II.     Plaintiffs Are Entitled to Equitable Tolling Because Of Defendant's Fraudulent Concealment.

163.     All applicable statutes of limitation have been tolled by Defendant's knowing, active and ongoing fraudulent concealment and denial of the facts alleged herein throughout the period relevant to this action.

164.     Instead of adequately disclosing that the Products are not safe, gentle and/or free from harsh ingredients and warn of the risks of adverse reactions as discussed herein, Defendant falsely represented that the Products are safe, gentle and free of harsh ingredients.

165.     At the latest, Defendant knew of the problems associated with normal and foreseeable use of the Products by at least 2018, following multiple complaints to the FDA about the adverse issues reported herein, and by which time numerous consumers had directly and/or indirectly reported to Defendant their unusual adverse reactions to the Products. Since then, thousands of similar complaints have been lodged alleging hair loss, hair damage, hair thinning, balding, excessive shedding, scalp irritation, and other adverse reactions.

166.     Despite knowing about the product defect, Defendant concealed—and continues to conceal—the nature of the defect and risks associated with use of the Products. Defendant seeks to downplay the severity of the problem; mislead consumers by representing that adverse physical reactions are related to their personal "stress" and unhealthy "lifestyle[s]," and the general "fragile" nature of curly hair, rather than the products; have not notified or warned Plaintiffs, Class members, and the public of the full and complete nature of the defect; and have not issued a recall for the Products.

167.     Any applicable statute of limitations has therefore been tolled by Defendant's knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

941485.1

### III. Defendant Is Estopped from Relying on Any Statutes of Limitations Defense.

168.    Defendant is, and at all relevant times has been, under a continuous duty to disclose to Plaintiffs and the other Class Members the true character, quality, and nature of defect plaguing the Products.

169.    Defendant actively concealed the true character, quality, and nature of the Products and knowingly made misrepresentations about the safety, quality, reliability, characteristics, and performance of the Products.

170.    Plaintiffs and Class members reasonably relied upon Defendant's misrepresentations and/or active concealment of these facts.

171.    Based on the foregoing, Defendant is estopped from relying on any statutes of limitations in defense of this action.

### FED. R. CIV. P. 9(b) ALLEGATIONS

172.    Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To the extent necessary, as detailed in the paragraphs above and below, Plaintiffs have satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

173.    WHO: Defendant made material misrepresentations and/or omissions of fact in its labeling and marketing of the Products as to demonstrate that they are safe, gentle, and free of harsh ingredients.

174.    WHAT: Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Products are safe, gentle and non-irritating, "free of harsh ingredients," superior to other products with "harsh ingredients such as

sulfates," and that the "products cannot cause hair loss" and "won't cause breakage." Defendant knew or should have known this information is material to the reasonable consumer and impacts the purchasing decision, and yet it omits a necessary warning that the Products have the propensity to cause hair loss, scalp irritation and other adverse reactions.

175. WHEN: Defendant made material misrepresentations and/or omissions detailed herein continuously throughout the applicable Class periods.

176. WHERE: Defendant's material misrepresentations and/or omissions were made on the labeling and packaging of its Products, which are sold nationwide and are visible to the consumer on the front of the labeling and packaging of the Products at the point of sale in every transaction.

177. HOW: Defendant made written misrepresentations and/or failed to disclose material facts regarding the true risks of normal use of the Products.

178. WHY: Defendant engaged in the material misrepresentations and/or omissions detailed herein for the express purpose of inducing Plaintiff and other reasonable consumers to purchase and/or pay for the Products. Defendant profited by selling the Products to many thousands of consumers.

## CLASS ACTION ALLEGATIONS

179. Pursuant to Rules 23(b)(2), (b)(3), and, as applicable, (c)(4) of the Federal Rules of Civil Procedure, Plaintiffs bring this lawsuit on behalf of themselves and the following Class of individuals:

> During the fullest period allowed by law, all persons who purchased Defendant's Products within the United States (the "Nationwide Class").

180. Additionally, as further descried herein, Plaintiffs bring claims based upon state consumer protection laws on behalf of the following State Classes for the states of California,

Florida, Georgia, Illinois, Kentucky, Massachusetts, Minnesota, Missouri, New Jersey, New York and Pennsylvania (collectively, "State Classes," the Nationwide Class and State Classes are together referred to as the "Class"):

> During the fullest period allowed by law, all persons who purchased Defendant's Products in the state of California (the "California Class").

> During the fullest period allowed by law, all persons who purchased Defendant's Products in the state of Florida (the "Florida Class").

> During the fullest period allowed by law, all persons who purchased Defendant's Products in the state of Georgia (the "Georgia Class").

> During the fullest period allowed by law, all persons who purchased Defendant's Products in the state of Illinois (the "Illinois Class").

> During the fullest period allowed by law, all persons who purchased Defendant's Products in the state of Kentucky (the "Kentucky Class").

> During the fullest period allowed by law, all persons who purchased Defendant's Products in the state of Massachusetts (the "Massachusetts Class").

> During the fullest period allowed by law, all persons who purchased Defendant's Products in the state of Minnesota (the "Minnesota Class").

> During the fullest period allowed by law, all persons who purchased Defendant's Products in the state of Missouri (the "Missouri Class").

> During the fullest period allowed by law, all persons who purchased Defendant's Products in the state of New Jersey (the "New Jersey Class").

> During the fullest period allowed by law, all persons who purchased Defendant's Products in the state of New York (the "New York Class").

> During the fullest period allowed by law, all persons who purchased Defendant's Products in the state of Pennsylvania (the "Pennsylvania Class").

181.  Excluded from the above Class and subclasses are Defendant, any entity in which Defendant has a controlling interest or that has a controlling interest in Defendant, and Defendant's legal representatives, assignees, and successors. Also excluded are those who purchased the Products for resale; all persons who make a timely election to be excluded from

the Class; and the judicial officers and staff to whom this case is assigned and any immediate family members thereof.

182.　*Numerosity*: The members of the Class are so numerous that individual joinder of all Class members is impracticable.  Defendant has sold many thousands of units of the Products to Class members.

183.　*Commonality and Predominance*: This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a.　Whether the representations discussed herein that Defendant made about the Products were or are true, misleading, or likely to deceive a reasonable consumer;

b.　Whether the Products are defective such that they cause hair loss, scalp irritation or other adverse reactions;

c.　Whether Defendant had exclusive knowledge that the Products were defective, but failed to disclose the defect to the public;

d.　Whether Defendant omitted material facts and/or failed to warn reasonable consumers regarding the known risks of using the Products;

e.　Whether the representations discussed herein were material to a reasonable consumer;

f.　Whether Defendant engaged in false or misleading advertising;

g.　Whether Defendant's conduct constitutes violations of the laws asserted herein;

h.　Whether Plaintiff and the other Class members have been injured and the proper measure of their losses as a result of those injuries; and

   i.   Whether Plaintiff and the other Class members are entitled to injunctive, declaratory, or other equitable relief.

184. *Typicality*: Plaintiffs' claims are typical of those of the other Class members because, among other things, Plaintiffs and all Class members were comparably injured through the uniform conduct described herein.

185. *Adequacy*: Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the other Class members Plaintiffs seek to represent; Plaintiffs have retained counsel who are competent and experienced in complex commercial and class action litigation; and Plaintiffs intend to prosecute this action vigorously. The interests of the Class members will be fairly and adequately protected by Plaintiffs and their counsel.

186. *Declaratory and Injunctive Relief*: Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

187. *Superiority*: A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, making it impracticable for class members to individually seek redress for Defendant's wrongful conduct. Even if class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action

device presents far fewer management difficulties, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### CLAIMS BROUGHT ON BEHALF OF THE NATIONWIDE CLASS

### FIRST CLAIM FOR RELIEF
### VIOLATION OF MAGNUSON-MOSS WARRANTY ACT
### 15 U.S.C. § 2301, *et seq.*
*(On Behalf of All Plaintiffs and the Nationwide Class and, Alternatively, the State Classes)*

188.    Plaintiffs reassert the allegations set forth in paragraphs 1 through 187 and incorporate such allegations by reference herein.

189.    Plaintiffs bring this count against Defendant on behalf of members of the Nationwide Class.  In the alternative, Plaintiffs reserve the right to bring these claims on behalf of their respective State Classes.

190.    This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332 (a)-(d).

191.    The Products are consumer products as defined in 15 U.S.C. § 2301(1).

192.    Plaintiffs and Class members are consumers as defined in 15 U.S.C. § 2301(3), and are persons entitled under the applicable state laws to enforce against the warrantor the obligations of its express and implied warranties.

193.    Plaintiffs purchased Products costing more than $5 and their individual claims are greater than $25 as required by 15 U.S.C. §§ 2302(e) and 2310(d)(3)(A).

194.    Defendant is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

195.    The Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1), provides a cause of action for any consumer, who is damaged by the failure of a warrantor to comply with a written or implied warranty.

941485.1

196.     Defendant made promises and representations in an express warranty provided to all consumers, which became the basis of the bargain between Plaintiffs, Class Members, and Defendant.

197.     Defendant's written affirmations of fact, promises and/or descriptions as alleged––including promises that the Products promote healthy hair, are "gentle," "non-irritating," and "safe," are not "formulated with harsh ingredients such as sulfates" or with ingredients "too harsh for curls," but instead are formulated with "good-for-you ingredients" and "without those harsh ingredients" [68] [69]— are each a "written warranty."

198.     Further, Defendant's written affirmations of fact, promises and/or descriptions as alleged—including promises that the "products cannot cause hair loss" and "won't cause breakage,"[70] and that"[a]ll of our products are safe to use and you can continue to use them with confidence, are each a "written warranty."

199.     The affirmations of fact, promises, and/or descriptions constitute a "written warranty" within the meaning of the Magnuson-Moss Act, 15 U.S.C. §2301(6).

200.     Further, Defendant provided Plaintiffs and the other Nationwide Class members with an implied warranty of merchantability in connection with the purchase of the Products that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7).

---

[68] *See* https://www.devacurl.com/us/curl-101/product-philosophy. (last visited October 1, 2020).

[69] *See* https://www.devacurl.com/us/curl-101/product-philosophy https://www.devacurl.com/us/curl-101/product-philosophy/ingredient-glossary. (last visited October 1, 2020).

[70] *See* https://www.devacurl.com/us/curl-101/curl-knowledge/hair-loss. (last visited October 1, 2020).

941485.1

201.    As a part of the implied warranty of merchantability, Defendant warranted to Plaintiffs and Class members that the Products were of merchantable quality (i.e., a product of a high enough quality to make it fit for sale, usable for the purpose it was made, of average worth in the marketplace, or not broken, unworkable, contaminated or flawed or containing a defect affecting the safety of the product), would pass without objection in the trade or business, and were free from material defects, and reasonably fit for the use for which they were intended.

202.    Defendant breached all applicable warranties, as described in more detail above, and is therefore liable to Plaintiffs and the Nationwide Class pursuant to 15 U.S.C. § 2310(d)(1). Without limitation, the Products suffer from latent and/or inherent defects that cause substantial hair loss, hair breakage, and scalp irritation, rendering the Products unfit for their intended use and purpose. This defect substantially impairs the use, value, and safety of the Products.

203.    Any effort to limit the implied warranties in a manner that would exclude coverage of the Products is unconscionable, and any such effort to disclaim, or otherwise limit, coverage for the defective Products is null and void. Any limitations on the warranties are procedurally unconscionable. There was unequal bargaining power between Defendant, on the one hand, and Plaintiffs and the other Nationwide Class members, on the other. Moreover, any limitations on the warranties are substantively unconscionable.

204.    Following early reports of injuries caused by the Products, including multiple complaints to the FDA beginning in February 2018, Defendant knew that the Products were defective and would continue to pose safety risks. Defendant failed to disclose the product defect to Plaintiffs and the Nationwide Class members. Thus, Defendant's enforcement of the durational limitations on those warranties is harsh and shocks the conscience.

941485.1

205.     Plaintiffs and each of the other Nationwide Class members have had sufficient direct dealings with Defendant and its agents (authorized retailers) to establish privity of contract.

206.     Nonetheless, privity is not required here because Plaintiffs and each of the other Class members are intended third-party beneficiaries of contracts between Defendant and its authorized retailers, and specifically of the implied warranties. Authorized retailers, such as Ulta Beauty, Sephora, and Target, among many others, were not intended to be the ultimate consumers of the Products and have no rights under the warranty agreements provided with the Products; the warranty agreements were designed for and intended to benefit consumers.

207.     All conditions precedent to seeking liability under this claim for breach of express and implied warranty have been performed by or on behalf of Plaintiffs and others in terms of paying for the goods at issue.

208.     Pursuant to 15 U.S.C. § 2310(e), Plaintiffs and the Nationwide Class are entitled to bring this class action and are not required to give Defendant notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs and the Nationwide Class pursuant to Rule 23 of the Federal Rules of Civil Procedure.

209.     Furthermore, affording Defendant an opportunity to cure its breach of written warranties would be unnecessary and futile here. Defendant was placed on reasonable notice of the defect in the Products and breach of the warranties based on numerous complaints received directly and indirectly from Plaintiffs and the Nationwide Class, including without limitation multiple complaints to the FDA beginning in February 2018, and have had ample opportunity to cure the defect for Plaintiffs and the Nationwide Class, but have failed to do so. Instead, Defendant has doubled down on its efforts to convince consumers of the Products' safe and gentle nature, including public statements denying that there are any issues with the Products.

210.    By downplaying, concealing and misrepresenting the Products' safety and risks of use, and attempting to shift the blame to consumers, rather than the Products, DevaCurl failed to provide consumers with adequate information, and continued to perpetuate a false public perception that there was little or no risk of harm from the use of its Products.

211.    Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs and the Nationwide Class resort to an informal dispute resolution procedure and/or afford Defendant a reasonable opportunity to cure the breach of warranty is excused and thereby deemed satisfied.

212.    While notice is not required (for the reasons set forth above), Plaintiffs sent letters to Defendant giving notice of its violations of its express and implied warranties and demanding that Defendant correct such violations. Defendant received direct, mailed notice from dozens of individuals related to the claims at issue in this Consolidated Amended Complaint, and specifically Defendant's breaches of its warranties. Specifically, as early as February 7, 2020, direct notice was sent to Defendant to inform it of its breaches of express and implied warranties by plaintiffs in related actions. Additionally, Defendant was given notice of its breaches of warranties by the following Plaintiffs, on behalf of themselves and the Class members: on or about April 6, 2020 by Plaintiff Baldyga; on or about September 14, 2020 by Plaintiff Nunez; on or about September 14, 2020 by Plaintiff Shaikh; on or about February 19, 2020 by Plaintiff McCreary; on or about September 16, 2020 by Plaintiff Muniz and on or about August 26, 2020 by Plaintiff Petersen.  These notice letters provided notice of Defendant's breach and demanded that Defendant correct or rectify the breach complained of herein.

213.    Defendant's breaches of warranty have caused Plaintiffs and the other Nationwide Class members to suffer injuries, paying for defective Products, and entering into transactions

they would not have entered into at all, or not for the consideration paid. As a direct and proximate result of Defendant's breaches of warranty, Plaintiffs and the Nationwide Class have suffered damages and continue to suffer damages, including economic damages in terms of the cost of the Products and the cost of efforts to mitigate the damages caused by same.

214. The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit. Plaintiffs, individually and on behalf of the other Nationwide Class members, seek all damages permitted by law and equity in an amount to be proven at trial. In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Nationwide Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Nationwide Class members in connection with the commencement and prosecution of this action.

215. Pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Nationwide Class members are also entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Nationwide Class members in connection with the commencement and prosecution of this action.

### SECOND CLAIM FOR RELIEF
### NEGLIGENCE
*(On Behalf of All Plaintiffs and the Nationwide Class and, Alternatively, the State Classes)*

216. Plaintiffs reassert the allegations set forth in paragraphs 1 through 187 and incorporate such allegations by reference herein.

941485.1

217. Plaintiffs bring this count against Defendant on behalf of members of the Nationwide Class. In the alternative, Plaintiffs reserve the right to bring these claims on behalf of their respective State Classes.

218. Defendant negligently formulated, manufactured, tested, marketed, promoted, distributed, and sold the Products to Plaintiffs and Class Members.

219. At all times relevant and material hereto, Defendant had a duty to exercise reasonable care in the formulation, manufacture, testing, advertising, marketing, labeling, packaging, distribution, promotion and sale of the Products, such that they would not have the propensity to cause adverse reactions, such as hair loss, hair damage, hair thinning, balding, excessive shedding, scalp irritation, and other adverse reactions.

220. Defendant knew or should have known that its Products could and had caused these adverse reactions, and that the Products were unsafe when used for their ordinary and intended purpose.

221. Defendant owed a duty of care to Plaintiffs and Class members who were the likely and foreseeable purchasers and customers of the Products.

222. Defendant breached its duty of care to Plaintiffs and Class Members by, among other things, placing Products that were defective or unreasonably dangerous into the stream of commerce; failing to take all necessary steps to ensure that the Products they sold were safe; failing to take all necessary steps to ensure that that the Products functioned as specified, promised, and intended; and failing to take all necessary steps to ensure that the Products did not suffer from the common, uniform defects discussed herein.

223. Defendant further breached its duty and was negligent in its actions, misrepresentations, and omissions in numerous ways including, but not limited to, the following:

a. Failing to use due care in the formulation, design, development, and manufacture of the Products, to prevent and/or minimize the risk of injury and adverse reactions to individuals;

b. Failing to test the Products properly and thoroughly before releasing them on the market;

c. Failing to exercise due care when labeling, advertising, and promoting the Products;

d. Negligently continuing to formulate, design, manufacture, market, distribute, and sell the Products after Defendant knew or should have known of the risks of adverse reactions associated with using the Products;

224. Defendant's negligence was the direct, actual, and proximate cause of the foreseeable damages and injuries suffered by Plaintiffs and Class members.

225. Defendant's negligence is ongoing and continuing because Defendant continues to mislead consumers about the defects in Products, which pose an unreasonable risk of serious foreseeable harm.

226. As a direct and proximate result of Defendant's negligence, Plaintiffs and Class members have suffered and will continue to suffer, significant damages, loss, and injury in an amount to be determined a trial.

### THIRD CLAIM FOR RELIEF
### NEGLIGENCE - FAILURE TO WARN
*(On Behalf of all Plaintiffs and the Nationwide Class and, Alternatively, the State Classes)*

227. Plaintiffs reassert the allegations set forth in paragraphs 1 through 187 and incorporate such allegations by reference herein.

228. Plaintiffs bring this count against Defendant on behalf of members of the Nationwide Class. In the alternative, Plaintiffs reserve the right to bring these claims on behalf of their respective State Classes.

941485.1

229. At all times referenced herein, Defendant was responsible for designing, formulating, testing, manufacturing, inspecting, distributing, marketing, and supplying or selling the Products to Plaintiffs and Class members.

230. At all times material hereto, Plaintiffs' and Class members' use of the Products in a manner that was intended or reasonably foreseeable by Defendant involved risk of adverse reactions, such as hair loss, hair damage, hair thinning, balding, excessive shedding, or scalp irritation.

231. At all times material hereto, the risk of these adverse reactions was known or should have been known by Defendant, in light of the generally recognized and prevailing knowledge available at the time of manufacture and design, as described herein.

232. Defendant, as the developer, manufacturer, distributor, and seller of the Products, had a duty to warn Plaintiffs and Class members of all dangers associated with intended use of the Products.

233. After receiving multiple complaints of hair loss, hair damage, hair thinning, balding, excessive shedding, or scalp irritation, including multiple adverse event reports to the FDA, and after a significant number of online postings reporting these adverse reactions from using the Products, a duty arose to provide a warning to consumers that use of the Products has resulted in hair loss or scalp irritation.

234. Defendant was under a continuing duty to warn and instruct the intended and foreseeable users of the Products, including Plaintiffs and Class members, of the defective condition of the Products and the risks associated with using the Products. Plaintiffs were entitled to know that the Products, in their ordinary use, were not reasonably safe for their intended and ordinary purposes and uses.

941485.1

235.     Defendant was negligent and breached its duty of care by negligently failing to give adequate warnings to purchasers and users of the Products, including Plaintiffs and the Class, about the risks, potential dangers, adverse reactions and defective condition of the Products after Defendant knew, or by the exercise of reasonable care, should have known of the inherent defects and resulting dangers and adverse reactions associated with the Products.

236.     Defendant was further negligent and breached its duty of care by failing to provide consumers with adequate instructions to avoid the harm which could foreseeably occur as a result of using the Products.

237.     Despite the multitude of consumer complaints about adverse reactions from using the Products, Defendant has failed to recall the Products or to adequately warn consumers of the damage that its Products can and have caused.

238.     Instead, Defendant doubled down on its efforts to convince consumers that the Products, and their ingredients, are superior to other hair care products on the market, stating "[a]ll because the "products cannot cause hair loss" and "won't cause breakage.""

239.     Defendant was further negligent and breached its duty of care by negligently blaming consumers and other risk factors for hair loss, and failing to warn purchasers and users of the Products, including Plaintiffs and the Class, about the risks, potential dangers and defective condition of the Products.

240.     Defendant knew, or by the exercise of reasonable care, should have known of the inherent design and/or manufacturing defects and resulting dangers associated with using the Products as described herein, and knew that Plaintiffs and Class members could not reasonably be aware of those risks. Defendant failed to exercise reasonable care in providing the Class with adequate warnings.

941485.1

241. As a direct and proximate result of Defendant's failure to adequately warn consumers that use of the Products could cause the adverse reactions described herein, Plaintiffs and the Class have suffered damages as set forth herein.

**FOURTH CLAIM FOR RELIEF**
**NEGLIGENCE - DESIGN DEFECT**
*(On Behalf of all Plaintiffs and the Nationwide Class and, Alternatively, the State Classes)*

242. Plaintiffs reassert the allegations set forth in paragraphs 1 through 187 and incorporate such allegations by reference herein.

243. Plaintiffs bring this count against Defendant on behalf of members of the Nationwide Class. In the alternative, Plaintiffs reserve the right to bring these claims on behalf of their respective State Classes.

244. Defendant, as the designer, developer, manufacturer, seller, and distributor of the Products, had a duty to exercise reasonable care in designing the products.

245. Defendant owed a duty of care to Plaintiffs and Class members who were the likely and foreseeable purchasers and customers of the Products.

246. As alleged herein, the Products have a design defect which posed a substantial likelihood of harm, including hair loss, hair breakage, and scalp irritation, among other adverse reactions, described herein.

247. Defendant failed to exercise reasonable care in designing the Products, evidenced by the Products' defect.

248. The defect causes the Products to be unreasonably dangerous and a substantial factor in causing Plaintiffs and Class members to experience hair loss, hair breakage and damage, excessive shedding, and scalp irritation when used as intended or in a reasonably foreseeable manner.

941485.1

249. These unreasonably dangerous design defects were present in the Products when they were placed into the stream of commerce by Defendant.

250. The Products were used as intended or in a reasonably foreseeable manner by Plaintiffs and Class members.

251. It was feasible to design the products in a safer manner, including with ingredients and a formulation that did not cause adverse reactions.

252. Defendant is liable to Plaintiffs and Class members for the dangerous design of the products.

253. As a direct and proximate result of Defendant's conduct, Plaintiffs and Class members have been injured and sustained damages.

<u>**FIFTH CLAIM FOR RELIEF**</u>
**UNJUST ENRICHMENT**
***(On Behalf of all Plaintiffs and the Nationwide Class and, Alternatively, the State Classes)***

254. Plaintiffs reassert the allegations set forth in paragraphs 1 through 187 and incorporate such allegations by reference herein.

255. Plaintiffs bring this count against Defendant on behalf of members of the Nationwide Class. In the alternative, Plaintiffs reserve the right to bring these claims on behalf of their respective State Classes.

256. Plaintiffs and Class members bring this claim for unjust enrichment against Defendant in the alternative to their breach of express warranty claim.

257. Plaintiffs and Class members conferred benefits on Defendant when they purchased the Products, of which Defendant had knowledge.

941485.1

258. By their wrongful acts and omissions described herein, including labeling and selling the Products in a manner that was misleading to consumers, Defendant has been unjustly enriched at the expense of Plaintiffs and Class members.

259. Plaintiffs' and Class members' detriment and Defendant's enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

260. Defendant has profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiffs and Class members under circumstances in which it would be unjust for Defendant to be permitted to retain the benefit. It would be inequitable for Defendant to retain the profits, benefits, and other compensation obtained from their wrongful conduct as described herein in connection with selling the Products.

261. Plaintiff and Class members have been damaged as a direct and proximate result of Defendant's unjust enrichment because they would not have purchased the Products on the same terms or for the same price had they known the Products could cause the adverse reactions described herein, and were not fit for their intended use.

262. This has resulted in injuries to Plaintiffs and members of the Class because they would not have purchased (or paid a price premium) for the Products had they known of the latent or inherent defect that causes hair damage, hair loss, and scalp irritation in Defendant's Products.

263. Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and members of the Class is unjust and inequitable, and because equity and good conscience requires restitution, Defendant must pay restitution to Plaintiffs and members of the Class for its unjust enrichment, as ordered by the Court.

264. Defendant either knew or should have known that payments rendered by Plaintiffs and Class Members were given and received with the expectation that the Products would perform

as represented by Defendant in its advertising, on its websites, and on the Product labels and packaging, as described herein, and would not cause adverse reactions, such as hair loss, hair damage, hair thinning, balding, excessive shedding, or scalp irritation. It is inequitable for Defendant to retain the benefit of payments under these circumstances.

265. Plaintiff and Class members are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

266. When required, Plaintiff and Class members are in privity with Defendant because Defendant's sale of the Products was either direct or through authorized sellers. Purchase through authorized sellers is sufficient to create privity because such authorized sellers are Defendant's agents for the purpose of the sale of the Products. Further, Plaintiffs and Class members are the intended third-party beneficiaries of the Products.

267. As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiffs and Class members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant for its inequitable and unlawful conduct.

## SIXTH CLAIM FOR RELIEF
### FRAUD
***(On Behalf of all Plaintiffs and the Nationwide Class and, Alternatively, the State Classes)***

268. Plaintiffs reassert the allegations set forth in paragraphs 1 through 187 and incorporate such allegations by reference herein.

269. Plaintiffs bring this count against Defendant on behalf of members of the Nationwide Class. In the alternative, Plaintiffs reserve the right to bring these claims on behalf of their respective State Classes.

941485.1

270.     As described herein, Defendant knowingly made material misrepresentations and omissions regarding the Products in their marketing and advertising materials.

271.     Defendant made these material misrepresentations and omissions in order to induce Plaintiff and Class members to purchase the Products.

272.     Among other representations and omissions, Defendant repeatedly advertised, both on the Product labels and on its website, through a national advertising campaign, among other items, that the Products are safe, gentle and non-irritating, "free of harsh ingredients," superior to other products with "harsh ingredients such as sulfates," and that the "products cannot cause hair loss" and "won't cause breakage."

273.     The Products do not have the safe, gentle, non-irritating qualities described on the Product labels or in Defendant's uniform marketing and advertising campaign. Rather, the Products are defective because they have the propensity to cause, and have caused, adverse reactions, such as hair loss, hair breakage and scalp irritation, rendering the Products unsafe and unsuitable for consumer use as marketed by Defendant.

274.     Defendant failed to disclose this defect associated with the Products and, instead, continuously, and repeatedly blamed consumers for their injuries.

275.     However, after thousands of consumer complaints, collectively lodged on the internet and to the FDA, Defendant shiftily reformulated its product to "improve quality," and "enhance the products performance," and admitted, in a video buried on its website, that the Products contain synthetic fragrances, "some of which are considered allergens."

276.     Nonetheless, after this multitude of complaints, and after shiftily reformulating its Products, Defendant did not recall the products or warn consumers of the adverse reactions associated with use of the Products.

941485.1

277. Rather than inform consumers about the dangers associated with using the Products, Defendant doubled down on its efforts to shift the blame to consumers, attempting to convince them that the adverse reactions they experienced were related to their personal "stress" and unhealthy "lifestyle[s]," and the general "fragile" nature of curly hair.

278. Defendant's efforts to conceal and downplay the complaints of consumers who have experienced adverse reactions as a result of using the Products has resulted in a pointed attack on unwitting consumers, and a dubious attempt to shift the blame to consumers for these adverse reactions.

279. By downplaying, concealing, and misrepresenting the Products' safety and risks of use, and attempting to shift the blame to consumers, rather than the Products, Defendant fraudulently misrepresented material facts about the Products' dangers, and continued to perpetuate a false public perception that there was little or no risk of harm from the use of its Products.

280. The misrepresentations made by Defendant, upon which Plaintiffs and Class members reasonably and justifiably relied, were material and were intended to induce, and did actually induce, Plaintiff and Class members to purchase the Products.

281. Had Plaintiffs known the truth about the qualities of and adverse reactions associated with the Products, they would not have purchased the Products.

282. Defendant's fraudulent actions and omissions caused damage to Plaintiffs and Class members, who are entitled to damages and other legal and equitable relief as a result.

941485.1

## SEVENTH CLAIM FOR RELIEF
## NEGLIGENT MISREPRESENTATION
### *(On Behalf of all Plaintiffs and the Nationwide Class and, Alternatively, the State Classes)*

283.    Plaintiffs reassert the allegations set forth in paragraphs 1 through 187 and incorporate such allegations by reference herein.

284.    Plaintiffs bring this Count against Defendant on behalf of members of the Nationwide Class.  In the alternative, Plaintiffs reserve the right to bring these claims on behalf of their respective State Classes.

285.    As set forth above, Defendant repeatedly advertised, both on the Product labels and on its website and through a national advertising campaign, among other items, that the Products are safe, gentle and non-irritating, "free of harsh ingredients," superior to other products with "harsh ingredients such as sulfates," and that the "products cannot cause hair loss" and "won't cause breakage."

286.    Contrary to Defendant's representations, the Products do not have such qualities described on the Product labels or in Defendant's uniform marketing and advertising campaign. Rather, the Products are defective because they have the propensity to cause, and have caused, adverse reactions, such as hair loss, hair breakage and scalp irritation, rendering the Products unsafe and unsuitable for consumer use as marketed by Defendant.

287.    Defendant failed to disclose this defect associated with the Products and, instead, continuously and repeatedly blamed consumers for their injuries, while representing that its products are "safe to use" and consumers could "continue to use them with confidence," so that it could continue to profit at the expense of unwitting consumers.

288.    However, after thousands of consumer complaints, collectively lodged on the internet and to the FDA, Defendant shiftily reformulated its product to "improve quality," and

"enhance the products performance," and admitted, in a video buried on its website, that the Products contain synthetic fragrances, "some of which are considered allergens."

289.    Nonetheless, after this multitude of complaints, and after shiftily reformulating its Products, Defendant did not recall the products or warn consumers of the adverse reactions associated with use of the Products.

290.    Rather than inform consumers about the dangers associated with using the Products, Defendant doubled down on its efforts to shift the blame to consumers, attempting to convince them that the adverse reactions they experienced were related to their personal "stress" and unhealthy "lifestyle[s]," and the general "fragile" nature of curly hair.

291.    Defendant owed a duty of care to Plaintiffs and Class members who were the likely and foreseeable purchasers and customers of the Products.

292.    Defendant breached this duty of care by misrepresenting the qualities and safety of the Products.  Defendant misrepresented the Product as safe, gentle and non-irritating, and stated that the Products "products cannot cause hair loss" and "won't cause breakage," when the Products can and have caused thousands of women to experience hair loss and breakage, and scalp irritation, among other adverse reactions.

293.    By downplaying, concealing and misrepresenting the Products' safety and risks of use, and attempting to shift the blame to consumers, rather than the Products, Defendant further failed in its duty to provide consumers with adequate information, and continued to perpetuate a false public perception that there was little or no risk of harm from the use of its Products.

294.    At the time Defendant made these false representations to consumers, Defendant knew or in the exercise of reasonable diligence should have known that these representations

941485.1

were incorrect as the Products were unreasonably dangerous and had caused injuries to consumers.

295. Defendant, and its employees in charge of labeling and marketing, made such statements in a careless and reckless manner, throughout the class period.

296. Defendant knew, or in the exercise of reasonable diligence, should have known, that the ordinary consumer would be misled by these false representations.

297. The misrepresentations made by Defendant, upon which Plaintiffs and Class and members reasonably and justifiably relied, were intended to induce, and did actually induce Plaintiffs and Class members to purchase the Product.

298. Plaintiffs and Class members did in fact rely on Defendant's false and misleading statements to their determent. Plaintiffs and Class members purchased and used Defendant's Products believing that they were free of harsh ingredients and would, and could not, not cause adverse reactions, such as hair loss, hair breakage or scalp irritation.

299. Plaintiffs did not know that Defendant's representations were false and, therefore, were justified in their reasonable reliance.

300. Had Plaintiffs known the truth about the qualities of and adverse reactions associated with the Products, they would not have purchased the Products on the same terms or for the same price.

301. As a direct and proximate result of Defendant's negligent misrepresentations described herein, Plaintiffs sustained injuries and damages as alleged herein.

302. Plaintiffs are entitled to compensatory damages, and exemplary and punitive damages together with interest, and such other and further relief as this Court deems just and proper.

941485.1

## CLAIMS BROUGHT ON BEHALF OF THE STATE CLASSES

### EIGHTH CLAIM FOR RELIEF
### BREACH OF EXPRESS WARRANTY
*(On Behalf of All Plaintiffs and the California, Florida, Georgia, Illinois, Kentucky, Massachusetts, Minnesota, Missouri, New Jersey, New York, and Pennsylvania Classes)*

303.    Plaintiffs reassert the allegations set forth in paragraphs 1 through 187 and incorporate such allegations by reference herein.

304.    Plaintiffs bring this claim on behalf of themselves and their respective State Classes.

305.    Express warranties by sellers of consumer goods are created when an affirmation of fact or promise is made by the seller to the buyer, which relates to the goods and becomes the basis of the bargain.  Such warranties can also be created based upon descriptions of the goods which are made as part of the basis of the bargain that the goods shall conform to the description. *See, e.g.*, Cal. Com. Code § 2313(1)(a)-(b); Fla. Stat. Ann. § 672.313(1)(a)-(b); Ga. Code Ann. § 11-2-313(1)(a)-(b); 810 ICLS 5/2-313(1)(a)-(b); Ky. Rev. Stat. Ann. § 355.2-313(1)(a)-(b); Mass. Gen. Laws Ann. ch. 106 § 2-313(1)(a)-(b); Minn. Stat. Ann. § 336.2-313(1)(a)-(b); Mo. Ann. Stat. § 400.2-313(1)(a)-(b); N.J. Stat. Ann. § 12A:2A-210(1)(a)-(b); and N.Y. U.C.C. Law § 2-313(1)(a)-(b); 13 Pa. Stat. and Cons. Stat. Ann. s 2313(a)(1)-(2).

306.    Each of the Plaintiffs formed a contract with Defendant at the time they purchased the Products. The terms of that contract include the promises and affirmations of fact that Defendant makes through an extensive, uniform, nationwide marketing campaign, on its product labels, website, and social media.  Among other affirmations of fact and promises described herein, Defendant represents that the Products are safe, gentle and non-irritating, "free of harsh ingredients," superior to other products with "harsh ingredients such as sulfates," and that the "products cannot cause hair loss" and "won't cause breakage."

307. These affirmations of facts and promises, which are part of Defendant's uniform marketing, advertising, and product labeling, constitute express warranties and became part of the basis of the bargain, and they are part of the standardized contracts between Plaintiffs and Class members on the one hand, and the Defendant, on the other.

308. Contrary to these affirmations of fact and promises, the Products do not have the safe, gentle, non-irritating qualities described on the Product labels or in Defendant's uniform marketing and advertising campaign. Defendant breached the express warranties and/or contract obligations by placing the Products into the stream of commerce and selling them to consumers, when the Products have the propensity to cause, and have caused, adverse reactions, such as hair loss, hair breakage and scalp irritation, rendering the Products unfit for their intended use and purpose, and unsafe and unsuitable for consumer use as marketed by Defendant. This defect substantially impairs the use, value, and safety of the Products.

309. At all times relevant herein, Defendant was aware, or should have been aware, of the misrepresentations of and defect in the Products. Defendant was on notice of the problems and provided an opportunity to cure due to the numerous complaints received, without such concerns being resolved.

310. Despite these complaints, nowhere on the package labeling or on Defendant's website or other marketing materials did Defendant warn Plaintiffs and Class members they were at risk of experiencing adverse reactions, such as hair breakage, hair loss or scalp irritation from use of the Products.

311. Instead, as described herein, despite slyly reformulating the Products as a result of consumer concerns, and recently admitting that its products contain known allergens, Defendant has doubled down on its efforts to convince consumers that the Products, and their ingredients,

are superior to other hair care products on the market, stating "[a] of our products are safe to use and you can continue to use them with confidence."

312.    Further, Defendant has engaged in a desperate campaign to convince consumers that the hair loss they have suffered while using the Products is because "curly hair is more fragile and more prone to breakage," and that their personal "lifestyle" and "stress" is the cause of these adverse reactions because the "products cannot cause hair loss" and "won't cause breakage."

313.    Defendant utterly failed to ensure that the material representations it was making to consumers were true.

314.    The defect at issue herein existed when the Products left Defendant's possession or control and was sold to Plaintiffs and Class members. The defect was undiscoverable by Plaintiffs and the Class members at the time of purchase of the Products.

315.    As manufacturers, marketers, advertisers, distributors and sellers of the Products, Defendant is the only party with knowledge and notice of the fact that the Products do not conform to the affirmations of fact and promises.

316.    In addition, or in the alternative, to the formation of an express contract, Defendant made each of the above-described representations to include Plaintiffs and Class members to rely on such representations.

317.    Where required, Defendant's affirmations of fact and promises were material, and Plaintiffs and Class Members did rely and were reasonably in relying upon such representations in purchasing the Products.

318.    All conditions precedent to Defendant's liability for its breach of express warranty have been performed by Plaintiffs or Class Members.

941485.1

319.    Defendant received direct, mailed notice from dozens of individuals related to the claims at issue in this Consolidated Amended Complaint, and specifically Defendant's breaches of its warranties. Specifically, as early as February 7, 2020, direct notice was sent to Defendant to inform it of its breaches of express and implied warranties by plaintiffs in related actions. Additionally, Defendant was given notice of its breaches of warranties by the following Plaintiffs, on behalf of themselves and the Class members: on or about April 6, 2020 by Plaintiff Baldyga; on or about September 14, 2020 by Plaintiff Nunez; on or about September 14, 2020 by Plaintiff Shaikh; on or about February 19, 2020 by Plaintiff McCreary; on or about September 16, 2020 by Plaintiff Muniz and on or about August 26, 2020 by Plaintiff Petersen.  These notice letters provided notice of Defendant's breach and demanded that Defendant correct or rectify the breach complained of herein.

320.    Furthermore, affording Defendant an opportunity to cure its breach of written warranties would be unnecessary and futile here. Defendant was placed on reasonable notice of the defect in the Products and breach of the warranties based on numerous complaints received directly and indirectly from Plaintiffs and Class Members, including without limitation multiple complaints to the FDA beginning in February 2018.  Defendant has had ample opportunity to cure the defect for Plaintiffs and Class members but has failed to do so.

321.    Defendant also has notice of its breach as set forth herein by virtue of the news reports, social media posts, and online complaints by consumers around the country reporting hair loss, hair thinning, hair damages, excessive shedding, and scalp injury.

322.    As a direct and proximate result of Defendant's breaches of express warranty, Plaintiffs and Class members have been damaged because they did not receive the products as specifically warranted by Defendant. Plaintiffs and Class members did not receive the benefit of

941485.1

the bargain and suffered damages at the point of sale stemming from their overpayment of the defective Products.

**NINTH CLAIM FOR RELIEF**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
*(On Behalf of All Plaintiffs and the California, Florida, Georgia, Illinois, Kentucky, Massachusetts, Minnesota, Missouri, New Jersey, New York, and Pennsylvania Classes)*

323.    Plaintiffs reassert the allegations set forth in paragraphs 1 through 187 and incorporate such allegations by reference herein.

324.    Each Plaintiff brings this claim on behalf of herself and her respective State Class, including California, Florida, Georgia, Illinois, Kentucky, Massachusetts, Minnesota, Missouri, New Jersey New York, and Pennsylvania.

325.    Each of the states represented by Plaintiffs has adopted UCC § 2-314, which states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." *See* Cal. Comm. Code § 2314 (California), Fla. Stat. Ann. § 672.314 (Florida), Ga. Code Ann. § 11-2-314 (Georgia), 810 Ill. Comp. Stat. 5/2-314 (Illinois), Ky. Rev. Stat. Ann. § 355.2-314 (Kentucky), Mass. Gen. Laws ch. 106, § 2-314 (Massachusetts), Minn. Stat. Ann. § 336.2-314 (Minnesota), Mo. Rev. Stat. § 400.2-314 (Missouri), N.J. Stat. Ann. § 12A:2-314 (New Jersey), N.Y. U.C.C. § 2-314 (New York), 13 Pa. Cons. Stat. § 2314 (Pennsylvania).

326.    Defendant is and was at all relevant times a merchant as defined by the relevant State statutes.

327.    The hair care products sold to Plaintiffs and members of the Class are goods as defined by the relevant statutes.

328.    Defendant sold, and Plaintiffs and members of the Class purchased, the Products from authorized resellers of Defendant's products.

329.    By placing such products into the stream of commerce, Defendant impliedly warranted to Plaintiffs and members of the Class that the Products were of merchantable quality (i.e., a product of a high enough quality to make it fit for sale, usable for the purpose it was made, of average worth in the marketplace, or not broken, unworkable, contaminated or flawed or containing a defect affecting the safety of the product), would pass without objection in the trade or business, and were free from material defects, and reasonably fit for the use for which they were intended.

330.    The Products when sold and at all times thereafter were not merchantable or reasonably fit for either the use they were intended or the uses reasonably foreseeable by Defendant.

331.    Defendant breached the implied warranty of merchantability because the Products suffer from a latent or inherent defect that have the propensity to cause, and have caused, substantial hair loss, hair damage, hair thinning, balding and scalp irritation, rendering them unfit for their intended use and purpose. This defect substantially impairs the use, value, and safety of the Products.

332.    The latent or inherent defect at issue herein existed when the Products left Defendant's possession or control and were sold to Plaintiffs and members of the Class. The defect was undiscoverable by Plaintiffs and members of the Class at the time of purchase of the Products.

333.    As described herein, Defendant repeatedly advertised, both on the Product labels and on its website, through a national advertising campaign, among other items, that the Products are safe, gentle and non-irritating, "free of harsh ingredients," superior to other products with

"harsh ingredients such as sulfates," and that the "products cannot cause hair loss" and "won't cause breakage."

334. Contrary to these representations, the Products do not have the safe, gentle, non-irritating qualities described on the Product labels or in Defendant's uniform marketing and advertising campaign. Rather, the Products are defective because they have the propensity to cause, and have caused, adverse reactions, such as hair loss, hair breakage and scalp irritation, rendering the Products unsafe and unsuitable for consumer use as marketed by Defendant.

335. Defendant had exclusive knowledge of material facts concerning the defective nature of the Products, including that they had the propensity to cause, and had caused these adverse reactions.

336. Further, as described herein, despite the product reformulations as a result of consumer concerns, and admissions that its products contain known allergens, DevaCurl has engaged in a desperate campaign to convince consumers that the hair loss they have suffered while using the DevaCurl Products is because "curly hair is more fragile and more prone to breakage," and that their personal "lifestyle" and "stress" is the cause of these adverse reactions because the "products cannot cause hair loss" and "won't cause breakage."

337. Plaintiffs and the Class, at all relevant times, were intended third-party beneficiaries of Defendant and its agents in the distribution and sale of the Products. Moreover, Defendant exercises substantial control over which outlets can carry and sell the Products, which are the same places that Plaintiffs and members of the Class purchased them. In addition, Defendant's warranties are in no way designed to apply to the distributors that purchase the Products in bulk and then sell them on an individual basis to each consumer. Individual consumers are the ones who ultimately review the labels, which Defendant knows, prior to making any

purchasing decisions. As a result, these warranties are specifically designed to benefit the individual consumer who purchases the Products.

338. Plaintiffs and members of the Class sustained damages as a direct and proximate result of Defendant's breaches in that they paid a premium for the Products that they would not have otherwise paid. Plaintiffs and members of the Class also did not receive the value of the Product they paid for—the Products are worthless or worth far less than Defendant represents due to the latent or inherent defect that causes hair loss, hair damage, hair thinning, balding, and scalp irritation.

339. Plaintiffs and members of the Class have sustained, are sustaining, and will sustain damages if Defendant continues to engage in such deceptive, unfair, and unreasonable practices.

340. Defendant received direct, mailed notice from dozens of individuals related to the claims at issue in this Consolidated Amended Complaint, and specifically Defendant's breaches of its warranties. Specifically, as early as February 7, 2020, direct notice was sent to Defendant to inform it of its breaches of express and implied warranties by plaintiffs in related actions. Additionally, Defendant was given notice of its breaches of warranties by the following Plaintiffs, on behalf of themselves and the Class members: on or about April 6, 2020 by Plaintiff Baldyga; on or about September 14, 2020 by Plaintiff Nunez; on or about September 14, 2020 by Plaintiff Shaikh; on or about February 19, 2020 by Plaintiff McCreary; on or about September 16, 2020 by Plaintiff Muniz and on or about August 26, 2020 by Plaintiff Petersen. These notice letters provided notice of Defendant's breach and demanded that Defendant correct or rectify the breach complained of herein.

341. Defendant was placed on reasonable notice of the defect in the Products and breach of the warranties based on numerous complaints received directly and indirectly from Plaintiffs

and the Nationwide Class, including without limitation multiple complaints to the FDA beginning in February 2018, and have had ample opportunity to cure the defect for Plaintiffs and the Nationwide Class, but have failed to do so. Instead, Defendant has doubled down on its efforts to convince consumers of the Products' safe and gentle nature, including public statements denying that there are any issues with the Products.

342.    As a result of the breach of the implied warranty of merchantability, Plaintiffs and members of the Class are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and other relief as deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

## TENTH CLAIM FOR RELIEF
## VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT,
### Cal. Civ. Code §§ 1750, *et seq.*
### (*By Plaintiffs Baldyga and Cohen on Behalf of the California Class*)

343.    Plaintiffs Baldyga and Cohen reassert the allegations set forth in paragraphs 1 through 187 and incorporate such allegations by reference herein.

344.    Plaintiffs Baldyga and Cohen bring this claim on behalf of themselves and the California Class for violations of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* (the "CLRA").

345.    The CLRA is a comprehensive statutory scheme that is to be liberally construed to protect consumers against unfair and deceptive business practices in connection with the conduct of businesses providing goods, property or services to consumers primarily for personal, family, or household use.

346.    The Products are "goods" within the meaning of California Civil Code section 1761(a), and the purchases of such Products by Plaintiffs Baldyga and Cohen and California Class members constitute "transactions" within the meaning of California Civil Code section 1761(c).

941485.1

347.     Defendant is a "person" as defined by Cal. Civ. Code §§ 1761(c) & 1770.

348.     Plaintiffs Baldyga and Cohen and the California Class members are "consumers" as defined by Cal. Civ. Code §§ 1761(d) & 1770.

349.     Defendant engaged in unfair competition or unfair or deceptive practices, which resulted in the sales of products and services to Plaintiffs Baldyga and Cohen and the California Class Members, in violation of Cal. Civ. Code § 1770, including:

a.  Cal. Civ. Code § 1770(a)(5): Representing that goods or services have benefits, ingredients, uses, and characteristics that they do not have;

b.  Cal. Civ. Code § 1770(a)(7): Representing that goods or services are of a particular standard, quality, or grade when they are not;

c.  Cal. Civ. Code § 1770(a)(9): Advertising goods or services with intent not to sell them as advertised; and

d.  Cal. Civ. Code § 1770(a)(16): Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

350.     The CLRA deems the aforementioned unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer as unlawful.

351.     As detailed herein, Defendant repeatedly engaged in conduct in violation of the CLRA when it advertised and labeled the Products with the intent not to sell them as advertised and knew that the Products were not as represented.

352.     As more fully set forth above, Defendant repeatedly advertised, both on the Product labels and on its website, through a national advertising campaign, among other items, that the Products are safe, gentle and non-irritating, "free of harsh ingredients," superior to other

products with "harsh ingredients such as sulfates," and that the "products cannot cause hair loss" and "won't cause breakage."

353. These claims are deceptive as the Products do not have the safe, gentle, non-irritating qualities described on the Product labels or in Defendant's uniform marketing and advertising campaign. Rather, the Products are misleadingly labeled and defective because they have the propensity to cause, and have caused, adverse reactions, such as hair loss, hair breakage, and scalp irritation, rendering the Products unsafe and unsuitable for consumer use as marketed by Defendant.

354. Defendant also violated the CLRA by intentionally failing to disclose material information about the Products, including that they have the propensity to cause, and have caused adverse reactions, such as hair loss, hair breakage, and scalp irritation, rendering the Products unsafe and unsuitable for consumer use as marketed by Defendant.

355. Further, as described herein, despite the product reformulations as a result of consumer concerns, and admissions that its products contain known allergens, Defendant has engaged in a desperate campaign to convince consumers that the hair loss they have suffered while using the Products is because "curly hair is more fragile and more prone to breakage," and that their personal "lifestyle" and "stress" is the cause of these adverse reactions because the "products cannot cause hair loss" and "won't cause breakage."

356. Defendant's efforts to conceal and downplay the complaints of consumers who have experienced adverse reactions as a result of using the Products has resulted in a pointed attack on unwitting consumers, and a dubious attempt to shift the blame to consumers for these adverse reactions.

941485.1

357. Defendant's deceptive practices were specifically designed to induce Plaintiffs Baldyga and Cohen and the California Class members to purchase or otherwise acquire the Products.

358. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

359. Defendant engaged in uniform marketing efforts to reach California Class members, their agents, and/or third parties upon whom they relied, to persuade them to purchase the Products. The Products labeling and advertising contained numerous false and misleading statements regarding the quality and characteristics of the Products.

360. At all relevant times, Defendant knew or reasonably should have known that uniform representations in the Product advertising and on the Product labels were inaccurate.

361. In their purchase of the Products, Plaintiffs Baldyga and Cohen and California Class members justifiably relied on Defendant's representations and omissions of material facts, and Defendant made those representations and omissions because they knew they would drive sales of the Products.

362. Accordingly, the promises and representations are material, because reasonable consumers would rely upon them when making purchases of the Products. Because of the materiality of the representations, reliance may be inferred on behalf of the California Class members.

363. Further, Defendant's deceptive and unlawful business practices are misleading and/or likely to mislead consumers and should be enjoined.

364. As a direct and proximate result of Defendant's violations of Cal. Civ. Code § 1770, Plaintiffs Baldyga and Cohen and California Class members have suffered and will

941485.1

continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Defendant's Products, and increased time and expense in treating the damage caused by the use of Defendant's Products.

365.    Plaintiffs Baldyga and Cohen seek monetary damages pursuant to California Civil Code section 1782. On or about April 6, 2020, Plaintiff Baldyga sent Defendant a Notice and Demand Letter by certified mail, return receipt requested, notifying Defendant of its violations of the CLRA. Additionally, at a minimum, Defendant received notices on February 7, 2020, and April 20, 2020, via certified mail, return receipt requested of its violations of the CLRA. Defendant did not correct the misrepresentations or misconduct identified in Plaintiffs' letters.

366.    Plaintiffs Baldyga and Cohen, individually and on behalf of the other California Class members, seek all monetary and non-monetary relief allowed by law, including damages and punitive damages, declaratory relief, an order enjoining the acts and practices described above, attorneys' fees, and costs under the CLRA.

**ELEVENTH CLAIM FOR RELIEF**
**VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW**
**Cal. Bus. & Prof. Code §§ 17500,** *et seq.*
**(*By Plaintiffs Baldyga and Cohen on Behalf of the California* Class)**

367.    Plaintiffs Baldyga and Cohen reassert the allegations set forth in paragraphs 1 through 187 and incorporate such allegations by reference herein.

368.    Plaintiffs Baldyga and Cohen bring this claim on behalf of the California Class against Defendant for violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* ("FAL").

369.    California's FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public. . . in any advertising device. . . or in any other

manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

370.     Defendant's acts and practices, as described herein, have deceived and/or are likely to continue to deceive Plaintiffs Baldyga and Cohen and the California Class Members, and the public. As described, Defendant misrepresented the Products, concealed the Products' defects, concealed the health and safety risks associated with use of the Products, and also concealed and misrepresented the true nature of the Products.

371.     Because Defendant disseminated false and misleading information regarding the Products, and Defendant knew, or should have known through the exercise of reasonable care, that the representations are and continue to be false and misleading, Defendant has violated the FAL.

372.     Defendant's conduct is also misleading because it fail to disclose material information about the Products, such as the fact that, in spite of explicit representations and marketing, the Products have the propensity to cause, and have caused, adverse reactions, such as hair loss, hair breakage, and scalp irritation.

373.     The advertising was, by its very nature, unfair, deceptive, untrue, and misleading within the meaning of Cal. Bus. & Prof. Code §§ 17500, *et seq.* Such advertisements were intended to and likely did deceive the consuming public for the reasons detailed herein.

374.     The above-described false, misleading, and deceptive advertising and labeling Defendant disseminated continues to have a likelihood to deceive in that Defendant failed to disclose the true nature of the Products. Defendant failed to instigate a public information

campaign to alert consumers of the defects and, instead, continued to misrepresent the true nature of Defendant's Products, continuing to deceive consumers.

375.     Defendant continued to misrepresent to consumers that Defendant's Products were capable of certain benefits without disclosing health and safety risks. Had Defendant disclosed those issues, rather than falsely advertising the Products' abilities, consumers would not have purchased Defendant's Products, and would not have paid an inflated price for Defendant's Products.

376.     The misrepresentations and non-disclosures by Defendant of the material facts described and detailed herein constitute false and misleading advertising and, therefore, constitute violations of Cal. Bus. & Prof Code §§ 17500, *et seq.*

377.     As a result of Defendant's false advertising, Defendant has fraudulently obtained and continues to fraudulently obtain money from Plaintiffs Baldyga and Cohen and the California Class members.

378.     Plaintiffs Baldyga and Cohen request that this Court cause Defendant to restore this fraudulently obtained money to Plaintiffs Baldyga and Cohen and the members of the California Class, to disgorge the profits the Defendant made on these transactions, and to enjoin Defendant from violating the FAL or violating it in the same fashion in the future as discussed herein. Plaintiffs Baldyga and Cohen and the California Class Members may be irreparably harmed and/or denied an effective and complete remedy if the Court does not grant such an order.

941485.1

## TWELFTH CLAIM FOR RELIEF
## VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*
### Unlawful, Unfair, and Fraudulent Prongs
### (*By Plaintiffs Baldyga and Cohen on Behalf of the California Class*)

379.    Plaintiffs Baldyga and Cohen reassert the allegations set forth in paragraphs 1 through 187 and incorporate such allegations by reference herein.

380.    Plaintiffs Baldyga and Cohen bring this claim on behalf of the California Class members against Defendant for violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL").

381.    The UCL provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

382.    Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law.

383.    Defendant's misleading advertising of the Products was and continues to be "unlawful" because it violates the CLRA, the FAL, and other applicable laws as described herein.

384.    As a result of Defendant's unlawful business acts and practices, Defendant has unlawfully obtained money from Plaintiffs Baldyga and Cohen and the California Class members.

385.    Under the UCL, a business act or practice is "unfair" if the defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims.

941485.1

386.    Defendant's conduct was and continues to be of no benefit to purchasers of the Products, as it is misleading, unfair, unlawful, and is injurious to consumers who rely on the Products' packaging and marketing.

387.    There is no benefit to consumers or competition in allowing Defendant to deceptively market, advertise, package and label the Products. Therefore, Defendant's conduct was and continues to be "unfair."

388.    As a result of Defendant's unfair business acts and practices, Defendant has unfairly obtained and continues to unfairly obtain money from Plaintiffs Baldyga and Cohen and the California Class members.

389.    Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public.

390.    Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Products are safe, gentle and non-irritating, "free of harsh ingredients," superior to other products with "harsh ingredients such as sulfates," and that the "products cannot cause hair loss" and "won't cause breakage."

391.    In reality, the Products do not have the safe, gentle, non-irritating qualities described on the Product labels or in Defendant's uniform marketing and advertising campaign. Rather, the Products are defective because they have the propensity to cause, and have caused, adverse reactions, such as hair loss, hair breakage and scalp irritation, rendering the Products unsafe and unsuitable for consumer use as marketed by Defendant. Defendant's conduct is also fraudulent because Defendant fails to disclose material information about the Products, including that they have the propensity to cause, and have caused, these adverse reactions.

941485.1

392.     Further, as described herein, despite the product reformulations as a result of consumer concerns, and admissions that its products contain known allergens, DevaCurl has engaged in a desperate campaign to convince consumers that the hair loss they have suffered while using the Products is because "curly hair is more fragile and more prone to breakage," and that their personal "lifestyle" and "stress" is the cause of these adverse reactions because the "products cannot cause hair loss" and "won't cause breakage."

393.     Defendant's efforts to conceal and downplay the complaints of consumers who have experienced adverse reactions as a result of using the Products has resulted in a pointed attack on unwitting consumers, and a dubious attempt to shift the blame to consumers for these adverse reactions.

394.     Defendant violated UCL § 17200's prohibition against engaging in unlawful acts and practices by engaging in false and misleading advertising and by omitting material facts from purchasers of Defendant's Products. As alleged more fully herein, Defendant's marketing and sale of Defendant's Products, and more specifically their failure to inform customers of the health and safety risks inherent in Defendant's Products, violated Cal. Civ. Code §§ 1750, *et seq.*, common law, and other statutory violations as alleged herein. Plaintiffs reserve the right to allege other violations of the law, which constitute other unlawful business acts and practices. As alleged herein, Defendant continues to misrepresent the Products' abilities and continues to deny that the Products pose health and safety risks, Defendant has not recalled its Products nor provided any remedial efforts including a warning disclosing their possible risks, and Defendant's conduct is ongoing and continues to this date.

395.     Defendant violated UCL § 17200's prohibition against unfair conduct by failing to inform its customers about Defendant's Products' abilities and their potential health and safety

941485.1

risks; engaging in a pattern or practice of concealing those facts and continuing to sell those Products despite Defendant's knowledge that they are misrepresented and carry health and safety risks (including the risks of hair loss, excessive shedding, and scalp irritation) – thereby depriving customers of the value of Defendant's Products as represented. This conduct is substantially injurious to consumers, offends public policy, is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefit. Specifically, the health and safety risks were outweighed by Defendant's profit motive. Defendant engaged in this conduct at the expense of its customers' rights when other, lawful alternatives were available (such as providing customers with full information about Defendant's Products, including the known risks and potential side effects of use, prior to purchase).

396. Defendant engaged in this conduct to gain an unfair commercial advantage over its competitors, seeking to avoid public knowledge of the abilities of Defendant's Products and their defects to avoid damage to their sales or reputation. Defendant withheld critical and material information from Plaintiffs Baldyga and Cohen and California Class members, competitors, and the marketplace, all to Defendant's unfair competitive advantage.

397. Defendant's business practices, as alleged herein, constitute fraudulent conduct because they were likely to deceive, and did deceive, California Class members into purchasing Defendant's Products when those Products were misrepresented and defective with health and safety risks and otherwise did not perform as advertised.

398. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

399. As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent acts and practices, Plaintiffs Baldyga and Cohen and the California Class members were injured

and lost money or property, including from not receiving the benefit of their bargain in purchasing Defendant's Products, and increased time and expense in dealing with treating damages from the use of Defendant's Products.

400.     Defendant recklessly disregarded Plaintiffs Baldyga and Cohen and the California Class members' rights. Defendant's knowledge of the Products' false claims and health and safety risks put it on notice that the Defendant's Products were not as it advertised.

401.     Plaintiffs Baldyga and Cohen request that this Court cause Defendant to restore this unlawfully, unfairly, and fraudulently obtained money to Plaintiffs Baldyga and Cohen and the California Class members, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the UCL or violating it in the same fashion in the future as discussed herein. Plaintiffs Baldyga and Cohen and the California Class members may be irreparably harmed and/or denied an effective and complete remedy if the Court does not grant such an order.

### THIRTEENTH CLAIM FOR RELIEF
### VIOLATION OF THE FLORIDA DECEPTIVE
### AND UNFAIR TRADE PRACTICES ACT
### Fla. Stat. § 501.201 *et seq.*
### (*By Plaintiffs Nunez and Petersen on Behalf of the Florida Class*)

402.     Plaintiffs Petersen and Nunez hereby reassert the allegations set forth in paragraphs 1 through 187 and incorporate such allegations by reference herein.

403.     Plaintiffs Petersen and Nunez bring this claim on behalf of the Florida Class against Defendant for violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201 *et seq.* ("FDUTPA").

404.     Plaintiffs Petersen and Nunez and all Florida Class members are "consumers" and the transactions at issue in this Complaint constitute "trade or commerce" as defined by FDUTPA. See id. § 501.203(7)-(8).

405.     The Products are "goods" within the meaning of FDUTPA.

406.     FDUTPA provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Fla. Stat. Ann. § 501.204.

407.     For the reasons discussed herein, Defendant violated and continues to violate FDUTPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by Florida Statute §501.201, *et seq.* Defendant's acts and practices, including its omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

408.     Defendant repeatedly advertised, both on the Product labels and on its website, through a national advertising campaign, among other items, that the Products are safe, gentle and non-irritating, "free of harsh ingredients," superior to other products with "harsh ingredients such as sulfates," and that the "products cannot cause hair loss" and "won't cause breakage."

409.     Contrary to these representations, the Products do not have the safe, gentle, non-irritating qualities described on the Product labels or in Defendant's uniform marketing and advertising campaigns. Rather, the Products are defective because they have the propensity to cause, and have caused, adverse reactions, such as hair loss, hair breakage, and scalp irritation, rendering the Products unsafe and unsuitable for consumer use as marketed by Defendant.

941485.1

410. Defendant had exclusive knowledge of material facts concerning the defective nature of the Products, including that they had the propensity to cause, and had caused these adverse reactions.

411. Further, as described herein, despite the product reformulations as a result of consumer concerns, and admissions that its products contain known allergens, DevaCurl has engaged in a desperate campaign to convince consumers that the hair loss they have suffered while using the Products is because "curly hair is more fragile and more prone to breakage," and that their personal "lifestyle" and "stress" is the cause of these adverse reactions because the "products cannot cause hair loss" and "won't cause breakage."

412. Defendant's efforts to conceal and downplay the complaints of consumers who have experienced adverse reactions as a result of using the Products has resulted in a pointed attack on unwitting consumers, and a dubious attempt to shift the blame to consumers for these adverse reactions.

413. Defendant's deceptive and unlawful acts and practices described herein were likely to deceive, and did deceive, consumers acting reasonably under the circumstances. Consumers, including Plaintiffs Petersen and Nunez and Florida Class Members, would not have purchased the Products, or would have paid less for them, had they known that the Products were defective.

414. Defendant's violations described herein present a continuing risk to Plaintiffs Petersen and Nunez, Florida Class members, and the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

415.     As a result of Defendant's misconduct, Plaintiffs Petersen and Nunez and Florida Class members have been harmed and suffered actual damages in that the Products cannot be safely used as intended.

416.     As a direct and proximate result of Defendant's unfair or deceptive acts or practices, Plaintiffs Petersen and Nunez and Florida Class members have been damaged, and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

417.     Plaintiffs Petersen and Nunez seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under FDUTPA and applicable law.

**FOURTEENTH CLAIM FOR RELIEF**
**VIOLATION OF GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**Ga. Code Ann. §§ 10-1-390,** *et seq.*
***(By Plaintiff Williams on Behalf of the Georgia Class)***
1.

418.     Plaintiff Williams reasserts the allegations set forth in paragraphs 1 through 187 and incorporates such allegations by reference herein.

419.     Plaintiff Williams brings this claim on behalf of herself and the Georgia Class for violations of the Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA").

420.     Plaintiff Williams and Georgia Class members are "persons" within the meaning of § 10-1-371(5) of the Georgia UDTPA.

421.     Defendant received notice pursuant to Ga. Code Ann. § 10-1-399 concerning its wrongful conduct as alleged herein by Plaintiff Williams and Georgia Class members.

422.     Defendant's conduct described herein is in violation of the Georgia Uniform Deceptive Trade Practices Act.  Defendant engaged in deceptive trade practices in the conduct of its business, in violation of Ga. Code Ann. § 10-1-372(a)(5) by, among other things, representing

941485.1

that Defendant's Products have characteristics, ingredients, uses, or benefits that they do not have. Defendant representations and omissions were material because they were likely to deceive reasonable consumers.

423. Defendant repeatedly advertised, both on the Product labels and on its website, through a national advertising campaign, among other items, that the Products are safe, gentle and non-irritating, "free of harsh ingredients," superior to other products with "harsh ingredients such as sulfates," and that the "products cannot cause hair loss" and "won't cause breakage."

424. Contrary to these representations, the Products do not have the safe, gentle, non-irritating qualities described on the Product labels or in Defendant's uniform marketing and advertising campaign. Rather, the Products are defective because they have the propensity to cause, and have caused, adverse reactions, such as hair loss, hair breakage and scalp irritation, rendering the Products unsafe and unsuitable for consumer use as marketed by Defendant.

425. Defendant had exclusive knowledge of material facts concerning the defective nature of the Products, including that they had the propensity to cause, and had caused these adverse reactions.

426. Further, as described herein, despite the product reformulations as a result of consumer concerns, and admissions that its products contain known allergens, DevaCurl has engaged in a desperate campaign to convince consumers that the hair loss they have suffered while using the DevaCurl Products is because "curly hair is more fragile and more prone to breakage," and that their personal "lifestyle" and "stress" is the cause of these adverse reactions because the "products cannot cause hair loss" and "won't cause breakage."

427. Defendant's efforts to conceal and downplay the complaints of consumers who have experienced adverse reactions as a result of using the Products has resulted in a pointed

941485.1

attack on unwitting consumers, and a dubious attempt to shift the blame to consumers for these adverse reactions.

428. As a direct and proximate result of Defendant deceptive acts and practices, Plaintiff Williams and Georgia Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Defendant's Products.

429. Plaintiff Williams and Georgia Class members seek all relief allowed by law, including injunctive relief, and reasonable attorneys' fees and costs, under Ga. Code Ann. § 10-1-373.

**FIFTEENTH CLAIM FOR RELIEF**
**VIOLATION OF THE ILLINOIS CONSUMER FRAUD**
**AND DECEPTIVE BUSINESS PRACTICES ACT**
**815 ILCS §§ 505,** *et seq.*
(*By Plaintiffs Martinez-Villa and Shaikh on Behalf of the Illinois Class*)

430. Plaintiffs Martinez-Villa and Shaikh reassert the allegations set forth in paragraphs 1 through 187 and incorporate such allegations by reference herein.

431. Plaintiffs Martinez-Villa and Shaikh bring this claim on behalf of themselves and the Illinois Class members for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS §§ 505, *et seq.*

432. Defendant constitutes a "person" as defined by 815 ILCS §§ 505/1(c).

433. Plaintiffs Martinez-Villa and Shaikh and Illinois Class members are "consumers" as defined by 815 ILCS §§ 505/1(e).

434. Defendant's conduct as described herein was in the conduct of "trade" or "commerce" as defined by 815 ILCS § 505/1(f). Defendant's conduct is described in full detail above.

941485.1

435. Defendant's deceptive, unfair, and unlawful trade acts or practices, as described herein, are in violation of 815 ILCS § 505/2.

436. As described herein, Defendant repeatedly advertised, both on the Product labels and on its website, through a national advertising campaign, among other items, that the Products are safe, gentle and non-irritating, "free of harsh ingredients," superior to other products with "harsh ingredients such as sulfates," and that the "products cannot cause hair loss" and "won't cause breakage."

437. Contrary to these representations, the Products do not have the safe, gentle, non-irritating qualities described on the Product labels or in Defendant's uniform marketing and advertising campaign. Rather, the Products are defective because they have the propensity to cause, and have caused, adverse reactions, such as hair loss, hair breakage and scalp irritation, rendering the Products unsafe and unsuitable for consumer use as marketed by Defendant.

438. Defendant had exclusive knowledge of material facts concerning the defective nature of the Products, including that they had the propensity to cause, and had caused these adverse reactions.

439. Further, as described herein, despite the product reformulations as a result of consumer concerns, and admissions that its products contain known allergens, DevaCurl has engaged in a desperate campaign to convince consumers that the hair loss they have suffered while using the DevaCurl Products is because "curly hair is more fragile and more prone to breakage," and that their personal "lifestyle" and "stress" is the cause of these adverse reactions because the "products cannot cause hair loss" and "won't cause breakage."

440. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

941485.1

441. Defendant intended to mislead Plaintiffs Martinez-Villa and Shaikh and Illinois Class members and induce them to rely on its misrepresentations and omissions.

442. The above-described unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury that these consumers could not reasonably avoid; this substantial injury outweighed any benefit to consumers or to competition.

443. Defendant acted intentionally, knowingly, and maliciously to violate Illinois' Consumer Fraud Act, and recklessly disregarded Plaintiffs Martinez-Villa and Shaikh and Illinois Class members' rights. Defendant's knowledge of Defendant's Products' abilities and health and safety risks from their use put them on notice that Defendant's Products were not as they advertised.

444. As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiffs Martinez-Villa and Shaikh and Illinois Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Defendant's Products, and increased time and expense in dealing with treating damages from the use of Defendant's Products.

445. Plaintiffs Martinez-Villa and Shaikh and Illinois Class members seek all monetary and non-monetary relief allowed by law, including damages, restitution, punitive damages, injunctive and declaratory relief, and reasonable attorneys' fees and costs.

941485.1

## SIXTEENTH CLAIM FOR RELIEF
## VIOLATION OF THE ILLINOIS UNIFORM
## DECEPTIVE TRADE PRACTICES ACT
## ILCS §§ 510/2, *et seq.*
### (*By Plaintiffs Martinez-Villa and Shaikh on Behalf of the Illinois Class*)

446.     Plaintiffs Martinez-Villa and Shaikh reassert the allegations set forth in paragraphs

1 through 187 and incorporate such allegations by reference herein.

447.     Plaintiffs Martinez-Villa and Shaikh bring this claim on behalf of themselves and

the Illinois Class for violations of the Illinois Uniform Deceptive Trade Practices Act, ILCS §§

510/2, *et seq.*

448.     Defendant constitutes a "person" as defined by 815 ILCS §§ 510/1(5).

449.     Defendant engaged in deceptive trade practices in the conduct of its business, in

violation of 815 ILCS §§ 510/2(a), including:

a.     Defendant designed, formulated, manufactured, labeled, packaged, marketed, advertised, distributed and sold the Products when they knew, or should have known, that the Products have the propensity to cause, and have caused, adverse reactions, such as hair loss, hair breakage and scalp irritation, rendering the Products unsafe and unsuitable for consumer use as marketed by Defendant.

b.     Defendant knew or should have known that the Products have the propensity to cause, and have caused, adverse reactions, such as hair loss, hair breakage and scalp irritation, which was unknown to and would not easily be discovered by Plaintiffs and Class Members, and would defeat their ordinary, foreseeable, and reasonable expectations concerning the performance of the Products so that consumers would not get the benefit of their bargain;

c.     Defendant knew or should have known that the Products have the propensity to cause, and have caused, adverse reactions, such as hair loss, hair breakage and scalp irritation, but nevertheless, failed to disclose and/or concealed that the Products can cause, and had caused, adverse reactions when used as intended;

d.     Marketing and selling the Products, which relied upon false claims, while at the same time exposing consumers to health and safety risks solely to increase profits;

102

e.      Concealing material information from consumers regarding the true nature of the defects in Defendant's Products in order to impact consumer purchasing behavior.

f.      Making affirmative public representations about benefits of the Products while, at the same time, not ensuring that consumer health and safety.

450.     As described herein, Defendant repeatedly advertised, both on the Product labels and on its website, through a national advertising campaign, among other items, that the Products are safe, gentle and non-irritating, "free of harsh ingredients," superior to other products with "harsh ingredients such as sulfates," and that the "products cannot cause hair loss" and "won't cause breakage."

451.     Contrary to these representations, the Products do not have the safe, gentle, non-irritating qualities described on the Product labels or in Defendant's uniform marketing and advertising campaign. Rather, the Products are defective because they have the propensity to cause, and have caused, adverse reactions, such as hair loss, hair breakage and scalp irritation, rendering the Products unsafe and unsuitable for consumer use as marketed by Defendant.

452.     Defendant had exclusive knowledge of material facts concerning the defective nature of the Products, including that they had the propensity to cause, and had caused these adverse reactions.

453.     Further, as described herein, despite the product reformulations as a result of consumer concerns, and admissions that its products contain known allergens, DevaCurl has engaged in a desperate campaign to convince consumers that the hair loss they have suffered while using the DevaCurl Products is because "curly hair is more fragile and more prone to breakage," and that their personal "lifestyle" and "stress" is the cause of these adverse reactions because the "products cannot cause hair loss" and "won't cause breakage."

454.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

455.    The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiffs Martinez-Villa and Shaikh and Illinois Class members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

456.    As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiffs Martinez-Villa and Shaikh and Illinois Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Defendant's Products, and increased time and expense in treating damages caused by the Products.

457.    Plaintiffs Martinez-Villa and Shaikh and Illinois Class members seek all monetary and non-monetary relief allowed by law, including injunctive relief and reasonable attorney's fees.

## SEVENTEENTH CLAIM FOR RELIEF
## VIOLATION OF THE KENTUCKY CONSUMER PROTECTION ACT
### Ky. Rev. Stat. §§ 367.110, *et seq.*
### (*By Plaintiff Petersen on Behalf of the Kentucky Class*)

458.    Plaintiff Petersen reasserts the allegations set forth in paragraphs 1 through 187 and incorporates such allegations by reference herein.

459.    Defendant is a "person" as defined by Ky. Rev. Stat. § 367.110(1).

460.    Defendant advertised, offered, or sold goods or services in Kentucky and engaged in trade or commerce directly or indirectly affecting the people of Kentucky, as defined by Ky. Rev. Stat. 367.110(2).

941485.1

461.     Defendant engaged in unfair, false, misleading, deceptive, and unconscionable acts or practices, in violation of Ky. Rev. Stat. § 367.170 as described herein.

462.     Defendant repeatedly advertised, both on the Product labels and on its website, through a national advertising campaign, among other items, that the Products are safe, gentle and non-irritating, "free of harsh ingredients," superior to other products with "harsh ingredients such as sulfates," and that the "products cannot cause hair loss" and "won't cause breakage."

463.     Contrary to these representations, the Products do not have the safe, gentle, non-irritating qualities described on the Product labels or in Defendant's uniform marketing and advertising campaign. Rather, the Products are defective because they have the propensity to cause, and have caused, adverse reactions, such as hair loss, hair breakage, and scalp irritation, rendering the Products unsafe and unsuitable for consumer use as marketed by Defendant.

464.     Defendant had exclusive knowledge of material facts concerning the defective nature of the Products, including that they had the propensity to cause, and had caused these adverse reactions.

465.     Further, as described herein, despite the product reformulations as a result of consumer concerns, and admissions that its products contain known allergens, DevaCurl has engaged in a desperate campaign to convince consumers that the hair loss they have suffered while using the DevaCurl Products is because "curly hair is more fragile and more prone to breakage," and that their personal "lifestyle" and "stress" is the cause of these adverse reactions because the "products cannot cause hair loss" and "won't cause breakage."

466.     Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

467. Defendant intended to mislead Plaintiff Petersen and Kentucky Class members and induce them to rely on its misrepresentations and omissions.

468. Plaintiff Petersen and Kentucky Class members purchased goods or services for personal, family, or household purposes and suffered ascertainable losses of money or property and sustained personal injuries as a result of Defendant's unlawful acts and practices.

469. The above unlawful acts and practices by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff Petersen and Kentucky Class members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

470. Defendant acted intentionally, knowingly, and maliciously to violate Kentucky's Consumer Protection Act, and recklessly disregarded Plaintiff Petersen and Kentucky Class members' rights.

471. As a direct and proximate result of Defendant's unlawful acts and practices, Plaintiff Petersen and Kentucky Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including loss of the benefit of their bargain with Defendant as they would not have paid Defendant for goods and services or would have paid less for such goods and services but for Defendant's violations alleged herein; the purchase price of the Products and damage related to personal injuries sustained.

472. Plaintiff Petersen and Kentucky Class members seek all monetary and non-monetary relief allowed by law, including damages, punitive damages, restitution or other equitable relief, injunctive relief, and reasonable attorneys' fees and costs.

941485.1

## EIGHTEENTH CLAIM FOR RELIEF
## VIOLATIONS OF THE MASSACHUSETTS CONSUMER PROTECTION ACT
### Mass. Gen. Laws Ch. 93A § 1, *et seq.*
#### (*By Plaintiff McCreary on Behalf of the Massachusetts Class*)

473. Plaintiff McCreary reasserts the allegations set forth in paragraphs 1 through 187 and incorporates such allegations by reference herein.

474. Plaintiff McCreary brings this claim on behalf of herself and the Massachusetts Class.

475. This cause of action is brought pursuant to Mass. Gen. Laws ch. 93A § 2 (the "MCPA"), which prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

476. Defendant's design, manufacture, distribution, marketing, advertising, labeling, and sale of Defendant's Products constitutes "trade or commerce."

477. Defendant's conduct was an unfair method of competition, and an unfair or deceptive act or practice within the conduct of commerce within the Commonwealth of Massachusetts.

478. Defendant's unlawful conduct substantially affected Massachusetts' trade and commerce.

479. As described herein, Defendant repeatedly advertised, both on the Product labels and on its website, through a national advertising campaign, among other items, that the Products are safe, gentle and non-irritating, "free of harsh ingredients," superior to other products with "harsh ingredients such as sulfates," and that the "products cannot cause hair loss" and "won't cause breakage."

480. Contrary to these representations, the Products do not have the safe, gentle, non-irritating qualities described on the Product labels or in Defendant's uniform marketing and

advertising campaign. Rather, the Products are defective because they have the propensity to cause, and have caused, adverse reactions, such as hair loss, hair breakage and scalp irritation, rendering the Products unsafe and unsuitable for consumer use as marketed by Defendant.

481. Defendant had exclusive knowledge of material facts concerning the defective nature of the Products, including that they had the propensity to cause, and had caused these adverse reactions.

482. Further, as described herein, despite the product reformulations as a result of consumer concerns, and admissions that its products contain known allergens, DevaCurl has engaged in a desperate campaign to convince consumers that the hair loss they have suffered while using the DevaCurl Products is because "curly hair is more fragile and more prone to breakage," and that their personal "lifestyle" and "stress" is the cause of these adverse reactions because the "products cannot cause hair loss" and "won't cause breakage."

483. Defendant's conduct alleged herein violates the MCPA in that Defendant engaged in the unfair acts and deceptive practices as described herein, which included marketing directed at Plaintiff and the Class, conveying that its products were safe. Defendant's marketing and sale of the product failed to disclose health and safety risks associated with Defendant's Products. Defendant's representations and omissions concerning the Products were deceptive, false, and misleading given the health and safety risks described herein. Such conduct is inherently and materially deceptive and misleading in a material respect, which was known, or by the exercise of reasonable care, should have been known, to be untrue, deceptive, or misleading by Defendant.

484. Defendant's acts and practices described above were likely to mislead a reasonable consumer acting reasonably under the circumstances.

941485.1

485.     Defendant's violation of the MCPA was willful and knowing.  As described above, at all relevant times, Defendant knew that its Products presented certain health and safety risks but nonetheless, Defendant continued to sell the Products in the United States in order to increase its own profits.

486.     As a result of Defendant's deceptive and misleading acts, Plaintiff McCreary and the members of the Massachusetts Class have been injured because they purchased the Products at the price or prices offered based on Defendant's misrepresentations, material omissions and without full disclosure of the material facts discussed above.

487.     On February 19, 2020, Plaintiff McCreary sent a written demand for relief as required under Sec. 93A, *et seq.*, In addition, upon information and belief, Plaintiffs in a related action sent a pre-suit notice to Defendant on February 7, 2020. Defendant has failed and refused to provide the compensation requested therein.

488.     By reason of the foregoing, Plaintiff McCreary and the Massachusetts Class are entitled to seek all forms of relief, including up to treble damages and reasonable attorney's fees and costs under Mass. Gen. Laws ch. 93A § 9.

## NINETEENTH CLAIM FOR RELIEF
### VIOLATION OF MINNESOTA'S PREVENTION OF CONSUMER FRAUD ACT
#### Minn. Stat. §§ 325F.68, *et seq.* and Minn. Stat. §§ 8.31, *et seq.*
#### (*By Plaintiff Petersen on Behalf of the Minnesota Class*)

489.     Plaintiff Petersen reasserts the allegations set forth in paragraphs 1 through 187 and incorporates such allegations by reference herein.

490.     Plaintiff Petersen bring this claim on behalf of herself and the Minnesota Class for violation of Minnesota's Prevention of Consumer Fraud Act, Minn. Stat. §§ 325F.68, *et seq.* and Minn. Stat. §§ 8.31, *et seq.*

941485.1

491. Defendant, Plaintiff Petersen, and members of the Minnesota Class are each a "person" as defined by Minn. Stat. § 325F.68(3).

492. Defendant's goods, services, commodities, and intangibles (specifically, its Defendant's Products) are "merchandise" as defined by Minn. Stat. § 325F.68(2).

493. Defendant engaged in "sales" as defined by Minn. Stat. § 325F.68(4).

494. Defendant engaged in fraud, false pretense, false promise, misrepresentation, misleading statements, and deceptive practices in connection with the sale of merchandise, in violation of Minn. Stat. § 325F.69(1), as described herein.

495. As described herein, Defendant repeatedly advertised, both on the Product labels and on its website, through a national advertising campaign, among other items, that the Products are safe, gentle and non-irritating, "free of harsh ingredients," superior to other products with "harsh ingredients such as sulfates," and that the "products cannot cause hair loss" and "won't cause breakage."

496. Contrary to these representations, the Products do not have the safe, gentle, non-irritating qualities described on the Product labels or in Defendant's uniform marketing and advertising campaign. Rather, the Products are defective because they have the propensity to cause, and have caused, adverse reactions, such as hair loss, hair breakage and scalp irritation, rendering the Products unsafe and unsuitable for consumer use as marketed by Defendant.

497. Defendant had exclusive knowledge of material facts concerning the defective nature of the Products, including that they had the propensity to cause, and had caused these adverse reactions.

498. Further, as described herein, despite the product reformulations as a result of consumer concerns, and admissions that its products contain known allergens, DevaCurl has

engaged in a desperate campaign to convince consumers that the hair loss they have suffered while using the DevaCurl Products is because "curly hair is more fragile and more prone to breakage," and that their personal "lifestyle" and "stress" is the cause of these adverse reactions because the "products cannot cause hair loss" and "won't cause breakage."

499. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

500. Defendant's fraudulent, misleading, and deceptive practices affected the public interest, including millions of Minnesotans who purchased and/or used Defendant's Products.

501. As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff Petersen and Minnesota class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Defendant's Products, and increased time and expense in treating the damages caused by the Products.

502. Plaintiff Petersen and Minnesota class members seek all monetary and non-monetary relief allowed by law, including damages, declaratory or other equitable relief, and attorneys' fees, disbursements, and costs.

**TWENTIETH CLAIM FOR RELIEF**
**VIOLATION OF THE MINNESOTA UNIFORM**
**DECEPTIVE TRADE PRACTICES ACT**
**Minn. Stat. §§ 325D.43,** *et seq.*
***(By Plaintiff Petersen on Behalf of the Minnesota Class)***

503. Plaintiff Petersen reasserts the allegations set forth in paragraphs 1 through 187 and incorporate such allegations by reference herein.

941485.1

504. Plaintiff Petersen bring this claim on behalf of herself and the Minnesota Class for violation of the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §§ 325D.43, *et seq.*

505. By engaging in deceptive trade practices in the course of its business and vocation, directly or indirectly affecting the people of Minnesota, Defendant violated Minn. Stat. § 325D.44, including the following provisions: (a) representing that its goods and services had characteristics, uses, and benefits that they did not have, in violation of Minn. Stat. § 325D.44(1)(5); (b) representing that goods and services are of a particular standard or quality when they are of another, in violation of Minn. Stat. § 325D.44(1)(7); (c) advertising goods and services with intent not to sell them as advertised, in violation of Minn. Stat. § 325D.44(1)(9); and (d) engaging in other conduct which similarly creates a likelihood of confusion or misunderstanding, in violation of Minn. Stat. § 325D.44(1)(13).

506. As described herein, Defendant repeatedly advertised, both on the Product labels and on its website, through a national advertising campaign, among other items, that the Products are safe, gentle and non-irritating, "free of harsh ingredients," superior to other products with "harsh ingredients such as sulfates," and that the "products cannot cause hair loss" and "won't cause breakage."

507. Contrary to these representations, the Products do not have the safe, gentle, non-irritating qualities described on the Product labels or in Defendant's uniform marketing and advertising campaign. Rather, the Products are defective because they have the propensity to cause, and have caused, adverse reactions, such as hair loss, hair breakage and scalp irritation, rendering the Products unsafe and unsuitable for consumer use as marketed by Defendant.

941485.1

508. Defendant had exclusive knowledge of material facts concerning the defective nature of the Products, including that they had the propensity to cause, and had caused these adverse reactions.

509. Further, as described herein, despite the product reformulations as a result of consumer concerns, and admissions that its products contain known allergens, DevaCurl has engaged in a desperate campaign to convince consumers that the hair loss they have suffered while using the DevaCurl Products is because "curly hair is more fragile and more prone to breakage," and that their personal "lifestyle" and "stress" is the cause of these adverse reactions because the "products cannot cause hair loss" and "won't cause breakage."

510. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

511. Had Defendant disclosed to Plaintiff Petersen and Minnesota Class members that they misrepresented Defendant's Products, omitted material information regarding the risk involved with use of the Products and true abilities of those Defendant's Products, and were otherwise engaged in common business practices that ultimately hurt consumers, Defendant would have been unable to continue selling defective Products. Instead, Defendant represented that its Products promoted healthy hair, were free of harsh ingredients, made with nourishing, hydrating ingredients, free of sulfates, parabens, and silicones to gently cleanse curls, sourced from the highest-quality, good-for-you ingredients from around the world, without disclosing their potential risks. Plaintiffs and the Minnesota Class members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered with reasonable diligence.

941485.1

512. Defendant's knowledge of Defendant's Products' abilities and health and safety risks put them on notice that Defendant's Products were not as they advertised.

513. As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff Petersen and Minnesota Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Defendant's Products, and increased time and expense in treating the damages they caused.

514. Plaintiff Petersen and Minnesota Class members seek all monetary and non-monetary relief allowed by law, including declaratory relief and attorneys' fees and costs.

### TWENTY-FIRST CLAIM FOR RELIEF
### VIOLATION OF THE MINNESOTA UNFAIR TRADE PRACTICES ACT,
### Minn. Stat. § 325D.13
### (*By Plaintiff Petersen on Behalf of the Minnesota Class*)

515. Plaintiff Petersen reasserts the allegations set forth in paragraphs 1 through 187 and incorporates such allegations by reference herein.

516. Plaintiff Petersen brings this claim on behalf of herself and the Minnesota Class for violation of the Minnesota Unfair Trade Practices Act, Minn. Stat. § 325D.13.

517. Statute § 325D.13 provides: "No person shall, in connection with the sale of merchandise, knowingly misrepresent, directly or indirectly, the true quality, ingredients or origin of such merchandise." A violation of section 325D.13 constitutes "unfair and fraudulent competition and unsound and uneconomic methods of distribution.

518. Defendant is a "person" for purposed of this statute.

519. Defendant's hair care products are "merchandise" for the purposes of this statute.

520.    As alleged herein, Defendant has repeatedly violated Minnesota Statutes, section 325D.13 by knowingly misrepresenting, directly, or indirectly, the true quality and ingredients of its hair care products.

521.    As described herein, Defendant repeatedly advertised, both on the Product labels and on its website, through a national advertising campaign, among other items, that the Products are safe, gentle and non-irritating, "free of harsh ingredients," superior to other products with "harsh ingredients such as sulfates," and that the "products cannot cause hair loss" and "won't cause breakage."

522.    Contrary to these representations, the Products do not have the safe, gentle, non-irritating qualities described on the Product labels or in Defendant's uniform marketing and advertising campaign. Rather, the Products are defective because they have the propensity to cause, and have caused, adverse reactions, such as hair loss, hair breakage and scalp irritation, rendering the Products unsafe and unsuitable for consumer use as marketed by Defendant.

523.    Defendant had exclusive knowledge of material facts concerning the defective nature of the Products, including that they had the propensity to cause, and had caused these adverse reactions.

524.    Further, as described herein, despite the product reformulations as a result of consumer concerns, and admissions that its products contain known allergens, DevaCurl has engaged in a desperate campaign to convince consumers that the hair loss they have suffered while using the DevaCurl Products is because "curly hair is more fragile and more prone to breakage," and that their personal "lifestyle" and "stress" is the cause of these adverse reactions because the "products cannot cause hair loss" and "won't cause breakage."

525.     Defendant also repeatedly violated Minnesota Statutes, section 325D.13 in connection with the sale of its Products by omitting material information such that it knowingly misrepresented, directly and/or indirectly, the true quality of its products, including by failing to sufficiently disclose that its Products contain known allergens or irritants, and by failing to disclose that its Products could cause hair loss, hair damage, hair thinning, balding, excessive shedding, and scalp injury.

526.     Plaintiff Petersen and the Minnesota Class have suffered loss by paying more than they would have otherwise paid for Defendant's hair care Products and by receiving Products of a lower quality than they were promised by Defendant.

527.     Defendant's conduct, practices, actions, and material omissions described in this Complaint constitute multiple, separate violations of Minnesota Statutes, section 325D.13.

**TWENTY-SECOND CLAIM FOR RELIEF**
**VIOLATION OF THE MINNESOTA FALSE STATEMENT**
**IN ADVERTISEMENT ACT**
**Minn. Stat. § 325F.67**
***(By Plaintiff Petersen on Behalf of the Minnesota Class)***

528.     Plaintiff Petersen reasserts the allegations set forth in paragraphs 1 through 187 and incorporates such allegations by reference herein.

529.     Plaintiff Petersen brings this claim on behalf of herself and the Minnesota Class for violation of the Minnesota False Statement in Advertisement Act, Minn. Stat. § 325F.67.

530.     Defendant has repeatedly violated Minnesota Statutes, section 325F.67 by directly or indirectly making, publishing, disseminating, circulating, and placing before the public, in Minnesota, advertisements in print, radio, television, and/or online over the Internet which contained material assertions, representations, or statements of fact that are untrue, deceptive, or misleading.

941485.1

531. As described herein, Defendant repeatedly advertised, both on the Product labels and on its website, through a national advertising campaign, among other items, that the Products are safe, gentle and non-irritating, "free of harsh ingredients," superior to other products with "harsh ingredients such as sulfates," and that the "products cannot cause hair loss" and "won't cause breakage."

532. Contrary to these representations, the Products do not have the safe, gentle, non-irritating qualities described on the Product labels or in Defendant's uniform marketing and advertising campaign. Rather, the Products are defective because they have the propensity to cause, and have caused, adverse reactions, such as hair loss, hair breakage and scalp irritation, rendering the Products unsafe and unsuitable for consumer use as marketed by Defendant.

533. Defendant had exclusive knowledge of material facts concerning the defective nature of the Products, including that they had the propensity to cause, and had caused these adverse reactions.

534. Further, as described herein, despite the Product reformulations as a result of consumer concerns, and admissions that its Products contain known allergens, DevaCurl has engaged in a desperate campaign to convince consumers that the hair loss they have suffered while using the DevaCurl Products is because "curly hair is more fragile and more prone to breakage," and that their personal "lifestyle" and "stress" is the cause of these adverse reactions because the "products cannot cause hair loss" and "won't cause breakage."

535. Defendant also repeatedly violated Minnesota Statutes, section 325F.67 by directly or indirectly making, publishing, disseminating, circulating, and/or placing before the public, in Minnesota, advertisements in print, radio, television, and/or online over the Internet which contained material assertions, representations, or statements of fact thar are untrue,

deceptive, or misleading by omitting material information and by, among other things, failing to disclose that even with ordinary use its Products could cause hair loss, hair damage, hair thinning, excessive shedding, balding, and scalp injury.

536.    Given the nature and quality of the representations Defendant made in its advertisements, the actual and special knowledge it had, and the other circumstances described in this Complaint, Defendant had a duty to sufficiently disclose all material facts to potential consumers in connection with its marketing and sale of its hair care products. The company's failure to disclose this material information constitutes additional false advertising in violation of Minnesota Statutes, section 325F.67.

537.    Due to the deceptive and fraudulent conduct, representations, and material omissions described in this Complaint, Plaintiff Petersen and the Minnesota Class members have made payments to Defendant for hair care products that they otherwise would not have purchased or paid for and by receiving products of a lower quality than they were promised by Defendant.

538.    Defendant's conduct, practices, actions, and material omissions described in this Complaint constitute multiple, separate violations of Minnesota Statutes, section 325F.67.

<u>**TWENTY-THIRD CLAIM FOR RELIEF**</u>
**VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT**
**Mo. Rev. Stat. §§ 407.010,** *et seq.*
(*By Plaintiff Shewmaker on Behalf of the Missouri Class*)

539.    Plaintiff Shewmaker reasserts the allegations set forth in paragraphs 1 through 187 and incorporates such allegations by reference herein.

540.    Plaintiff Shewmaker brings this claim on behalf of herself and the Missouri class for violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010, *et seq.*

541.    Defendant is a "person" as defined by Mo. Rev. Stat. § 407.010(5).

941485.1

542. Defendant advertised, offered, or sold goods or services in Missouri and engaged in trade or commerce directly or indirectly affecting the people of Missouri, as defined by Mo. Rev. Stat. § 407.010(4), (6) and (7).

543. Plaintiff Shewmaker and Missouri class members purchased goods primarily for personal, family, or household purposes.

544. Defendant engaged in unlawful, unfair, and deceptive acts and practices, in connection with the sale or advertisement of merchandise in trade or commerce, in violation of Mo. Rev. Stat. § 407.020(1), as described herein.

545. As described herein, Defendant repeatedly advertised, both on the Product labels and on its website, through a national advertising campaign, among other items, that the Products are safe, gentle and non-irritating, "free of harsh ingredients," superior to other products with "harsh ingredients such as sulfates," and that the "products cannot cause hair loss" and "won't cause breakage."

546. Contrary to these representations, the Products do not have the safe, gentle, non-irritating qualities described on the Product labels or in Defendant's uniform marketing and advertising campaign. Rather, the Products are defective because they have the propensity to cause, and have caused, adverse reactions, such as hair loss, hair breakage and scalp irritation, rendering the Products unsafe and unsuitable for consumer use as marketed by Defendant.

547. Defendant had exclusive knowledge of material facts concerning the defective nature of the Products, including that they had the propensity to cause, and had caused these adverse reactions.

548. Further, as described herein, despite the Product reformulations as a result of consumer concerns, and admissions that its Products contain known allergens, DevaCurl has

engaged in a desperate campaign to convince consumers that the hair loss they have suffered while using the DevaCurl Products is because "curly hair is more fragile and more prone to breakage," and that their personal "lifestyle" and "stress" is the cause of these adverse reactions because the "products cannot cause hair loss" and "won't cause breakage."

549. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

550. Defendant recklessly disregarded Plaintiff Shewmaker's and Missouri Class members' rights.

551. Defendant's knowledge of the Defendant's Products' abilities and safety and health risk put them on notice that Defendant's Products were not as they advertised.

552. As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff Shewmaker and Missouri Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Defendant's Products, and increased time and expense in treating the damages caused by the Products.

553. Plaintiff Shewmaker and Missouri Class members seek all monetary and non-monetary relief allowed by law, including actual damages, punitive damages, attorneys' fees and costs, declaratory relief, and any other appropriate relief.

## TWENTY-FOURTH CLAIM FOR RELIEF
### VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT
### N.J. Stat. Ann. §§ 56:8-1, *et seq.*
### (*By Plaintiff Hall on Behalf of the New Jersey Class*)

554. Plaintiff Hall reasserts the allegations set forth in paragraphs 1 through 187 and incorporates such allegations by reference herein.

555. Plaintiff Hall brings this claim on behalf of herself and the New Jersey Class for violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann §§ 56:8-1, *et seq.*

556. Defendant is a "person," as defined by N.J. Stat. Ann. § 56:8-1(d).

557. Defendant sells "merchandise," as defined by N.J. Stat. Ann. § 56:8-1(c) and (e).

558. The New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, *et seq.*, prohibits unconscionable commercial practices, deception, fraud, false pretense, false promise, misrepresentation, as well as the knowing concealment, suppression, or omission of any material fact with the intent that others rely on the concealment, omission, or fact, in connection with the sale or advertisement of any merchandise.

559. As described herein, Defendant repeatedly advertised, both on the Product labels and on its website, through a national advertising campaign, among other items, that the Products are safe, gentle and non-irritating, "free of harsh ingredients," superior to other products with "harsh ingredients such as sulfates," and that the "products cannot cause hair loss" and "won't cause breakage."

560. Contrary to these representations, the Products do not have the safe, gentle, non-irritating qualities described on the Product labels or in Defendant's uniform marketing and advertising campaign. Rather, the Products are defective because they have the propensity to cause, and have caused, adverse reactions, such as hair loss, hair breakage and scalp irritation, rendering the Products unsafe and unsuitable for consumer use as marketed by Defendant.

561. Defendant had exclusive knowledge of material facts concerning the defective nature of the Products, including that they had the propensity to cause, and had caused these adverse reactions.

941485.1

562.    Further, as described herein, despite the Product reformulations as a result of consumer concerns, and admissions that its Products contain known allergens, DevaCurl has engaged in a desperate campaign to convince consumers that the hair loss they have suffered while using the DevaCurl Products is because "curly hair is more fragile and more prone to breakage," and that their personal "lifestyle" and "stress" is the cause of these adverse reactions because the "products cannot cause hair loss" and "won't cause breakage."

563.    Defendant representations and omissions were material because they were likely to deceive reasonable consumers.

564.    As a direct and proximate result of Defendant deceptive acts and practices, Plaintiff Hall and New Jersey Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Defendant's Products, and increased time and expense in treating the damage they caused.

565.    Plaintiff Hall and New Jersey Class members seek all monetary and non-monetary relief allowed by law, including injunctive relief, other equitable relief, actual damages, treble damages, restitution, and attorneys' fees, filing fees, and costs.

**TWENTY-FIFTH CLAIM FOR RELIEF**
**VIOLATIONS OF THE NEW YORK DECEPTIVE TRADE PRACTICES ACT**
**New York Gen. Bus. Law § 349,** *et seq.*
**(*on behalf of Plaintiffs Hall and Muniz and the New York Class*)**

566.    Plaintiffs Hall and Muniz reassert the allegations set forth in paragraphs 1 through 187 and incorporate such allegations by reference herein.

567.    Plaintiffs Hall and Muniz bring this claim on behalf of themselves and the New York Class.

941485.1

568. The New York Deceptive Acts and Practices Act makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349.

569. Defendant engaged in deceptive acts or practices in the conduct of its business, trade, and commerce or furnishing of services, in violation of N.Y. Gen. Bus. Law § 349, as described herein.

570. Defendant's foregoing acts and practices, including its omissions, were directed at consumers.

571. Defendant's representations and omissions were material, in part, because they concerned an essential part of the Products' functionality and safety, and also because they were likely to deceive reasonable consumers.

572. Defendant's foregoing deceptive acts and practices, including their omissions, were and are deceptive acts or practices in violation of New York's General Business Law section 349, Deceptive Acts and Practices, N.Y. Gen. Bus. Law 349, et. seq., in that:

a. Defendant designed, formulated, manufactured, labeled, packaged, marketed, advertised, distributed and sold the Products when they knew, or should have known, that the Products have the propensity to cause, and have caused, adverse reactions, such as hair loss, hair breakage and scalp irritation, rendering the Products unsafe and unsuitable for consumer use as marketed by Defendant.

b. Defendant knew or should have known that the Products that the Products have the propensity to cause, and have caused, adverse reactions, such as hair loss, hair breakage and scalp irritation, which was unknown to and would not easily be discovered by Plaintiffs and Class Members, and would defeat their ordinary, foreseeable and reasonable expectations concerning the performance of the Products;

c. Defendant knew or should have known that the Products that the Products have the propensity to cause, and have caused, adverse reactions, such as hair loss, hair breakage and scalp irritation, but nevertheless, failed to disclose and/or concealed that the Products can cause, and had caused, adverse reactions when used as intended.

573.     Further, as described herein, despite the product reformulations as a result of consumer concerns, and admissions that its products contain known allergens, Defendant has engaged in a desperate campaign to convince consumers that the hair loss they have suffered while using the Products is because "curly hair is more fragile and more prone to breakage," and that their personal "lifestyle" and "stress" is the cause of these adverse reactions because the "products cannot cause hair loss" and "won't cause breakage."

574.     Defendant's efforts to conceal and downplay the complaints of consumers who have experienced adverse reactions as a result of using the Products has resulted in a pointed attack on unwitting consumers, and a dubious attempt to shift the blame to consumers for these adverse reactions.

575.     Plaintiffs Hall and Muniz and New York Class members suffered damages when they purchased the Products.   Defendant's unconscionable, deceptive and/or unfair practices caused actual damages to Plaintiffs Hall and Muniz and New York Class members.

576.     Defendant's foregoing deceptive acts and practices, including their omissions, were likely to deceive, and did deceive, consumers acting reasonably under the circumstances.

577.     Plaintiffs Hall and Muniz reserve the right to allege other violations of the law, which constitute other unlawful business acts and practices. As alleged herein, Defendant continues to misrepresent the Products' abilities and continues to deny that the Products have the propensity to cause, and have caused, adverse reactions. Further, Defendant has not recalled its Products nor provided any remedial efforts, including a warning disclosing their risks, and Defendant's conduct is ongoing and continues to this date.

941485.1

578. Defendant recklessly disregarded Plaintiffs and New York Class members' rights. Defendant's knowledge of the Products' deceptive claims and health and safety risks put it on notice that the Defendant's Products were not as it advertised.

579. In accordance with subsection (h) of section 349, Plaintiffs Hall and Muniz seek an order enjoining Defendant from continuing these unlawful deceptive acts and practices. Absent enjoining these unlawful deceptive acts and practices, Defendant will continue their false and misleading marketing of the Products and, in doing so, irreparably harm each of the New York Class Members.

580. As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiffs Hall and Muniz and the New York Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Products, and increased time and expense in treating the damage that the Products caused.

581. By reason of the foregoing, Plaintiffs Hall and Muniz and the New York Class Members also seek actual damages or statutory damages of $50 per violation, whichever is greater, as well as punitive damages. N.Y. Gen. Bus. Law § 349(h).

## TWENTY-SIXTH CLAIM FOR RELIEF
### VIOLATION OF NEW YORK DECEPTIVE SALES PRACTIVES ACT
### New York Gen. Bus. Law § 350, *et seq.*
### (*By Plaintiff Hall and Muniz on Behalf of the New York Class*)

582. Plaintiffs Hall and Muniz reassert the allegations set forth in paragraphs 1 through 187 and incorporate such allegations by reference herein, including those alleged in the Seventh Claim for Relief, Violation of N.Y. Gen. Bus. Law 349, *et seq.*

941485.1

583. Plaintiffs Hall and Muniz bring this cause of action on behalf of themselves and the New York Class against Defendant. for violation of New York General Business Law section 350.

584. Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. Law § 350.

585. New York General Business Law section 350-a defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect." N.Y. Gen. Bus. Law § 350-a. The section also provides that advertising can be false by omission, as it further defines "false advertising" to include "advertising [that] fails to reveal facts material in the light of such representations with respect to the commodity . . . to which the advertising relates." Id.

586. Defendant's labeling, marketing, and advertising of the Products, as alleged herein, are "misleading in a material respect," and are thus "false advertising." As more fully set forth above, Defendant repeatedly advertised, both on the Product labels and on its website, through a national advertising campaign, among other items, that the Products are safe, gentle and non-irritating, "free of harsh ingredients," superior to other products with "harsh ingredients such as sulfates," and that the "products cannot cause hair loss" and "won't cause breakage."

587. These claims are false as the Products do not have the safe, gentle, non-irritating qualities described on the Product labels or in Defendant's uniform marketing and advertising campaign. Rather, the Products are defective because they have the propensity to cause, and have caused, adverse reactions, such as hair loss, hair breakage, and scalp irritation, rendering the Products unsafe and unsuitable for consumer use as marketed by Defendant.

941485.1

588. While engaged in the conduct of business, trade, and commerce, Defendant did attempt to directly and/or indirectly induce consumers to purchase the Products by its labeling. In doing so, Defendant utilized false labeling which did not represent the true nature and quality of the Products, but rather mislead consumers into believing that the Products were safe and gentle and did not cause adverse reactions. The false labeling was materially misleading and materially deceiving to reasonable consumers at large acting reasonably under the circumstances.

589. Further, as described herein, despite the product reformulations as a result of consumer concerns, and admissions that its products contain known allergens, Defendant has engaged in a desperate campaign to convince consumers that the hair loss they have suffered while using the Products is because "curly hair is more fragile and more prone to breakage," and that their personal "lifestyle" and "stress" is the cause of these adverse reactions because the "products cannot cause hair loss" and "won't cause breakage."

590. Defendant's efforts to conceal and downplay the complaints of consumers who have experienced adverse reactions as a result of using the Products has culminated in a pointed attack on unwitting consumers, and a dubious attempt to shift the blame to consumers for these adverse reactions.

591. Defendant's conduct caused and continues to cause injury to consumers, including Plaintiffs Hall and Muniz and the  New York Class members, in that they were misled to believe that they were purchasing Products that were safe and gentle, and did not have the propensity to cause, and had not caused, adverse reactions.

592. In making and disseminating the false labeling and statements alleged herein, Defendant knew, or should have known, that its practices were materially deceptive and misleading in violation of N.Y. Gen. Bus. Law § 350, *et seq.*

941485.1

593.     Plaintiffs Hall and Muniz and the New York Class members based their decision to purchase the Products in substantial part on Defendant's labeling, advertisements, material representations and omitted facts. The revenue to Defendant attributable to the sale of the Products likely amount to millions of dollars.

594.     Based on all of the foregoing, Defendant has violated New York General Business Law § 350, causing Plaintiffs Hall and Muniz and the New York Class members to sustain injury in fact – the loss of monies paid for the Products.

595.     The misrepresentations and non-disclosures by Defendant of the material facts described and detailed herein constitute false and misleading advertising and, therefore, constitute violations of N.Y. Gen. Bus. Law § 350, *et seq.*

596.     Plaintiffs Hall and Muniz seek an order enjoining Defendant from continuing this false advertising. Absent enjoining this false advertising, Defendant will continue to mislead Plaintiffs Hall and Muniz and the New York Class members and, in doing so, irreparably harm each of the New York Class members.

597.     As a direct and proximate result of Defendant's violation of New York General Business Law section 350, Plaintiffs Hall and Muniz and the New York Class members have also suffered an ascertainable loss of monies. By reason of the foregoing, Plaintiffs Hall and Muniz and the New York Class Members also seek actual damages or statutory damages of $500 per violation, whichever is greater, as well as punitive damages. N.Y. Gen. Bus. Law § 350-e(3).

941485.1

## TWENTY-SEVENTH CLAIM FOR RELIEF
## VIOLATIONS OF THE PENNSYLVANIA UNFAIR PRACTICES AND
## CONSUMER PROTECTION LAW
### 73 Pa. Cons. Stat. §§ 201-2 and 201-3, *et seq*.
### *(By Plaintiff Tami Nunez on Behalf of the Pennsylvania Class)*

598.     Plaintiff Nunez reasserts the allegations set forth in paragraphs 1 through 187 and incorporates such allegations by reference herein.

599.     The Pennsylvania Unfair Trade Practices Act prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce …." 73 Pa. Stat. Ann. § 201-3.

600.     Defendant's deceptive acts and practices include:

    a.    Knowingly designing, developing, manufacturing, advertising, and selling Defendant's Products with false health claims and significant defects that result in health and safety risks when used so that consumers did not receive the benefit of their bargain;

    b.    Marketing and selling Defendant's Products that relied upon false health claims, while at the same time exposing consumers to health and safety risks solely to increase profits;

    c.    Making affirmative public representations about the alleged benefits of Defendant's Products while, at the same time, not ensuring consumer health and safety with respect to use of the Products; and

    d.    Concealing material information from consumers regarding the true nature of the defects in Defendant's Products in order to impact consumer purchasing behavior.

601.     Defendant violated 73 Pa. Stat. Ann. § 201-3's prohibition against engaging in unlawful acts and practices by engaging in false and misleading advertising and by omitting material facts from purchasers of Defendant's Products.

602.     As alleged more fully herein, Defendant's marketing and sale of Defendant's Products, and more specifically its failure to inform customers of the health and safety risks inherent in Defendant's Products, violated 73 Pa. Stat. Ann. § 201-3, common law, and other

statutory violations as alleged herein. Plaintiff Nunez reserves the right to allege other violations of the law, which constitute other unlawful business acts and practices.

603.    As described herein, Defendant repeatedly advertised, both on the Product labels and on its website and through a national advertising campaign, among other items, that the Products are safe, gentle and non-irritating, "free of harsh ingredients," superior to other products with "harsh ingredients such as sulfates," and that the "products cannot cause hair loss" and "won't cause breakage."

604.    Contrary to these representations, the Products do not have the safe, gentle, non-irritating qualities described on the Product labels or in Defendant's uniform marketing and advertising campaign. Rather, the Products are defective because they have the propensity to cause, and have caused, adverse reactions, such as hair loss, hair breakage and scalp irritation, rendering the Products unsafe and unsuitable for consumer use as marketed by Defendant.

605.    Defendant had exclusive knowledge of material facts concerning the defective nature of the Products, including that they had the propensity to cause, and had caused these adverse reactions.

606.    Defendant violated 73 Pa. Stat. Ann. § 201-3's prohibition against unfair conduct by failing to inform its customers about Defendant's Products' abilities and their potential health and safety risks and by engaging in a pattern or practice of concealing those facts and continuing to sell those Products despite its knowledge that they are misrepresented and carry health and safety risks (including the risks of hair damage, hair loss, excessive shedding, and/or scalp irritation among other adverse actions) - thereby depriving customers of the value of Defendant's Products as represented. This conduct is substantially injurious to consumers, offends public policy, is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct

941485.1

outweighs any alleged benefit. Specifically, the health and safety risks were outweighed by Defendant's profit motive. Defendant engaged in this conduct at the expense of its customers' rights when other, lawful alternatives were available (such as providing customers with full information about Defendant's Products, including the known risks and potential side effects of use, prior to purchase).

607.    Defendant engaged in this conduct to gain an unfair commercial advantage over its competitors, seeking to avoid public knowledge of the abilities of Defendant's Products and their defects to avoid damage to their sales or reputation. Defendant withheld critical and material information from Plaintiff Nunez and Pennsylvania Class members, competitors, and the marketplace, all to Defendant's unfair competitive advantage.

608.    Defendant's business practices, as alleged herein, constitute fraudulent conduct because they were likely to deceive, and did deceive, Pennsylvania Class members into purchasing Defendant's Products when those Products were misrepresented and defective with health and safety risks and otherwise did not perform as advertised.

609.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

610.    As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent acts and practices, Plaintiff Nunez and Pennsylvania Class members were injured and lost money or property, including from not receiving the benefit of their bargain in purchasing Defendant's Products, and increased time and expense in dealing with treating damages from the use of Defendant's Products.

941485.1

611. Defendant recklessly disregarded Plaintiff Nunez and Pennsylvania Class members' rights. Defendant's knowledge of the Defendant's Products' false claims and health and safety risks put it on notice that the Defendant's Products were not as it advertised.

612. Pursuant to 73 Pa. Stat. Ann. § 201-9.2(a), Plaintiff Nunez and the Pennsylvania Class Members seek an order enjoining Defendant's unfair and/or deceptive acts or practices, and awarding damages, punitive and/or treble damages, and any other just and proper relief available under the Pennsylvania Unfair Trade Practices Act.

## RELIEF DEMANDED

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek a judgment against Defendant, as follows:

a. For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Classes and Plaintiffs' attorneys as Class Counsel;

b. For an order declaring that Defendant's conduct violates the statutes referenced herein;

c. For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

d. For compensatory, statutory, and punitive damages in amounts to be determined by the Court or jury;

e. For prejudgment interest on all amounts awarded;

f. For an order of restitution and all other forms of equitable monetary relief;

g. For injunctive relief as pled or as the Court may deem proper; and

h.   For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all claims so triable.

Dated: October 2, 2020

Respectfully submitted,

*/s/ Gary S. Graifman*

Gary S. Graifman
**KANTROWITZ GOLDHAMER
& GRAIFMAN, P.C.**
747 Chestnut Ridge Road
Chestnut Ridge, NY 10977
Telephone: (845) 356-2570
Facsimile: (845) 356-4335
ggraifman@kgglaw.com

Gary E. Mason (*pro hac vice*)
**MASON LIETZ & KLINGER LLP**
5101 Wisconsin Avenue NW, Suite 305
Washington, D.C. 20016
Telephone: (202) 429-2290
Facsimile: (202) 42902294
gmason@masonllp.com

***Interim Co-Lead Class Counsel***

Charles E. Schaffer (*pro hac vice*)
**LEVIN, SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone.: (215) 592-1500
Facsimile: (215) 592-4663
cschaffer@lfsblaw.com

***Interim Co-Lead Class Counsel***

941485.1

Rachel Soffin (*pro hac vice*)
**GREG COLEMAN LAW**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
rachel@gregcolemanlaw.com

*Interim Co-Lead Class Counsel*

Melissa S. Weiner, NY Reg. No. 5547948
**PEARSON, SIMON &
WARSHAW, LLP**
800 LaSalle Avenue, Suite 2150
Minneapolis, MN 55402
Telephone: (612) 389-0600
Facsimile: (612) 389-0610
mweiner@pswlaw.com

*Interim Co-Lead Class Counsel*

Robin F. Zwerling (RZ 6736)
Robert S. Schachter (RS 7243)
Dan Drachler (DD 1526)
Sona R. Shah (SS 4712)
**ZWERLING, SCHACHTER &
ZWERLING LLP**
41 Madison Avenue, 32nd Floor
New York, NY 10010
Telephone: (212) 223-3900
Facsimile: (212) 371-5969
rzwerling@zsz.com
ddrachler@zsz.com
rschachter@zsz.com
sshah@zsz.com

Jeffrey S. Goldenberg (*pro hac vice*)
**GOLDENBERG SCHNEIDER, L.P.A.**
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
Telephone.: (513) 345-8297
Facsimile: (513) 345-8294
jgoldenberg@gs-legal.com

941485.1

J. Gordon Rudd, Jr. (*pro hac vice*)
**ZIMMERMAN REED LLP**
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 341-0400
Facsimile: (612) 341-0844
Gordon.Rudd@zimmreed.com

Melissa R. Emert
**STULL, STULL & BRODY**
6 East 45th Street
New York, NY 10017
Telephone: (954) 341-5561
Facsimile: (954)341-5531
memert@ssbny.com

Jonathan Shub (*pro hac vice forthcoming*)
**SHUB LAW FIRM, LLC**
134 Kings Highway, Second Floor
Haddonfield, NJ 08033
Telephone: (856) 772-7200
jshub@shublawyers.com

Brian T. White
**WHITE GRAHAM BUCKLEY CARR, LLC**
19049 East Valley View Parkway
Suite C
Independence, MO  64055
Telephone: (816) 373-9080
Facsimile: (816) 373-9319
bwhite@wagblaw.com

941485.1